# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALASKA ELECTRICAL PENSION FUND; GENESEE COUNTY EMPLOYEES' RETIREMENT SYSTEM; COUNTY OF MONTGOMERY, PENNSYLVANIA; COUNTY OF WASHINGTON, PENNSYLVANIA; and CITY OF NEW BRITAIN, CONNECTICUT, on behalf of themselves and all others similarly situated, | Case Nos.: 14-cv-7126 (JMF)<br>14-cv-7907 (JMF)<br>14-cv-8342 (JMF)<br>14-cv-8365 (JMF)<br>14-cv-8576 (JMF) |
| Plaintiffs, | |
| vs. | Hon. Jesse M. Furman |
| BANK OF AMERICA CORPORATION; BARCLAYS BANK PLC; B.N.P. PARIBAS SA; CITIGROUP INC.; CREDIT SUISSE AG, NEW YORK BRANCH; DEUTSCHE BANK AG; THE GOLDMAN SACHS GROUP, INC.; HSBC BANK PLC; ICAP CAPITAL MARKETS LLC; JPMORGAN CHASE & CO.; MORGAN STANLEY & CO. LLC; NOMURA SECURITIES INTERNATIONAL, INC.; ROYAL BANK OF SCOTLAND PLC; UBS AG; and WELLS FARGO BANK, N.A., | |
| Defendants. | |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENTS WITH BANK OF AMERICA, N.A.; BARCLAYS BANK PLC; CITIGROUP INC.; CREDIT SUISSE AG, NEW YORK BRANCH; DEUTSCHE BANK AG; JPMORGAN CHASE & CO. LLC; AND ROYAL BANK OF SCOTLAND, PLC

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

REQUESTED PROCEDURES AND TIMETABLE ................................................. 1

SUMMARY OF THE ACTION ............................................................................... 3

SUMMARY OF THE SETTLEMENT ..................................................................... 6

    A.    Stipulation as to Certification of the Settlement Class.................................. 6

    B.    Monetary Component.................................................................................... 7

    C.    Confirmatory Discovery Provisions.............................................................. 7

    D.    Release of Claims......................................................................................... 8

    E.    Termination Provisions ................................................................................ 8

    F.    Attorneys' Fees, Expenses, and Service Awards ......................................... 9

ARGUMENT ........................................................................................................... 9

  I.    THE SETTLEMENTS MEET THE STANDARD FOR PRELIMINARY
       APPROVAL................................................................................................... 9

    A.    The Settlements Are Fair............................................................................ 10

    B.    The Settlements Are Substantively Fair...................................................... 11

       1. Complexity, Expense, and Likely Duration of the Litigation ..................... 12

       2. Reaction of the Class to the Settlements ..................................................... 13

       3. Stage of the Proceedings .............................................................................. 14

       4. Risks of Establishing Liability and Damages.............................................. 16

       5. Risks of Maintaining a Class Action Through Trial ................................... 17

       6. Ability of Settling Defendants to Withstand a Greater Judgment............... 17

       7. Reasonableness of the Settlements in Light of the Best Possible Recovery and
          Attendant Litigation Risks........................................................................... 18

  II.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED ......................................... 20

    A.    The Requirements of Rule 23(a) Are Satisfied ........................................... 20

       1. Numerosity ................................................................................................... 20

       2. Common Questions of Law or Fact ............................................................. 20

       3. Typicality..................................................................................................... 21

       4. Adequacy...................................................................................................... 22

    B.    The Requirements of Rule 23(b)(3) Are Satisfied ...................................... 23

  III.  APPOINTMENT OF CLAIMS ADMINISTRATOR AND ESCROW AGENT AND
       RELATED RELIEF ...................................................................................... 24

CONCLUSION..........................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Dairy Farmers of Am., Inc.*,
   No. 5:09-cv-230, 2011 WL 1706778 (D. Vt. May 4, 2011) .......................................9

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997).............................................................................................23

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ...........................................................................14

*Brown v. Pro Football, Inc.*,
   146 F.R.D. 1 (D.D.C. 1992)....................................................................................23

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.
   Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) .................................................12

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995).....................................................................................20

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007).....................................................................................20

*Dial Corp. v. News Corp.*,
   No. 13cv6802, 2015 WL 4104624 (S.D.N.Y. June 18, 2015).................................23

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)...........................................................................17

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987)..................18

*In re "Agent Orange" Prod. Liab. Litig., MDL No. 381*,
   818 F.2d 145 (2d Cir. 1987)....................................................................................2

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06-MD-1175(JG)(VVP), 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) .........21

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012)....................................................................................20

*In re AOL Time Warner, Inc.*,
   No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............14, 19

*In re Austrian and German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom., D'Amato v. Deutsche*
  *Bank*, 236 F.3d 78 (2d Cir. 2001) ........................................................................10

*In re Carbon Black Antitrust Litig.*,
  MDL No. 1543, 2005 WL 102966 (D. Mass. Jan. 18, 2005) ................................21

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ................................................................................14

*In re Corrugated Container Antitrust Litig.*,
  M.D.L. 310, 1981 WL 2093 (S.D. Tex. June 4, 1981), *aff'd*, 659 F.2d 1322
  (5th Cir. 1981).......................................................................................................19

*In re Currency Conversion Fee Antitrust Litig.*,
  224 F.R.D. 555 (S.D.N.Y. 2004) ..........................................................................24

*In re Currency Conversion Fee Antitrust Litig.*,
  264 F.R.D. 100 (S.D.N.Y. 2010) ..........................................................................22

*In re Currency Conversion Fee Antitrust Litig.*,
  No. 01 MDL 1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ............................9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)....................................................................................21

*In re Global Crossing Sec. and ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................................14

*In re High-Tech Employee Antitrust Litig.*,
  No. 11-CV-2509-LHK, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013)..................14

*In re Ins. Brokerage Antitrust Litig.*,
  282 F.R.D. 92 (D.N.J. 2012)..................................................................................23

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ....................................................................14

*In re Michael Milken and Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) ............................................................................11

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ..........................................................................21

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................................10

iv

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................................. *passim*

*In re Nat. Gas Commodities Litig.*,
  231 F.R.D. 171 (S.D.N.Y. 2005) ............................................................................24

*In re Nissan Radiator/Transmission Cooler Litig.*,
  No. 10 CV 7493 (VB), 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ...................................14

*In re Packaged Ice Antitrust Litig.*,
  No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ................................14, 16

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................11, 19

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  986 F. Supp. 2d 207 (E.D.N.Y. 2013) ..........................................................................13, 16

*In re Platinum and Palladium Commodities Litig.*,
  10-CV-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014).....................................................10

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
  584 F. Supp. 2d 697 (M.D. Pa. 2008) ......................................................................18

*In re Sinus Buster Products Consumer Litig.*,
  No. 12-CV-2429 (ADS) (AKT), 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014)....................14

