```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
ALASKA ELECTRICAL PENSION FUND, et al.,                                 :
                                                                        :
                         Plaintiffs,                                    :      14-CV-7126 (JMF)
                                                                        :
          -v-                                                           :      OPINION AND ORDER
                                                                        :
BANK OF AMERICA CORPORATION, et al.,                                    :
                                                                        :
                         Defendants.                                    :
                                                                        :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

In this putative class action, several institutional investors allege that Defendants, some of the world's largest banks, illegally manipulated the U.S. Dollar ISDAfix ("ISDAfix"), a benchmark interest rate incorporated into a broad range of financial derivatives. In a prior Opinion and Order, the Court granted in part and denied in part Defendants' motion to dismiss. *See Alaska Elec. Pension Fund v. Bank of America Corp.*, 175 F. Supp. 3d 44 (S.D.N.Y. 2016). As part of the discovery that has followed, certain Defendants produced more than 1.5 million documents that they had previously produced to various regulatory agencies in connection with investigations of their conduct with respect to ISDAfix. Plaintiffs now move to compel production of other documents relating to those investigations. By Order entered on November 11, 2016 (Docket No. 299), the Court denied Plaintiffs' motion for reasons to be explained in a forthcoming opinion. This is that opinion.

## BACKGROUND

The relevant background is set forth at length in the Court's prior Opinion and Order, familiarity with which is presumed. In brief, Plaintiffs bring claims under the Sherman Act and,

under state law, for breach of contract and unjust enrichment, alleging that Defendants — fourteen banks that dominate the market for interest rate derivatives and set ISDAfix rates (collectively, "the Banks" or "Defendant Banks"); and ICAP Capital Markets LLC ("ICAP"), an inter-dealer broker that served as the administrator in charge of setting ISDAfix rates until January 26, 2014 — engaged in a longstanding conspiracy to manipulate ISDAfix rates in order to extract higher profits from interest rate swaps and "swaptions." (*See* Docket No. 164). Plaintiffs have reached settlements with a number of Defendants. (*See* Docket No. 228). They are conducting discovery with respect to the non-settling Defendants.[1]

Defendants' conduct with respect to ISDAfix has been the subject of investigations by several government agencies, including the U.S. Commodity Futures Trading Commission ("CFTC"), the Board of Governors of the Federal Reserve System ("FRB"), the Office of the Comptroller of the Currency ("OCC"), and the New York Department of Financial Services ("DFS") (collectively, the "Governmental Regulators"). Mindful of those investigations, Plaintiffs requested that Defendants disclose "[a]ll Documents" that they had produced in connection with any Department of Justice, CFTC, or DFS investigation "relating to ISDAfix or Swap Spreads, including all correspondence, white papers, narrative statements, disclosures, interrogatory responses, questionnaire responses, expert reports, presentations, or briefs." (Docket No. 288, Ex. A ("Pls.' Discovery Reqs."), at 12). Even more broadly, they also requested that Defendants disclose "[a]ll Documents" that they had produced to "any governmental regulator, agency, department, committee, or other entity not identified in the

---

[1]   As the distinction between the settling Defendants and the non-settling Defendants is immaterial here, the Court refers throughout simply to "Defendants."

foregoing requests related to ISDAfix" and "[a]ll Documents" they had "received *from* any governmental regulator, agency, department, committee, or other governmental entity, including correspondence, subpoenas, civil investigative demands, or other request for information or documents" relating to ISDAfix.  (*Id.* at 13 (emphasis added)).

Minor variations aside, Defendants agreed to provide all pre-existing documents previously produced to CFTC in response to the Commission's ISDAfix-related investigation. (*See* Docket No. 289 ("Defs.' Opp'n"), Exs. 1-7 (collectively, "Defs.' Decls.")).  To date, Defendants have produced over 1.6 million pages of documents previously produced to the CFTC, including Bloomberg communications, e-mails, organizational charts, and documents collected from employees (both current and former).  (*See id.*).  Defendants have also produced spreadsheets with hundreds of thousands of transaction-level entries relevant to ISDAfix events. (*See id.*).  Finally, to the extent relevant here, Defendants have produced  lists of search terms used — at the CFTC's direction — to collect the underlying materials and identified the relevant custodians.  (*Id.*).  ICAP in particular has produced 4,000 spreadsheets that include polling data, transaction data, bid/ask spread data, and swap trade data related to ISDAfix rates.  (Defs.' Opp'n, Ex. 4).  ICAP has additionally produced to Defendants all documents that it previously produced in response to the CFTC's request for ISDAfix-related communications, totaling 783,339 documents and 1,281,616 pages.  (*Id.*).