*In re Stock Exchanges Options Trading Antitrust Litig.*,
  99-Civ.-00962, 2005 WL 1635158 (S.D.N.Y. July 8, 2005)............................................9, 10

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................................24

*In re Vitamin C Antitrust Litig.*,
  279 F.R.D. 90 (E.D.N.Y. 2012)............................................................................21, 23

*In re Vitamin C Antitrust Litig.*,
  No. 06-MD-1738, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012)..........................................12

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985)............................................................................17

*Karvaly v. eBay, Inc.*,
  245 F.R.D. 71 (E.D.N.Y. 2007)............................................................................11

*Menkes v. Stolt-Nielsen S.A.*,
  270 F.R.D. 80 (D. Conn. 2010)............................................................................10

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015)................................................................12

*Morris v. Affinity Health Plan, Inc*.,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012)..............................................................10

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)..............................................................................18

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd*.,
   No. 08-CV-42 JG VVP, 2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013) ............2, 19

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006).....................................................................11, 12

*Richardson v. L'Oreal USA, Inc.*,
   951 F. Supp. 2d 104 (D.D.C. 2013)...................................................................18

*Richburg v. Palisades Collection LLC*,
   247 F.R.D. 457 (E.D. Pa. 2008).........................................................................21

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)...............................................................................23

*Ross v. Am. Exp. Co.*,
   35 F. Supp. 3d 407, 438 (S.D.N.Y. 2014), *aff'd sub nom., Ross v. Citigroup,*
   *Inc.*, 630 F. App'x 79 (2d Cir. 2015) ................................................................12

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................................18

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011)...............................................................................24

*Trombley v. Nat'l City Bank*,
   759 F. Supp. 2d 20 (D.D.C. 2011).....................................................................18

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
   283 F.R.D. 199 (S.D.N.Y. 2012) .......................................................................21

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
   257 F.3d 256 (2d Cir. 2001)...............................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011).......................................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*.,
   396 F.3d 96 (2d Cir. 2005)...................................................................................9

*Wallace v. IntraLinks*,
302 F.R.D. 310 (S.D.N.Y. 2014) ........................................................................20

*Weber v. Gov't Emps. Ins. Co.*,
262 F.R.D. 431 (D.N.J. 2009) ............................................................................17

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) .............................................................................19

*Yim v. Carey Limousine NY, Inc.*,
No. 14-CV-5883(WFK)(JO), 2016 WL 1389598 (E.D.N.Y. Apr. 7, 2016)...........................18

**Statutes, Rules, and Regulations**

Federal Rules of Civil Procedure
Rule 23 ...........................................................................................................23
Rule 23(a)...............................................................................................20, 23, 24
Rule 23(a)(4)....................................................................................................23
Rule 23(b)(3)..............................................................................................23, 24
Rule 23(e).....................................................................................................1, 9
Rule 23(f).......................................................................................................13
Rule 23(g)........................................................................................................23

## EXPLANATION OF DEFINED TERMS AND CITATION FORMS

The following defined terms are used in this Memorandum.

**Parties**

- "Plaintiffs" are Alaska Electrical Pension Fund; City of New Britain, Connecticut; Genesee County Employees' Retirement System; County of Montgomery, Pennsylvania; and County of Washington, Pennsylvania.

- "Bank of America" is Bank of America, N.A.

- "Barclays" is Barclays Bank PLC together with Barclays Capital Inc.

- "BNP Paribas" is BNP Paribas SA.

- "Citigroup" is Citigroup Inc.

- "Credit Suisse" is Credit Suisse AG, New York Branch.

- "Deutsche Bank" is Deutsche Bank AG.

- "Goldman Sachs" is The Goldman Sachs Group, Inc.

- "HSBC" is HSBC Bank USA, N.A.

- "ICAP" is ICAP Capital Markets LLC.

- "JPMorgan" is JPMorgan Chase & Co.

- "Morgan Stanley" is Morgan Stanley & Co. LLC.

- "Nomura" is Nomura Securities International, Inc.

- "RBS" is The Royal Bank of Scotland Group PLC.

- "UBS" is UBS AG.

- "Wells Fargo" is Wells Fargo Bank, N.A.

- "Settling Defendants" are Bank of America, Barclays, Citigroup, Credit Suisse, Deutsche Bank, JPMorgan, and RBS, and each is individually a "Settling Defendant."

- "Released Bank Parties" are the Released Bank of America Parties, Released Barclays Parties, Released Citigroup Parties, Released Credit Suisse Parties, Released Deutsche

Bank Parties, Released JPMorgan Parties, and Released RBS Parties, as those terms are defined in the Settlement Agreements (Stips., §1.1), and each is individually a "Released Bank Party."

- "Settling Parties" are Plaintiffs and Settling Defendants.

- "Non-Settling Defendants" are BNP Paribas, Goldman Sachs, HSBC, ICAP, Morgan Stanley, Nomura, and UBS.

- "Defendants" are Settling Defendants and Non-Settling Defendants.

**Accompanying [Proposed] Order and Settlement Agreements**

- "Preliminary Approval Order" is the [Proposed] Order Preliminarily Approving Settlement Agreements, Certifying the Settlement Classes, and Appointing Class Counsel and Class Representatives for the Settlement Class.

- "Bank of America Stip." is the Stipulation and Agreement of Settlement with Bank of Bank of America, N.A.

- "Barclays Stip." is the Stipulation and Agreement of Settlement with Barclays Bank PLC and Barclays Capital Inc.

- "Citigroup Stip." is the Stipulation and Agreement of Settlement with Citigroup Inc.

- "Credit Suisse Stip." is the Stipulation and Agreement of Settlement with Credit Suisse AG, New York Branch.

- "Deutsche Bank Stip." is the Stipulation and Agreement of Settlement with Deutsche Bank AG.

- "JPMorgan Stip." is the Stipulation and Agreement of Settlement with JPMorgan Chase & Co.

- "RBS Stip." is the Stipulation and Agreement of Settlement with The Royal Bank of Scotland.

- "Settlement Agreements" are the Bank of America Stip., Barclays Stip., Citigroup Stip., Credit Suisse Stip., Deutsche Bank Stip., JPMorgan Stip., and RBS Stip.

- "Stips." is the citation form used to cite paragraphs of the Settlement Agreements where the paragraph reference in each of the Settlement Agreements is the same.  To the extent any paragraph numbers differ between Settlement Agreements, the individual agreements are cited.

**Other Terms**

- "Barclays Order" is the Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings, and Imposing Remedial Sanctions, *In re: Barclays PLC, Barclays Bank PLC and Barclays Capital Inc.*, CFTC Docket No. 15-25__ (May 20, 2015).

- "CAC" is the Consolidated Amended Class Action Complaint, ECF No. 164 (Feb. 12, 2015).