But Defendants refused to produce certain materials relating to the government investigations.  In particular, Defendants — including ICAP — have refused to produce the following documents (collectively, the "Regulatory Documents" or "Documents"):

1. the CFTC subpoenas or written inquiries from FRB, OCC, and DFS;

2. written communications between counsel and the regulators (such as cover letters, e-mails and written correspondence regarding search parameters, document custodians, and other aspects of the regulators' inquiries);

3. written communications regarding tolling agreements and the tolling agreements themselves;

4. white papers, memoranda, and briefs created by counsel in connection with the Governmental Regulators' investigations; and

5. written communications regarding miscellaneous and administrative matters, such as scheduling meetings and calls.

(*See* Defs' Decls.).  Additionally, some Defendants declined to produce documents such as slide decks and PowerPoint presentations presented to, but never produced to, the CFTC.  (Defs.' Opp'n, Exs. 1, 3, 6).  Defendants objected on the ground that the withheld documents were irrelevant, not proportional to the needs of the case, and privileged on several grounds.  (*See* Defs.' Decls.).  Plaintiffs moved to compel production of all the withheld Regulatory Documents.

## RELEVANCE AND PROPORTIONALITY

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, as amended in December 2015, a party is entitled to discovery pertaining to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," whether or not admissible in evidence.  The requesting party "bears the initial burden of demonstrating any possibility of relevance sufficient to warrant discovery," but "once that showing is made, the party resisting discovery bears the burden of demonstrating that . . . the requests are irrelevant, or are overly broad, burdensome, or oppressive."  *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co.*, 14-cv-4394 (AJN) (BCM), 2016 WL 4613390, at *6-7 (S.D.N.Y. Aug. 31, 2016) (internal quotation marks omitted).  "Although not unlimited, relevance, for purposes of

discovery, is an extremely broad concept." *Id.* The 2015 amendments to Rule 26 — which "[r]estor[ed] the proportionality calculation to Rule 26(b)(1)," Fed. R. Civ. P. 26(b)(1), advisory committee notes to 2015 amendments — "did not alter the underlying concept of relevance." *Royal Park Investments SA/NV*, 2016 WL 4613390, at *6. Notably, however, the amendments were intended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26(b)(1), advisory committee notes to 2015 amendments.

Applying those standards here, Plaintiffs' motion to compel must be denied, albeit without prejudice to renewal of the motion with respect to more targeted discovery requests.[2] Plaintiffs' argument rests on the "common sense" notion that "[c]ommunications with Regulators investigating manipulation of ISDAfix rates" necessarily "'bear on' a civil case about manipulation of ISDAfix rates." (Docket No. 287 ("Pls.' Mem.") at 4; *see also id.* at 8). At the highest level of generality, there is no doubt some truth to that notion. But the Rule 26 standards call for closer scrutiny, and Plaintiffs' argument does not withstand that scrutiny. For starters, there are some notable distinctions between the CFTC's investigation and the instant action. Most significantly, the CFTC was conducting an investigation of alleged violations of the Commodities Exchange Act (the "CEA"), not the Sherman Act. (Defs.' Opp'n 12). Also, in settlement agreements it reached with two banks, the CFTC found only unilateral violations of the CEA where the bank had submitted *different* ISDAfix rates, whereas Plaintiff's antitrust

---

[2] Rule 26 aside, Plaintiffs suggest that the Court previously ordered Defendants to produce the Regulatory Documents when it provided, in a scheduling order entered after the initial pretrial conference, that Defendants were to "prioritize" production of materials "previously provided to" regulators. (*See* Docket No. 287 ("Pls.' Mem."), at 1, 4; *see also* Docket No. 224, ¶ 4(a)). That is not the case. As the transcript of the initial pretrial conference makes plain, the Court did not opine on the scope of regulatory discovery. (Docket No. 233 ("May 5, 2016 Tr.") at 28, 34). It does so for the first time here.