- Unless otherwise defined herein, all other capitalized terms have the same meaning as set forth in the Settlement Agreements.

## PRELIMINARY STATEMENT

Plaintiffs and Settling Defendants Bank of America, Barclays, Citigroup, Credit Suisse, Deutsche Bank, JPMorgan, and RBS entered into proposed Settlements (attached to the Declaration of Christopher M. Burke, filed herewith, as Exhibits 1-7), providing for a total payment of $324,000,000 to the Settlement Class. Settling Defendants will also provide valuable cooperation, transaction data, documents, proffers, and witness interviews, which will aid in Plaintiffs' ongoing litigation against Non-Settling Defendants.

The Settlement Agreements were reached after months of arm's-length negotiations between experienced counsel and are an excellent result for the Settlement Class. Accordingly, pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs respectfully seek entry of the accompanying Preliminary Approval Order submitted herewith. Entry of the Preliminary Approval Order triggers Settling Defendants' cooperation obligations as well as their obligations to fund the settlement. To grant preliminary approval, the Court need only determine the settlements are sufficiently fair, reasonable, and adequate to fall within the range of possible approval. As set forth below, the Settlement Agreements satisfy this standard.

## REQUESTED PROCEDURES AND TIMETABLE

Plaintiffs propose to file a separate Motion for Approval of the Form and Manner of Notice to the Settlement Class and the Plan of Distribution ("Notice Motion"). The Notice Motion would be filed after: (i) Settling Defendants produce transaction data; (ii) Plaintiffs develop a proposed Plan of Distribution based on transaction data analysis; and (iii) Settling Defendants produce Counterparty Lists, *i.e.*, the names and addresses of members of the Settlement Class who transacted in ISDAfix Instruments with Settling Defendants, or make arrangements to provide notice by alternative means to those counterparties. Court approval of

1

the relief set out in the Notice Motion would trigger notice to the Settlement Class.[1]  Currently, Settling Defendants are preparing to produce transaction data and Counterparty Lists.  *See* Stips., §§8.2, 11.4.  To keep the Court informed as to the timing of the Notice Motion, the Settling Parties have agreed to provide the Court with a status report 90 days after entry of the Preliminary Approval Order and every 60 days thereafter.  *See* Stips., §8.2.

Lead Counsel recommend this two-step preliminary approval process for several reasons. First, entry of the Preliminary Approval Order triggers Settling Defendants' cooperation obligations.  Lead Counsel expect that prompt production of Settling Defendants' documents and data will inform Plaintiffs' discovery efforts with respect to Non-Settling Defendants.  Settling Defendants' data is also necessary for Plaintiffs to develop a plan of distribution.  Second, entry of the Preliminary Approval Order triggers the funding of the settlement, allowing the funds in the Escrow Account to begin earning interest.  And, third, deferring notice will result in a more efficient notice process.  Deferring notice until a plan of distribution is developed will allow the notice to describe how claims will be treated in the distribution, giving members of the Settlement Class the information necessary to evaluate their options with respect to the Settlements in a single communication.  Deferring notice also has the advantage of potentially reducing the number of notices sent to the Settlement Class, should Plaintiffs enter into additional settlements or the Action reach a merits conclusion.

---

[1]     Similar two-step preliminary approval processes have been adopted in several recent class action settlements. *See, e.g.*, *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-cv-7789, ECF No. 536, ¶¶8, 9 (S.D.N.Y. Dec. 15, 2015) (preliminary approval of $2 billion settlements and ordering notice plan and plan of distribution to be submitted for approval at a later time); *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42 JG VVP, 2013 WL 4525323, at *6 (E.D.N.Y. Aug. 27, 2013) (separate orders granting preliminary approval of $112 million settlements and approving a notice program); *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 480 (S.D.N.Y. 1998) (noting that "it is appropriate, and often prudent, in massive class actions" to defer consideration of the plan of distribution); *In re "Agent Orange" Prod. Liab. Litig., MDL No. 381*, 818 F.2d 145, 170 (2d Cir. 1987) (approving procedure where plan of distribution followed final approval and stating that "[t]he formulation of the plan in a case such as this is a difficult, time-consuming process").

For the foregoing reasons, Plaintiffs request that the Court approve this two-step preliminary approval process. Plaintiffs' motion for final approval would follow in due course.

## SUMMARY OF THE ACTION

Plaintiffs allege Defendants colluded to manipulate "ISDAfix," a global benchmark reference rate used in the interest rate derivatives market. CAC, ¶1. Defendants are 14 banks that dominate the market for interest rate derivatives, as well as ICAP, an interdealer broker that served as the administrator of the ISDAfix-setting process during the Class Period. CAC, ¶¶1, 43. ISDAfix rates are published daily and were designed to represent the current market rate for the fixed leg of a standard fixed-for-floating interest rate swap. CAC, ¶¶2, 71. ISDAfix rates are published for various currencies and maturities. CAC, ¶¶3, 68.

During the Class Period, USD ISDAfix rates were set each day between 11:00 a.m. and 11:15 a.m. Eastern Time through a two-step process administered by ICAP. CAC, ¶¶4, 97. First, beginning at 11:00 a.m., ICAP calculated "reference rates." CAC, ¶¶4, 98. The reference rates were supposed to represent ICAP's estimate of the average trading rate of interest rate swaps for USD at 11:00 a.m. CAC, ¶4. Second, ICAP circulated the reference rates to Defendants and polled each of them as to their actual bid/offer spreads. CAC, ¶¶4, 71-73. ICAP then adjusted the reference rate based on Defendants' submissions; the resulting figures were the published ISDAfix rates. CAC, ¶4.

Plaintiffs allege that Defendants rigged both steps of the USD ISDAfix rate-setting process. Defendants allegedly colluded to manipulate the interest rate swap market for the purpose of impacting the reference rate. CAC, ¶6. Defendants allegedly shared competitively sensitive information about their exposures in order to coordinate their trading strategies leading up to 11:00 a.m. *See* CAC, ¶¶6, 133-38 (discussing "banging the close" strategy); CAC, ¶¶6, 151-61 (discussing ICAP delaying entry of market-moving trades). The CAC sets forth

economic evidence of such market manipulation on nearly every trading day in the Class Period. CAC, ¶¶7, 140-50.

Plaintiffs allege that Defendants rigged the second step of the rate-setting process by agreeing not to submit the actual rates that they would trade on but, instead, to accept the ICAP reference rate regardless of whether it matched their actual bid/offer spreads. CAC, ¶¶8, 98-101. As set forth in the CAC, nearly every day for multiple years, Defendants submitted the same bid/ask spread, down to five decimal points (*e.g.*, 3.20219%). CAC, ¶¶9, 102-08, 115-21. The statistical likelihood of such a perfect alignment happening without coordination is infinitesimal, and economic analysis shows Defendants' real world views were not so aligned at any other time of the day. CAC, ¶¶102, 109-10.