claim is premised on the theory that Defendants collusively "rubberstamped" the *same* ISDAfix rate. (*See id.* at 11-12). Separate and apart from those distinctions, it is far from obvious that documents like the CFTC subpoenas or tolling agreements — or, even more dubiously, administrative communications about issues such as scheduling and cover letters that accompanied the production of materials that Defendants have disclosed to Plaintiffs — are relevant to Plaintiffs' claims, especially since Plaintiffs have received millions of pages of documents, including all of the underlying ISDAfix rate data for the relevant time period and the information necessary to understand and evaluate that data, such as the search terms and data ranges used to generate the productions and the identities of all relevant custodians.

Most notably, Plaintiffs do not point to any *specific* information that is relevant to their claims and would be found solely in the unproduced documents. *Cf., e.g.*, *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 104 (S.D.N.Y. 2013) (granting additional discovery because plaintiffs "provided sufficient justification for expanding search terms" by "highlight[ing] both general categories and *concrete examples* of documents . . . that are relevant but would not be discovered" by the current search (emphasis added)). Nor do Plaintiffs cite any precedent to support their vast production request. (*See* Pls.' Mem. 4-8). At bottom, then, Plaintiffs' entire relevancy argument hinges on a general contention that every communication and work product related to the regulatory investigations is "likely" to contain additional relevant information. But that sort of conclusory claim is insufficient to support such an expansive discovery request. *See, e.g.*, *In re Weatherford Int'l Sec. Litig.*, 11-CV-1646 (LAK) (JCF), 2013 WL 5788687, at *3 (S.D.N.Y. Oct. 28, 2013) ("The plaintiffs fail to adequately specify how these related documents are reasonably calculated to lead to the discovery of admissible

evidence. That the subject matter of the subpoenas is relevant may explain why documents *produced* to the SEC are discoverable, but not why disclosure of internal discussions, communications, or preparations related to those subpoenas is warranted."); *Oklahoma v. Tyson Foods*, 2006 WL 2862216, at * 1 (N.D. Okla. Oct. 4, 2006) (holding that a showing of "some surface similarities" is insufficient to require "*carte blanche* " production of all documents produced in a different case); *In re WorldCom, Inc. Sec. Litig.*, No. 02-CV-3288 (DLC), 2003 WL 22953645, at *7 (S.D.N.Y. Dec. 16, 2003) ("While the record generated by the Government's work may ease the burdens of the civil litigation, the civil litigants enjoy those benefits as a matter of convenience, not as of right. . . . The [requesting parties] are well-represented and can fashion their own document requests without relying upon the government subpoenas."); *Martinez v. Robinson*, 99-CV-11911 (DAB), 2002 WL 424680, at *2 (S.D.N.Y. Mar. 19, 2002) (noting that pointing to only one example of potentially discoverable material is insufficient to transform an overbroad request into one that is "properly tailored"); *Midwest Gas Servs., Inc v. Indiana Gas Co.*, No. IP 99-690-C-Y/G, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) ("The plaintiffs in this Cause have not shown that the fact that any particular document was produced by the defendant to the D.O.J. or received by defendant from the D.O.J. is relevant to the subject matter of this Cause. Instead, the plaintiffs are interested in the content of documents . . . [so] counsel must do their own work and request the information they seek directly.").