Plaintiffs allege that Defendants rigged the USD ISDAfix rates in order to extract supra-competitive profits on their derivative positions. CAC, ¶¶2, 66, 139. Plaintiffs allege that as a result, they and the other members of the class were injured each time they received cash flows from a financial instrument tied to a manipulated ISDAfix rate or traded in markets Defendants manipulated in order to influence ISDAfix. CAC, ¶¶192-209.

Based on this conduct, Plaintiffs brought federal antitrust claims and state law claims against Defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and tortious interference with contract. CAC, ¶¶242-85.

The first complaint substantially alleging the foregoing was filed on September 4, 2014. ECF No. 1 (the "*Alaska Electrical* Complaint"). Several related actions were subsequently filed, those actions were consolidated, an amended complaint was filed, and the Court appointed Scott+Scott, Attorneys at Law, LLP; Robbins Geller Rudman & Dowd LLP; and Quinn Emanuel Urquhart & Sullivan LLP as Lead Counsel. ECF Nos. 91, 98, 99, 109, 137.

Prior to filing the *Alaska Electrical* Complaint, Lead Counsel carried out an extensive, year-long investigation.  Lead Counsel filed suit on behalf of Plaintiffs only after they believed that they had uncovered substantial evidence of wrongdoing.  The *Alaska Electrical* Complaint was filed **before** the U.S. Commodity Futures Trading Commission ("CFTC") reportedly referred the case to the U.S. Department of Justice on September 9, 2014, upon uncovering evidence of possible criminal wrongdoing.[2]  In connection with the pre-suit investigation, Lead Counsel retained world-renowned economists who analyzed trading patterns and ISDAfix submissions.  This expert analysis is set forth in the CAC.  Lead Counsel also consulted with industry insiders with knowledge about ISDAfix, the ISDAfix rate-setting process, and the financial instruments that are pegged to ISDAfix.  Lead Counsel's investigation went beyond the public record and resulted in initial complaints that were well-developed and supported by economic and other evidence.  *See also* ECF No. 125 at 11-14 (further details of investigation).

On December 12, 2014, Defendants jointly moved to dismiss the amended complaint. ECF No. 151.  Plaintiffs elected, pursuant to the Court's rules, to amend their complaint in lieu of filing an opposition.  On February 12, 2015, Plaintiffs filed the CAC.  ECF No. 164.  On April 13, 2015, Defendants filed a motion to dismiss the CAC.  ECF No. 173.

On May 20, 2015, while the motion to dismiss was pending, the CFTC announced it had entered into a regulatory settlement with Barclays, which included a $115,000,000 fine on Barclays concerning certain ISDAfix-related conduct.  Barclays Order at 2.  The Barclays Order revealed that Barclays' employees admitted internally that "ISDAfix is manipulated," traders at Barclays traded during the ISDAfix fixing window in a manner designed to impact market prices, and Barclays responded to the ISDAfix poll with submissions that did not match its actual

---

[2]    *See* Matthew Leising and Tom Schoenberg, *CFTC Said to Alert Justice Department of Criminal Rate Rigging*, BLOOMBERG (Sept. 8, 2014).

rates.  Barclays Order at 2-12.  The Court entered an order permitting Plaintiffs to reference the Barclays Order in their memorandum in opposition to the motion to dismiss.  ECF No. 192.

On March 28, 2016, the Court issued its Opinion and Order granting in part and denying in part Defendants' motion to dismiss.  ECF No. 209.  The Court denied the motion as to the antitrust claims against all Defendants and the state law breach of contract and unjust enrichment claims against all Defendants other than Nomura (and ICAP, against which they were not brought).  *Id*. at 34.

A pretrial conference is set for May 5, 2016.  ECF No. 210.

<u>SUMMARY OF THE SETTLEMENT</u>

Other than the monetary component, the key terms of each Settlement Agreement are substantially identical, allowing for an omnibus motion for preliminary approval of the seven Settlements and a single notice to issue to the Settlement Class.  The Settlement Agreements provide for a total of $324,000,000 in monetary relief as well as oblige Settling Defendants to provide confirmatory discovery, which will assist Plaintiffs in the prosecution of the Action against Non-Settling Defendants.  Upon the Effective Date of the Settlement Agreements, Plaintiffs and members of the Settlement Class that do not exclude themselves will give up their rights to sue Settling Defendants and Released Bank Parties for Released Class Claims.  Stips., §§7.1, 7.2; *see also* Stips. Exhibit B, ¶¶9, 11.

A.      **Stipulation as to Certification of the Settlement Class**

Each of the Settlement Agreements is made on behalf of an identical proposed Settlement Class and, subject to specified exclusions, is defined as:

all Persons or entities who entered into, received or made payments on, terminated, transacted in, or held an ISDAfix Instrument during the Settlement Class Period [January 1, 2006 through January 31, 2014].[3]

Stips., §1.46.  An ISDAfix Instrument is defined as:

(i) any and all interest rate derivatives, including but not limited to any and all swaps, swap spreads, swap futures, and swaptions, denominated in USD or related to USD interest rates, and (ii) any financial instrument, product, or transaction related in any way to any ISDAfix Benchmark Rates, including but not limited to any and all instruments, products, or transactions that reference ISDAfix Benchmark Rates and any and all instruments, products, or transactions that are relevant to the determination or calculation of ISDAfix Benchmark Rates.

Stips., §1.21.  ISDAfix Benchmark Rates are defined as:

any and all tenors of USD ISDAfix, including any and all USD ISDAfix rates and USD ISDAfix spreads, and any and all "reference rates" distributed as part of the USD ISDAfix submission process.

Stips., §1.20.

## B.    Monetary Component

The monetary component of each of the Settlement Agreements is set out below:

| Bank of America | $  50,000,000 | Deutsche Bank | $  50,000,000 |
| Barclays | $  30,000,000 | JPMorgan | $  52,000,000 |
| Citigroup | $  42,000,000 | RBS | $  50,000,000 |
| Credit Suisse | $  50,000,000 | Total | $ 324,000,000 |

As provided in each Settlement Agreement, all settlement funds are non-recapture.  That is, as of the Effective Date, Settling Defendants have no right to the return of the settlement fund or any portion thereof for any reason.  Stips., §10.3.

## C.    Confirmatory Discovery Provisions

The Settlement Agreements obligate Settling Defendants to provide confirmatory discovery, including, subject to Court Orders and any applicable laws, privileges, and other

---

[3]    "Excluded from the Settlement Class are Defendants and their employees, affiliates, parents, subsidiaries, and co-conspirators, should any exist, whether or not named in the Amended Complaint, and the United States Government, and all of the [Released Bank Parties]; provided, however, that Investment Vehicles shall not be excluded from the definition of the Settlement Class."  Stips., §1.46.

protections:   (a) production of reasonably available transaction data involving ISDAfix Instruments during the Settlement Class Period, (b) production of documents produced to CFTC (and other regulators, to the extent not duplicative) relating to potential wrongdoing related to ISDAfix Benchmark Rates, (c) attorney proffers relating to allegations in the CAC, and (d) up to three witness interviews (per Settling Defendant) of current employees relating to allegations. Stips., §11.4(a)-(d).   These obligations are triggered by the entry of the Preliminary Approval Order.  Stips., §11.4.