Even if the Court were to presume that all of the Regulatory Documents were relevant, Rule 26(b)(1)'s proportionality requirement means their "marginal utility" must also be considered. *See Zubulake v. UBS Warburg, LLC*, 217 F.R.D. 309, 322-23 (S.D.N.Y. 2003); *see,*

*e.g.*, *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088 (RMB) (HBP), 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016) ("Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate."); *see also* Fed. R. Civ. P. 26(b)(1) (directing the court to consider, *inter alia*, "the parties' relative access to relevant information" and "whether the burden or expense of the proposed discovery outweighs its likely benefit"). Given the breadth of Plaintiffs' requests — which ask for "all documents produced for" or "provided to" any governmental regulator, "all" documents "received from" any governmental regulator, and "all correspondence" with any governmental regulator (*see* Pls.' Discovery Reqs. 12) — and the fact that Defendants have given Plaintiffs all of the historical documents and data that they had produced to their regulators, Plaintiffs' motion falls short on that score too. *See, e.g.*, *Gropper v. David Ellis Real Estate, L.P.*, No. 13-CV-2068 (ALC) (JCF), 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) (noting that, in general, "a request for 'any and all' documents . . . is inherently overbroad"); *see also Badr v. Liberty Mutual Grp., Inc.*, No. 06-CV-1208, 2007 WL 2904210 (AHN), at *3 (D. Conn. Sept. 28, 2007) (finding a request for "any and all" documents "overly broad"); *Rice v. Realistar Life Ins. Co.*, Civ. A. No. 11-44, 2011 WL 5513181, at *2 (M.D. La. Nov. 10, 2011) (similar); *Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CIV-1789 (ER) (JLC), 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (similar). In arguing otherwise, Plaintiffs suggest that the materials they are seeking "have already been sorted, they've been Bates stamped." (May 5, 2016 Tr. 33). But that is not the case with respect to many of the Regulatory Communications, including the CFTC subpoenas, the tolling agreements, and various written communications between the government regulators and Defendants. (*See* Defs.' Opp'n 5; Defs.,' Decls.). "The

minimal benefit of producing [such] questionably relevant 'related' material is outweighed by the burden of production on [Defendants]." *Weatherford Int'l Sec. Litig.*, 2013 WL 5788687, at *3. Plaintiffs also contend that the Regulatory Documents would "shed light on the investigations themselves," helping them to better understand the regulators' process. (Pls.' Mem. 5-6). But the investigatory processes of the CFTC and Defendants' other regulators have little to no bearing on the merits of Plaintiffs' antitrust or state law claims.

In the final analysis, the management of discovery — and thus the grant or denial of a motion to compel — "lies within the sound discretion of the district court." *Grady v. Affiliated Central, Inc.*, 130 F.3d 553, 561 (2d Cir. 1997); *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 20 (2d Cir. 1992). Exercising that discretion, the Court concludes that Plaintiffs' motion must be denied on relevance, proportionality, and overbreadth grounds. Significantly, in so concluding, the Court does not hold that all of the documents within the scope of Plaintiffs' requests are irrelevant. Instead, the Court finds "that Plaintiffs have not sufficiently articulated the relevance of the documents sought. Because production of all of the requested documents would be unduly burdensome, the Court will not require Defendants to review all documents to determine which documents are relevant. Plaintiffs may tailor more specific discovery requests detailing the documents or topics requested." *Tyson Foods*, 2006 WL 2862216, at *3. Accordingly, Plaintiffs' motion to compel is DENIED without prejudice to renewal in the event that Defendants refuse to comply with narrower, more proper discovery requests.

## WORK-PRODUCT PROTECTION AND PRIVILEGE

The foregoing discussion is sufficient to resolve the instant motion. Nevertheless, the Court will address two additional issues because they have been fully briefed and would almost

certainly arise again: Defendants' arguments that many of the documents sought are protected by either or both the work-product doctrine and statutory privileges. The former doctrine "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2003). Such documents may be discoverable, but only if the party seeking discovery "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). Here, there is no dispute that many of the materials sought by Plaintiffs — namely, materials created by Defendants' lawyers in connection with the government investigations — constitute work product. Nor is there any contention that Defendants waived the protections of the doctrine by disclosing materials to the FRB, OCC, or DFS, their "prudential" regulators, as the Financial Services and Regulatory Relief Act of 2006 explicitly provides, in relevant part, that submission "of any information to . . . any Federal banking agency, State bank supervisor, or foreign banking authority for any purpose in the course of any supervisory or regulatory process of such . . . agency, supervisor, or authority shall not be construed as waiving, destroying, or otherwise affecting any privilege such person may claim with respect to such information under Federal or State law as to any person or entity other than such . . . agency, supervisor, or authority." 12 U.S.C. § 1828(x)(1). (*See* Docket No. 290, at 9). But Defendants' disclosures to the CFTC are more complicated.