### D.    Release of Claims

In consideration for the benefits of the Settlements described above, and upon the Effective Date, the Action, all claims asserted in the Action, and all Released Class Claims belonging to Plaintiffs and Releasing Class Parties will be dismissed with prejudice as against each Settling Defendant, and Plaintiffs and each of the Settlement Class Members (and anyone claiming through or on behalf of them) will be permanently barred and enjoined from asserting any of the Released Class Claims against each Settling Defendant and Released Bank Party in any action or proceeding.  Stips., Exhibit B, ¶¶9, 11; *see also* Stips., §§7.1, 7.2.  The release covers those claims "arising from or relating to the factual predicate of the Action."  Stips., §1.39.

### E.    Termination Provisions

As provided in the termination, or "blow" provision, if the Opt-Outs reach a number that represents a "material portion" of the transactions that would be eligible for compensation under a Settlement Agreement, as determined by a jointly-selected Mediator, then each Settling Defendant has the option to either seek a reduction remedy or terminate the Settlement Agreement.  The Mediator will have sole discretion to determine what remedy is appropriate.  In

the event the Mediator determines that some reduction is appropriate, the amount of the reduction will be paid back to the Settling Defendant; provided, however, that the Mediator may not reduce the Settlement Amount by more than what the Opt-Outs likely would have been eligible to receive collectively (but for their exclusion) from the Settlement Fund (assuming all putative class members submitted claims).  Stips., §10.4 (a)-(d).

### F.    Attorneys' Fees, Expenses, and Service Awards

The Settlement Agreements reserve Plaintiffs' right to request interim attorneys' fees, reimbursement of expenses or charges in connection with prosecuting the Action, and/or class representative service awards.  Stips., §§9.1, 9.2.  The Settlement Class would be given notice of any such application or applications, which also would be subject to Court approval.

## ARGUMENT

## I.   THE SETTLEMENTS MEET THE STANDARD FOR PRELIMINARY APPROVAL

"Rule 23(e) requires court approval of a class action settlement."  *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006).  "In determining whether to grant preliminary approval, the court starts with the proposition that 'there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.'"  *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2011 WL 1706778, at *2 (D. Vt. May 4, 2011); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("'The compromise of complex litigation is encouraged by the courts and favored by public policy.'").[4]

"Preliminary approval is generally the first step in a two-step process before a class-action settlement is approved."  *In re Stock Exchanges Options Trading Antitrust Litig.*, 99-Civ.-

---

[4]    Unless otherwise noted, citations are omitted and emphasis is added.

00962, 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005).  "In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice."  *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*Nasdaq II*").  "The second step is to give notice to class members and to hold a hearing to determine whether final approval of the settlement should be given."  *Stock Exchanges*, 2005 WL 1635158, at *5.

In conducting a preliminary approval inquiry, a court considers both the "'negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness.'"  *In re Platinum and Palladium Commodities Litig.*, 10-CV-3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014).  Preliminary approval is appropriate where the settlement "'is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . , and where the settlement appears to fall within the range of possible approval.'"  *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010).

As demonstrated below, the Settlement Agreements warrant preliminary approval because they are procedurally and substantively fair.

### A.  The Settlements Are Fair

"To determine procedural fairness, courts examine the negotiating process leading to the settlement."  *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012). Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness."  *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

The Settlement Agreements are the product of intensive settlement negotiations that took place over the course of many months among experienced counsel.  Discussions began in June 2015 with Barclays and consisted of a series of face-to-face meetings and phone calls.  After Barclays and Plaintiffs reached an agreement on the structure of a settlement in September 2015, Lead Counsel contacted other Defendants or, in some cases, received communications from other Defendants, regarding their interest in possible resolution of the Action.  The negotiations with each Settling Defendant were hard-fought, at times extremely contentious, and always at arm's-length.

Lead Counsel believe Plaintiffs' claims have substantial merit but acknowledge the expense and uncertainty of continued litigation against Settling Defendants.  In recommending that the Court approve the Settlements, Lead Counsel have taken into account the uncertain outcome and risks of further litigation and believe the Settlements confer significant benefits on the Settlement Class in light of the circumstances here.  Based on these considerations, there is "a strong initial presumption that the compromise is fair and reasonable." *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("great weight" given to advice of experienced counsel).

### B.  The Settlements Are Substantively Fair

"In terms of the overall fairness, adequacy, and reasonableness of the settlement, a full fairness analysis is unnecessary at this stage; preliminary approval is appropriate where a proposed settlement is merely within the range of possible approval." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006); *see also Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007) ("In the context of a motion for preliminary approval of a class

action settlement, the standards are not so stringent as those applied when the parties seek final

approval."). Nevertheless, some courts have analyzed the "*Grinnell* factors" in assessing

whether a proposed settlement falls within the range of possible approval. *See*, *e.g.*, *Reade-*

*Alvarez*, 237 F.R.D. at 34. The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction
> of the class to the settlement, (3) the stage of the proceedings and the amount of
> discovery completed, (4) the risks of establishing liability, (5) the risks of
> establishing damages, (6) the risks of maintaining the class action through the
> trial, (7) the ability of the defendants to withstand a greater judgment, (8) the
> range of reasonableness of the settlement fund in light of the best possible
> recovery, and (9) the range of reasonableness of the settlement fund to a possible
> recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds*

*by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Each of the *Grinnell* factors

supports preliminary approval of the Settlements.

### 1.    Complexity, Expense, and Likely Duration of the Litigation

"Antitrust class actions 'are notoriously complex, protracted, and bitterly fought.'"

*Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015); *see also Virgin Atl.*

*Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual

complexities of antitrust cases"); *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738, 2012 WL

5289514, at *4 (E.D.N.Y. Oct. 23, 2012) ("[F]ederal antitrust cases are complicated, lengthy . . .

bitterly fought, as well as costly."). This case is no different.