The Second Circuit addressed the question of whether "disclosure of attorney work product in connection with a government investigation waives the privilege in later civil discovery" in *In Re Steinhardt Partners, L.P.*, 9 F.3d 230, 233 (2d Cir. 1993). In that case, the

defendant company produced attorney-created documents to the Securities and Exchange Commission (the "SEC") in response to a subpoena, as part of a formal investigation of the Treasury markets. *See id.* at 232. The Second Circuit concluded the defendant had waived any attorney work-product protection because it "knew it was the subject of an SEC investigation, and that the memorandum was sought as part of this investigation," *id.* at 234, and there was no allegation that the memorandum was produced due to coercion or required compliance, *see id.* But the Court declined "to adopt a *per se* rule that all voluntary disclosures to the government waive work product protection," as doing so would "fail to anticipate . . . situations in which the SEC and the disclosing party have entered into an explicit agreement that the SEC will maintain the confidentiality of the disclosed materials." *Id.* at 236.[3] Since *Steinhardt*, courts in this District have divided over what weight, if any, to give the existence of such confidentiality agreements. *Compare, e.g.*, *Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, 01-CIV-8854 (LTS) (THK), 2004 WL 2375819, at *5 (S.D.N.Y. Oct. 21, 2004) ("The Confidentiality Agreement, however, does not alter the fact that the Respondents waived the privilege, and is thus irrelevant to determining whether Defendants can raise the privilege in the instant case."); *Gruss v. Zwirn*, 09-CIV-6441 (PGG) (MHD), 2013 WL 3481350, at *8 (S.D.N.Y. July 10, 2013) ("The confidentiality agreement at issue here provides no meaningful protection to Defendants because — in essence it grants the SEC discretion to disclose the submitted materials whenever it chooses . . . . There is no reason to believe the *Steinhardt* court

---

[3] Other Circuits have taken a different approach. *See*, *e.g.*, *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1429-30 (3d Cir. 1991) (finding work-product protections waived because of prior disclosure regardless of the existence of a confidentiality agreement); *Permian Corp. v. United States*, 665 F.2d 1214, 1219-22 (D.C. Cir. 1981) (same).

intended that an illusory agreement of the sort at issue here — essentially a fig leaf that permits the producing party to claim, as to third parties, that attorney-client privilege and work product protection are preserved — would justify setting aside the standard rule that materials provided to an adversary lose attorney-client privilege and work product protection."), *with Maruzen Co. v. HSBC USA, Inc.*, 00-CIV-1079, 2002 WL 1628782, at *2 (S.D.N.Y. 2002) (denying the plaintiffs' motion to compel after finding that the defendants "had explicit confidentiality agreements with the authorities satisfying *Steinhardt*").

The most analogous case is *In re Natural Gas Commodity Litigation*, No. 03-CIV-6186 (VM) (AJP), 2005 WL 1457666 (S.D.N.Y. June 21, 2005). There, the CFTC — as part of ongoing settlement discussions with the defendant company — requested review of an attorney-client memorandum that "in part summarized certain data analyses undertaken by and at the direction [plaintiff's] outside legal counsel." *Id.* at *2. Prior to production, the defendant "secured the CFTC's agreement that it would keep the information confidential, that it would not consider it a waiver of privilege 'with respect to any information beyond what was specifically set forth in the memorandum,' and that the CFTC would not disclose the information to anyone else"; the defendant and the CFTC memorialized the agreement in a letter. *See id.* The Court concluded that the existence of "explicit written confidentiality and non-waiver agreements with the government agencies," under *Steinhardt*, went "a long way to a finding of non-waiver." *Id.* at *8. Nevertheless, the court considered other relevant factors — most notably, the "second most important factor" of whether defendants had "produced to plaintiffs in this litigation the factual documents underlying the work product analyses provided to the government agencies." *Id.* Because the underlying information had all been produced, and the plaintiffs could therefore

12

"perform their own analyses of the trading data and the data reported to the trade publications," the "plaintiffs suffer[ed] no hardship by not having defendants' analyses." *Id.*

The Court agrees with that approach. Applying it here, many of the materials sought by Plaintiffs may well be shielded by the work-product doctrine, as Defendants represent that they entered into confidentiality or non-waiver agreements with the CFTC prior to producing any attorney work product (*see* Defs.' Decls.), and Defendants produced to Plaintiffs all the underlying transactional data. Nevertheless, for several reasons, it is premature to decide definitively the extent to which the work-product doctrine shields the documents at issue from production. First, the Court will be in a better position to make that decision in the event that Plaintiffs narrow their discovery requests and the parties' disputes are more focused than they are now (perhaps aided by production of a privilege log). Second, and related, the propriety of withholding production may well turn on the particulars of the documents at issue — including, for example, whether they constitute work product that Plaintiffs themselves could replicate given the underlying data, as was the case in *Natural Gas*; and whether the documents constitute fact work product or opinion word product. *See* Fed. R. Civ. P. 26(b)(3)(B) ("If the court orders discovery of [work product] materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."); *see also In re Martin Marietta Corp.*, 856 F.2d 619, 625-26 (4th Cir. 1988) (holding that voluntary disclosure to a governmental agency constitutes a waiver of the work-product privilege as to "all *non-opinion work-product* on the same subject matter as that disclosed," as opinion work product "is to be accorded great[er] protection by the courts" and "the underlying rationale for the doctrine of subject matter waiver has little application in the

13

context of a pure expression of legal theory or legal opinion" (emphasis added)). Finally, whether and to what extent documents may be protected from production may ultimately turn on the particulars of Defendants' agreements with the CFTC, which do not appear to be part of the current record. *See, e.g.*, *Gruss*, 2013 WL 3481350, at *8 (examining a confidentiality agreement between defendants and the SEC and concluding that the agreement was "illusory" because the agency had "unfettered discretion" to disclose the materials if it concluded disclosure would further the discharge of its duties and responsibilities).