This case is especially complex given the global nature and size of the interest rate

derivatives market. CAC, ¶¶51, 55, 62. Plaintiffs would need to take discovery from each of the

Settling Defendants with the goal of proving that each of them participated in the unlawful

conspiracy alleged. *See Ross v. Am. Exp. Co.*, 35 F. Supp. 3d 407, 438 (S.D.N.Y. 2014), *aff'd*

*sub nom., Ross v. Citigroup, Inc.*, 630 F. App'x 79 (2d Cir. 2015), *as corrected* (Nov. 24, 2015)

("Plaintiffs must provide evidence 'pertaining to each defendant' to demonstrate that that defendant participated in the conspiracy.").  In addition, because the mechanisms used for fixing prices in this case are more complex than simply agreeing to set a price, there would be a need for numerous experts on subjects such as the existence of the conspiracy (based, in part, through proof of market manipulation), class-wide impact of the conspiracy, and damages on multiple financial instruments.  CAC, ¶¶55, 62.  This would necessitate extensive expert discovery in light of the complex subject matter of the Action.  And, likely, there would be *Daubert* motion practice by both sides.

Class certification likely would be a battle, with the losing party likely seeking interlocutory review pursuant to Rule 23(f).  This would further extend the timeline of the litigation.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 212 n.13 (E.D.N.Y. 2013) ("In the *Wal-Mart* case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision.").

Settling Defendants almost certainly would have pursued extensive pre-trial motions, including summary judgment motions and motions *in limine*.  Finally, trial in this Action would be lengthy, and the losing party likely would appeal any adverse jury verdicts.  In sum, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result."  *Nasdaq*, 187 F.R.D. at 477. This factor weighs in favor of preliminary approval.

## 2. Reaction of the Class to the Settlements

In the event objections are received after notice is disseminated, Lead Counsel will address them in connection with the motion for final approval.

### 3.     Stage of the Proceedings

"[C]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013).  The relevant inquiry for this factor, therefore, is "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."  *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("[T]he question is whether the parties had adequate information about their claims.").  This factor does not require extensive discovery, or indeed any discovery at all, "as long as '[class counsel] have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the settlement.'" *AOL Time Warner*, 2006 WL 903236, at *10.[5]  If extensive discovery was required for settlement approval, class action plaintiffs would be deprived of the "ice breaker" settlement strategy, which is often used in multi-party cases, as it was here, to "'break the ice' and bring other defendants to the point of serious negotiations."  *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *see also In re High-Tech Employee Antitrust Litig.*, No. 11-CV-2509-LHK, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (stating that ice breaker

---

[5]     *See also In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 CV 7493 (VB), 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (stating that "[a]lthough the parties have not engaged in extensive discovery, . . . the plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement"); *In re Sinus Buster Products Consumer Litig.*, No. 12-CV-2429 (ADS) (AKT), 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014) (finding that the litigants had "conducted meaningful pre-trial discovery," which included "an 'extensive' investigation" prior to filing the consolidated class complaint); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *6 (E.D. Mich. Aug. 2, 2010) (stating that "'[t]he overriding theme of our caselaw is that formal discovery is not necessary'" so long as the class is not prejudiced and there is a factual basis for the settlement); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) (stating that "formal discovery was [not] a necessary ticket to the bargaining table").

settlements apply pressure on the non-settling defendants because they "remain jointly and severally liable for all damages caused by the conspiracy, including damages from [settling defendant's] conduct").

Lead Counsel conducted an extensive, year-long pre-suit investigation and have engaged in sufficient preparation for settlement negotiations, briefing, and trial preparation to inform their views on the strength of Plaintiffs' claims and the defenses to liability. As described in the Summary of the Action section, *supra*, prior to filing the original complaint, in addition to reviewing the relevant publicly available facts, Lead Counsel retained economists and industry experts who performed analyses of trading patterns and ISDAfix submissions, as well as obtained other evidence that could be used to advance Plaintiffs' claims. The expert analysis has also informed Lead Counsel's views on how often ISDAfix was manipulated and what instruments were affected. In connection with settlement negotiations, Lead Counsel also engaged the experts to conduct damages analyses for the purpose of assessing the range of each Settling Defendant's potential exposure.

As to defenses, Lead Counsel opposed Defendants' motion to dismiss, in which Defendants raised multiple defenses to liability (discussed, *infra*, at §I.B.4). Had Settling Defendants not settled and the litigation proceeded against them, Plaintiffs were likely to face these arguments again after development of the factual record. The motion to dismiss briefing therefore supplemented Lead Counsel's already considerable knowledge of the strengths of Plaintiffs' claims and the defenses they are likely to face at trial.

Finally, Lead Counsel are also informed by the Barclays Order of May 20, 2015. The Barclays Order revealed evidence of relevant conduct with respect to ISDAfix, including transcripts of traders' chats concerning Barclays' trades around the ISDAfix fixing window and

its rate submission practices. Barclays Order at 2-12. *See*, *e.g.*, *Packaged Ice*, 2010 WL 3070161, at *6 (approving settlement based in part on negotiations that were informed by the fruits of government investigations).

Accordingly, Lead Counsel's well-informed views of the strength of claims and likely defenses weigh in favor of preliminary approval.

### 4.   Risks of Establishing Liability and Damages

In assessing this factor, "the Court should balance the benefits afforded the Class, including the ***immediacy*** and ***certainty*** of a recovery, against the continuing risks of litigation.'" *Payment Card*, 986 F. Supp. 2d at 224 (emphasis in original). Because Plaintiffs continue to litigate against the Non-Settling Defendants, Lead Counsel must be circumspect in discussing potential risks in establishing liability, damages, and (in §I.B.5, *infra*) maintaining a class action through trial, but provide the following analysis for settlement purposes only.

As noted above, Defendants filed a motion to dismiss, arguing, among other things, that the CAC: (i) failed to plausibly allege a violation of Section 1 of the Sherman Act; (ii) failed to adequately allege injury-in-fact and damages as to all claims; (iii) failed to adequately plead a breach of a specific contract; and (iv) brought claims that are time-barred. ECF No. 173 at 2-4. Although, in Lead Counsel's view, the Court properly rejected those arguments, had Settling Defendants not agreed to settle, they were prepared to vigorously contest liability and damages on these and other grounds.

Even if liability was established, at trial, Plaintiffs would face the complexities inherent in proving damages to the jury. There is no doubt that at trial the issue inevitably would involve a "battle of the experts." *Nasdaq*, 187 F.R.D. at 476. "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad

nonactionable factors . . . ."  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985).  Thus, there is a substantial risk that a jury might accept one or more of Settling Defendants' damages arguments and award nothing at all or award less than the $324,000,000 that, if approved, would be available to the Settlement Class under these Settlements.  "Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *Nasdaq*, 187 F.R.D. at 476.  This factor, therefore, weighs in favor of preliminary approval.

### 5.    Risks of Maintaining a Class Action Through Trial

While Plaintiffs believe that the Court will certify a litigation class, Settling Defendants would vigorously oppose the motion.  Class certification in this Action would likewise raise complex legal and factual issues.  Further, even if the Court were to certify a litigation class, certification can be reviewed and modified at any time.  And, as noted above, it can reasonably be expected that the losing party on class certification would appeal the certification order.  Thus, there is a risk that the Action, or particular claims, might not be maintained as a class action through trial.  *See Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory").  The risks associated with class certification weigh in favor of approving the Settlement Agreements.