Finally, Defendants contend that they are prohibited by law from producing inquiries from, and written communications with, the FRB, OCC, and DFS — their "prudential" regulators. With respect to the FRB, regulations provide that "confidential supervisory information," including "reports of examination and inspection" and "documents prepared by, on behalf of, or for the use of the [FRB]," is protected from disclosure unless a person files a written request with the general counsel of the FRB showing substantial need and that disclosure is consistent with the responsibilities of the FRB. *See* 12 C.F.R. § 261.2(c), (g). Making such a request is considered to be an exhaustion of administrative remedies for discovery purposes. *See id.* § 261.13. Similarly, federal regulations protect "non-public OCC information," which includes "record[s] created or obtained . . . [b]y the OCC in connection with the OCC's performance of its responsibilities." 12 C.F.R. § 4.32(b)(i). "No supervised entity . . . may disclose non-public OCC information without the prior written permission of the OCC." *Id.* § 4.36(d). Those provisions "afford an orderly mechanism for the OCC to process expeditiously requests for non-public OCC information; to address the release of non-public OCC information without a request; and, when appropriate, *for the OCC to assert evidentiary privileges in*

14

*litigation.*" *Id.* § 4.31(a)(1) (emphasis added).  Finally, New York Banking Law protects DFS materials from disclosure: "All reports of examinations and investigations, correspondence and memoranda concerning or arising out of [DFS] examination and investigations, including any duly authenticated copy or copies thereof in the possession of any banking organization . . . shall not be subject to subpoena and shall not be made public unless, in the judgment of the superintendent, the ends of justice and the public advantage will be served by the publication thereof."  N.Y. Banking Law § 36.10.

Although case law in this area is limited, relevant precedent makes clear that some of the materials Plaintiffs seek cannot — at least in the first instance — be obtained via subpoena from Defendants.  *See, e.g.*, *In re Bankers Trust Co.*, 61 F.3d 465, 467-68 (6th Cir. 1995) ("What a party may not do under the procedures set out in the regulations, however, is seek the documents from some other party without the [FRB's] approval or permission.  Likewise, any person or organization that has documents which may not be disclosed under these regulations and is served with a [subpoena, order or process requiring production] is directed to promptly advise the Board's general counsel of such request and must continually 'decline to disclose the information.'" (quoting 12 C.F.R. § 261.14)); *In re Countrywide Fin. Corp. Sec. Litig.*, No. 07-cv-5295 (MRP) (MANX), 2009 WL 5125089, at *2 (C.D. Cal. Dec. 28, 2009) ("The Court holds that Plaintiffs must first exhaust all administrative procedures and submit requests to use the documents in this litigation to the FRB and OCC, pursuant to federal regulations.  If the FRB and OCC do not authorize disclosure of the information that is relevant to this litigation, then the parties can seek the appropriate relief from this Court regarding document production."); *see also, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Midland Bancor, Inc.*, 159 F.R.D 562,

571-72 (D. Kan. 1994) ("When federal agencies promulgate official regulations, setting forth procedures to obtain information otherwise exempt from disclosure, the party seeking it may obtain it, if at all, only after following those procedures."). Accordingly, with respect to some of the materials at issue, Plaintiffs would have to seek relief "through the established administrative process" before coming back to this Court. *In re Countrywide Fin. Corp.*, 2009 WL 5125089, at *2.[4]