### 6.    Ability of Settling Defendants to Withstand a Greater Judgment

"[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement."  *Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009).  Moreover, "the benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to

17

withstand a larger judgment." *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008). Here, the financial obligations the Settlements impose on Settling Defendants are substantial. Further, Settling Defendants have agreed to provide confirmatory discovery, including discovery that will be useful to Plaintiffs in pursuing their case against Non-Settling Defendants. Therefore, whether or not Settling Defendants might be able to withstand a greater judgment, that does not undermine the reasonableness of the Settlements here.

### 7. Reasonableness of the Settlements in Light of the Best Possible Recovery and Attendant Litigation Risks

The range of reasonableness factor weighs the relief provided in the settlement against the strength of the plaintiff's case, including the likelihood of obtaining a recovery at trial. This factor "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). In applying this factor, "[d]ollar amounts [in class action settlement agreements] are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987). At preliminary approval, the range of reasonableness factor is satisfied when, as here, there are no obvious doubts as to the adequacy of the settlement amount. *See*, *e.g.*, *Yim v. Carey Limousine NY, Inc.*, No. 14-CV-5883(WFK)(JO), 2016 WL 1389598, at *4 (E.D.N.Y. Apr. 7, 2016) (granting preliminary approval of settlement without submission of "a specific number as [plaintiffs'] best possible recovery, particularly at this stage of preliminary approval, where the level of inquiry is more lenient than at final approval").[6]

---

[6]    *See also Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 24-26 (D.D.C. 2011) (granting preliminary approval based on no obvious deficiency on adequacy of settlement amount but indicating additional information required for final approval); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 569 (N.D. Ill. 2011) (same); *Richardson v. L'Oreal USA, Inc.*, 951 F. Supp. 2d 104, 107-08 (D.D.C. 2013) (preliminarily approving settlement where valuing

In Lead Counsel's view, the $324,000,000 aggregate settlement fund is an excellent result for the Settlement Class. *PaineWebber*, 171 F.R.D. at 125 (stating "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation"). If the Court preliminarily approves the Settlements, that the funds will be paid into the Escrow Account and will begin earning interest also weighs in favor of approval. *See AOL Time Warner*, 2006 WL 903236, at *13 (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery"). Further, as to the antitrust claims, Plaintiffs may recover the entire amount of damages against the Non-Settling Defendants (after an offset post-trebling for the settlement amounts) under joint and several liability. *See In re Corrugated Container Antitrust Litig.*, M.D.L. 310, 1981 WL 2093, at *17 (S.D. Tex. June 4, 1981), *aff'd*, 659 F.2d 1322 (5th Cir. 1981) (noting that partial settlements preserved plaintiffs' ability to seek the entire amount of damages from non-settling defendants weighed in favor of settling approval).

When evaluating the Settlements, the Court should also consider the value of Settling Defendants' confirmatory discovery. As Plaintiffs continue to litigate their claims against the Non-Settling Defendants, access to Settling Defendants' confirmatory discovery will inform Plaintiffs' discovery efforts with respect to Non-Settling Defendants. The provision of such assistance is a substantial benefit to the Settlement Class and weighs in favor of approval of the Settlement Agreements. *See Precision Assocs.*, 2013 WL 4525323, at *9 (defendant's

---

monetary damages would be challenging). Even at final approval, in some cases, "the exact amount of damages need not be adjudicated . . . ." *Nasdaq*, 187 F.R.D. at 478; *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (affirming district court approval of a settlement without quantifying the expected value of continued litigation where quantifying damages "would have required testimony by a damages expert," and that testimony would have "resulted in a lengthy and expensive battle of the experts, with the costs of such a battle borne by the class − exactly the type of litigation the parties were hoping to avoid by settling").

"cooperation adds considerable value to the Settlement and must be factored into an analysis of the overall reasonableness of the agreement").

## II.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Certification of a settlement class must satisfy the requirements of Rule 23(a), as well as at least one of the provisions of 23(b).  *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012).  As demonstrated below, the proposed Settlement Class meets these requirements.

### A.  The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) permits an action to be maintained as a class action if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

#### 1.     Numerosity

In cases like this one involving widely traded instruments, numerosity is readily satisfied. *See Wallace v. IntraLinks*, 302 F.R.D. 310, 315 (S.D.N.Y. 2014) ("common sense assumptions . . . suffice to demonstrate numerosity"); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity presumed if a class has over 40 members).

#### 2.     Common Questions of Law or Fact

The commonality requirement is easily met because it is satisfied by a single common question of law or fact.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011); *see also Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007) ("allegations of the existence of . . . conspiracy are susceptible to common proof").  The nature of antitrust claims brought under Section 1 of the Sherman Act has led courts to routinely,

and almost uniformly, find that commonality exists.  *See also Richburg v. Palisades Collection LLC*, 247 F.R.D. 457, 462 (E.D. Pa. 2008) ("'Antitrust, price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy.'").[7]  This case is no different.  Proof of Defendants' alleged conspiracy to rig ISDAfix will be the heart of this case at trial and is crucial to the claims of all members of the Settlement Class.  Each member of the Settlement Class has a common interest in proving the existence, scope, effectiveness, and impact of the alleged conspiracy.

### 3.  Typicality

The typicality standard is satisfied when "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'"  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 208 (S.D.N.Y. 2012) (typicality requirement "'not demanding'").

Here, Plaintiffs' claims are typical because they arise from the same events or course of conduct that gives rise to the claims of the Settlement Class − namely, Defendants' alleged participation in an unlawful conspiracy to rig ISDAfix.  *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175(JG)(VVP), 2014 WL 7882100, at *31 (E.D.N.Y. Oct. 15, 2014) ("Because the representative plaintiffs will seek to prove that they were harmed by the same overall course of conduct and in the same way as the remainder of the class, their claims are by all appearances typical of the class.").  All members of the Settlement Class, including

---

[7]     *See also In re Carbon Black Antitrust Litig.*, MDL No. 1543, 2005 WL 102966, at *11 (D. Mass. Jan. 18, 2005) (collecting antitrust cases satisfying commonality requirement based on the existence and scope of conspiracies); *see, e.g., In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 510 (S.D.N.Y. 1996) ("*NASDAQ III*") (commonality satisfied based on common questions as to the existence, scope, effectiveness, and impact of conspiracy and the appropriate injunctive and monetary relief); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 99 (E.D.N.Y. 2012) (commonality satisfied based on common question of whether defendants' price-fixing agreement caused an artificial increase in the market price of vitamin C).

Plaintiffs, seek redress for the impact ISDAfix's manipulation had on their ISDAfix Instruments.

Because these are the same elements that both Plaintiffs and the other members of the Settlement Class would have to prove separately if they brought individual actions, the typicality requirement is satisfied.