Relatedly, some of the materials sought by Plaintiffs may be subject to the qualified bank examination privilege, which "accords agency opinions and recommendations and banks' responses thereto protection from disclosure" to ensure that "the integrity of the regulatory process" remains protected. *Sharkey v. J.P. Morgan Chase & Co.*, No. 10-CIV-3824 (RWS), 2013 WL 2254553, at *1 (S.D.N.Y. May 22, 2013); *see* 12 U.S.C. § 1828(x)(1) (providing that "[t]he submission by any person of any information to any Federal banking agency, State bank supervisor, or foreign banking authority for any purpose in the course of any supervisory or regulatory process of such agency, supervisor, or authority shall not be construed as waiving, destroying, or otherwise affecting any privilege such person may claim with respect to such information under Federal or State law as to any person or entity other than such agency, supervisor, or authority"). But the bank examination privilege presumably would not apply to all the materials sought by Plaintiffs, *see, e.g.*, *In re Bankers Trust Co.*, 61 F.3d at 471 (noting that "purely factual materials" are not protected by the privilege), and, in any event, it belongs to the regulatory agencies, not to Defendants, *see, e.g.*, *MASTR Adjustable Rate Mortgage Trust 2006-*

---

[4]   After briefing of this motion was complete, Defendants filed a supplemental letter from the OCC. (*See* Docket No. 294). The Court need not and does not consider the letter here.

*OA2 v. UBS Real Estate Secs. Inc.*, No. 12-CIV-7322 (HB) (JCF), 2013 WL 5437354, at *1 (S.D.N.Y. Sept. 27, 2013). Accordingly, the Court will not decide here whether and to what extent the bank examination privilege applies. But in the event Plaintiffs request materials that Defendants believe may be subject to the privilege, Defendants shall promptly notify all relevant regulators to ensure that they have a reasonable opportunity to intervene here and be heard. *See, e.g.*, *In re Bankers Trust Co.*, 61 F.3d at 472 ("The bank examination privilege belongs to the [FRB], and therefore, where a claim of the privilege is appropriate, the Federal Reserve must be allowed the opportunity assert the privilege and the opportunity to defend its assertion."); *id.* at 470 n.6 ("[W]e think it advisable if not necessary for a party in litigation . . . to inform the [FRB] of any requests for production so the [FRB] will have notice and the opportunity to intervene and protect any interests, arguments, or concerns it may have."); *MASTR Adjustable Rate Morts.*, 2013 WL 5437354, at *2 ("[W]hile I will order [defendants] to produce the subject documents, . . . I will stay that portion of the order so that [defendants] may notify the OCC, if it determines that it is required to do so.").

## CONCLUSION

For the reasons stated above, Plaintiffs' motion to compel is DENIED, albeit without prejudice to renewal in the event that Defendants refuse to comply with narrower, more proper discovery requests.

One housekeeping matter remains: By letter, Plaintiffs sought leave to file certain documents in redacted form. (Docket No. 282). The Court granted the motion temporarily, pending its decision on the underlying dispute. (Docket No. 283). Filings that are "relevant to the performance of the judicial function and useful in the judicial process" are considered

17

"judicial documents" to which a presumption in favor of public access attaches. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). Moreover, the mere fact that information is subject to a confidentiality agreement between litigants is not a valid basis to overcome that presumption. *See, e.g.*, *United States v. Wells Fargo Bank N.A.*, No. 12-CV-7527 (JMF), 2015 WL 3999074, at *4 (S.D.N.Y. June 30, 2015) (citing cases). Thus, any party that believes any redacted material should remain redacted is ORDERED to show cause in writing, no later than two weeks from the date of this Opinion and Order, why doing so would be consistent with the presumption in favor of public access. If, by that deadline, no party contends that a particular document should remain under seal or in redacted form, then Plaintiffs shall promptly file that document on ECF.

      SO ORDERED.

Dated: November 16, 2016
      New York, New York

                                                 JESSE M. FURMAN
                                                 United States District Judge