### 4.    Adequacy

Adequacy is met if the class representatives do not have interests that are antagonistic to those of the class and their chosen counsel is qualified, experienced, and able to conduct the litigation.  *See In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111-12 (S.D.N.Y. 2010).

Plaintiffs Alaska Electrical Pension Fund; City of New Britain, Connecticut; Genesee County Employees' Retirement System; County of Montgomery, Pennsylvania; and County of Washington, Pennsylvania are adequate representatives of the Settlement Class and should be appointed as class representatives, solely for settlement purposes.   There are no conflicts between Plaintiffs and members of the Settlement Class concerning the subject matter of this litigation.  All Plaintiffs purchased ISDAfix Instruments affected by Defendants' conduct.  The same is true of the other members of the Settlement Class.  Thus, Plaintiffs' interest in proving liability and damages is entirely aligned with that of the Settlement Class.

Lead Counsel appointed by the Court are experienced in class and antitrust litigation and have served in leadership roles in numerous major antitrust and other class actions in courts throughout the United States.  *See also* ECF No. 125 at 14-21 (discussing Lead Counsel's qualifications).  Lead Counsel have diligently represented the interests of the Settlement Class in this litigation and will continue to do so.  Accordingly, the requirements of Rule 23(a)(4), as well as the requirements of Rule 23(g) relating to the qualifications of Lead Counsel, are satisfied.

## B.  The Requirements of Rule 23(b)(3) Are Satisfied

Once it is determined that the proposed class satisfies Rule 23(a), a class should be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Here, questions of law or fact common to the Settlement Class predominate over any individualized questions, and a class action is manifestly the superior method of adjudicating the controversy.

Predominance exists where the questions that are capable of common proof are "'more substantial than the issues subject only to individualized proof.'"  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015).  Predominance is a "test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).[8]

Here, proof of an unlawful agreement will consist of class-wide, common evidence that will "focus on [Defendants'] conduct, not on the actions of putative class members."  *Dial Corp. v. News Corp.*, No. 13cv6802, 2015 WL 4104624, at *5 (S.D.N.Y. June 18, 2015).  In addition, predominance is demonstrated, as in this case, where the impact of the asserted antitrust violation, as well as the damages arising out of the misconduct, can be shown on a class-wide basis.  *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 338 (3d Cir. 2011) ("All plaintiffs here claim injury that by reason of defendants' conduct . . . has caused a common and measurable form of

---

[8]     *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 108 (D.N.J. 2012) ("Given that antitrust class action suits are particularly likely to contain common questions of fact and law, it is not surprising that these types of class actions are also generally found to meet the predominance requirement"); *Vitamin C*, 279 F.R.D. at 109 (stating that in horizontal price-fixing cases, "courts have frequently held that the predominance requirement is satisfied because the existence and effect of the conspiracy are the prime issues in the case and are common across the class"); *Brown v. Pro Football, Inc.*, 146 F.R.D. 1, 4 (D.D.C. 1992) (stating that "the framers of Rule 23 seemed to target cases such as this [antitrust action] as appropriate for class determination").

economic damage. . . .   All claims arise out of the same course of defendants' conduct; all share a common nucleus of operative fact, supplying the necessary cohesion.").   The predominance element is satisfied in this case.

Finally, as numerous courts have held, a class action is a superior method of adjudicating claims in cases like this one.   *See*, *e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004); *In re Nat. Gas Commodities Litig.*, 231 F.R.D. 171, 185 (S.D.N.Y. 2005); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 279, 284 (S.D.N.Y. 1999). Consequently, courts have consistently certified class actions in such cases.

Accordingly, the requirements of Rule 23(b)(3), like those of Rule 23(a), are satisfied, and certification of the Settlement Class for purposes of settlement is appropriate.

## III.   APPOINTMENT OF CLAIMS ADMINISTRATOR AND ESCROW AGENT AND RELATED RELIEF

Plaintiffs request that the Court approve their selection of Epiq Systems, Inc. ("Epiq") as Claims Administrator.   Lead Counsel selected Epiq after a rigorous bidding process consisting of the submission of written materials and telephonic interviews of multiple firms.   Lead Counsel also selected Epiq based on its pricing, substantial experience with similarly sized settlements, and ability to handle the administration of complex, data-driven settlements.

Plaintiffs request the Court appoint Lead Counsel as the Escrow Agent.   Lead Counsel will establish the Escrow Account at Citibank, N.A.

Plaintiffs also seek authority to pay out of the settlement funds up to $3,500,000 (*i.e.*, $500,000 per Settling Defendant) in Class Notice and Administration Expenses, Taxes, and Tax Expenses without further approval by the Court.   *See* Preliminary Approval Order, ¶15; Stips., §3.9.   If a Settlement Agreement is terminated or otherwise fails to close, the Settling Defendant

has no right to seek reimbursement for any expenses actually incurred or owing for Class Notice and Administration Expenses, Taxes, or Tax Expenses, up to $500,000.  Stips., §5.1.

## CONCLUSION

On the basis of the foregoing, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Approval of Settlement Agreements with Bank of America, N.A.; Barclays Bank PLC; Citigroup Inc.; Credit Suisse AG, New York Branch; Deutsche Bank AG; JPMorgan Chase & Co. LLLC; and Royal Bank of Scotland, PLC  and enter the Preliminary Approval Order.

DATED:  May 3, 2016                             Respectfully submitted,


  s/ Christopher M. Burke
Christopher M. Burke (CB-3648)
Walter W. Noss (WN-0529)
Kristen M. Anderson (*pro hac vice*)
SCOTT+SCOTT,
    ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
cburke@scott-scott.com
wnoss@scott-scott.com
kanderson@scott-scott.com

David R. Scott (DS-8053)
Donald A. Broggi (DB-9661)
Sylvia M. Sokol (SS-0317)
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: 212-223-6444
Facsimile:  212-223-6334
david.scott@scott-scott.com
dbroggi@scott-scott.com
ssokol@scott-scott.com

Daniel L. Brockett
Daniel Cunningham
Marc L. Greenwald
Steig D. Olson
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010-1601
Telephone: 212-849-7000
Facsimile:  212-849-7100
danbrockett@quinnemanuel.com
danielcunningham@quinnemanuel.com
marcgreenwald@quinnemanuel.com
steigolson@quinnemanuel.com

Jeremy D. Andersen (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: 213-443-3000
Facsimile:  213-443-3100
jeremyandersen@quinnemanuel.com

Patrick J. Coughlin
David W. Mitchell
Brian O. O'Mara
ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619-231-1058
Facsimile:  619-231-7423
patc@rgrdlaw.com
davidm@rgrdlaw.com
bomara@rgrdlaw.com

*Co-Lead Class Counsel*

26

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 3, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

<u>  /s/ Christopher M. Burke               </u>
Christopher M. Burke
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
Email: cburke@scott-scott.com