## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALASKA ELECTRICAL PENSION FUND; GENESEE COUNTY EMPLOYEES' RETIREMENT SYSTEM; COUNTY OF MONTGOMERY, PENNSYLVANIA; COUNTY OF WASHINGTON, PENNSYLVANIA; and CITY OF NEW BRITAIN, CONNECTICUT, on behalf of themselves and all others similarly situated, | Case Nos.: 14-cv-7126 (JMF) 14-cv-7907 (JMF) 14-cv-8342 (JMF) 14-cv-8365 (JMF) 14-cv-8576 (JMF) |
| Plaintiffs, | |
| vs. | Hon. Jesse M. Furman |
| BANK OF AMERICA CORPORATION; BARCLAYS BANK PLC; B.N.P. PARIBAS SA; CITIGROUP INC.; CREDIT SUISSE AG, NEW YORK BRANCH; DEUTSCHE BANK AG; THE GOLDMAN SACHS GROUP, INC.; HSBC BANK PLC; ICAP CAPITAL MARKETS LLC; JPMORGAN CHASE & CO.; MORGAN STANLEY & CO. LLC; NOMURA SECURITIES INTERNATIONAL, INC.; ROYAL BANK OF SCOTLAND PLC; UBS AG; and WELLS FARGO BANK, N.A., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT WITH THE GOLDMAN SACHS GROUP, INC.**

# TABLE OF CONTENTS

**Page**

EXPLANATION OF DEFINED TERMS AND CITATION FORMS ...................................... IV

PRELIMINARY STATEMENT ...................................................................................................1

UPDATE TO SUMMARY OF THE ACTION...........................................................................2

SUMMARY OF THE SETTLEMENT ........................................................................................3

ARGUMENT.................................................................................................................................7

     I.     THE SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY
          APPROVAL .........................................................................................................7

     II.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ...............8

CONCLUSION..............................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. 06-MD-1175(JG)(VVP), 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ...........................9

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ...............................................................................................................9

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) .....................................................................................................8

*In re Currency Conversion Fee Antitrust Litig.*,
  224 F.R.D. 555 (S.D.N.Y. 2004) ............................................................................................9

*In re Currency Conversion Fee Antitrust Litig.*,
  264 F.R.D. 100 (S.D.N.Y. 2010) ............................................................................................9

*Menkes v. Stolt-Nielsen S.A.*,
  270 F.R.D. 80 (D. Conn. 2010) ..............................................................................................7

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) .............................................................................................7

*In re Nat. Gas Commodities Litig.*,
  231 F.R.D. 171 (S.D.N.Y. 2005) ............................................................................................9

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) ...................................................................................................9

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ............................................................................................................8

*Wallace v. IntraLinks*,
  302 F.R.D. 310 (S.D.N.Y. 2014) ............................................................................................8

STATUTES, RULES, & REGULATIONS

Fed. R. Civ. P. 23(a) and 23(b)(3) ..............................................................................................8, 9

15 U.S.C. §78a *et seq.* ..............................................................................................................4, 5

17 C.F.R. §240.12b-2 ...................................................................................................................4, 5

**OTHER AUTHORITIES**

*In re: Barclays PLC, Barclays Bank PLC and Barclays Capital Inc.*,
    CFTC Docket No. 15-25 (May 20, 2015)...........................................................................5, 6

*In the Matter of: Citibank, N.A*,
    CFTC Docket No. 16-16 (May 25, 2016)..................................................................................6

## EXPLANATION OF DEFINED TERMS AND CITATION FORMS

The following defined terms are used in this Memorandum.

**Parties**

- "Plaintiffs" are Alaska Electrical Pension Fund; City of New Britain, Connecticut; Genesee County Employees' Retirement System; County of Montgomery, Pennsylvania; and County of Washington, Pennsylvania.

- "Bank of America" is Bank of America, N.A.

- "Barclays" is Barclays Bank PLC together with Barclays Capital Inc.

- "BNP Paribas" is BNP Paribas SA.

- "Citigroup" is Citigroup Inc.

- "Credit Suisse" is Credit Suisse AG, New York Branch.

- "Deutsche Bank" is Deutsche Bank AG.

- "Goldman Sachs" is The Goldman Sachs Group, Inc.

- "HSBC" is HSBC Bank USA, N.A.

- "ICAP" is ICAP Capital Markets LLC.

- "JPMorgan" is JPMorgan Chase & Co.

- "Morgan Stanley" is Morgan Stanley & Co. LLC.

- "Nomura" is Nomura Securities International, Inc.

- "RBS" is The Royal Bank of Scotland Group PLC.

- "UBS" is UBS AG.

- "Wells Fargo" is Wells Fargo Bank, N.A.

- "Settling Defendants" are Bank of America, Barclays, Citigroup, Credit Suisse, Deutsche Bank, Goldman Sachs, JPMorgan, and RBS, and each is individually a "Settling Defendant."

- "Settling Parties" are Plaintiffs and Settling Defendants.

- "Non-Settling Defendants" are BNP Paribas, HSBC, ICAP, Morgan Stanley, Nomura, UBS, and Wells Fargo.

- "Defendants" are Settling Defendants and Non-Settling Defendants.

**Accompanying [Proposed] Order and Settlement Agreement**

- "Goldman Sachs Preliminary Approval Order" is the [Proposed] Order Preliminarily Approving Settlement Agreement with Goldman Sachs, Certifying the Settlement Classes, and Appointing Class Counsel and Class Representatives for the Settlement Class.

- "Goldman Sachs Stip." is the Stipulation and Agreement of Settlement with The Goldman Sachs Group, Inc.

- "Preliminary Approval Order" is the Order Preliminarily Approving Settlement Agreements with Bank of America, Barclays, Citigroup, Credit Suisse, Deutsche Bank, JPMorgan, and RBS, Certifying the Settlement Classes, and Appointing Class Counsel and Class Representatives for the Settlement Class, ECF No. 228.

- "Stips." is the citation form used to cite paragraphs of the settlement agreements where the paragraph reference in the settlement agreements are the same.  To the extent any paragraph numbers differ between settlement agreements, the individual agreements are cited.

**Other Terms**

- Unless otherwise defined herein, all other capitalized terms have the same meaning as set forth in the Settlement Agreements.

## PRELIMINARY STATEMENT

Plaintiffs have signed a settlement agreement with Goldman Sachs, which provides for a cash payment of $56,500,000 along with Goldman Sachs' agreement to provide Plaintiffs with valuable confirmatory discovery, including transaction data, documents, proffers, and witness interviews.  The proposed Stipulation and Agreement of Settlement with The Goldman Sachs Group, Inc. is attached to the accompanying Declaration of Christopher M. Burke as Exhibit 1.

Plaintiffs initially settled with Bank of America, Barclays, Citigroup, Credit Suisse, Deutsche Bank, JPMorgan, and RBS for a total of $324,000,000.  Thus, with the Goldman Sachs settlement, eight of the 15 Defendants named in the Action[1] have agreed to settle for a total of $380,500,000.  The monetary component of each of the settlement agreements is set out below:

| | | | | |
|---|---|---|---|---|
| Bank of America | $ 50,000,000 | | Deutsche Bank | $ 50,000,000 |
| Barclays | $ 30,000,000 | | **Goldman Sachs** | **$ 56,500,000** |
| Citigroup | $ 42,000,000 | | JPMorgan | $ 52,000,000 |
| Credit Suisse | $ 50,000,000 | | RBS | $ 50,000,000 |
| | | | Total | $ 380,500,000 |

On May 11, 2016, the Court preliminarily approved proposed settlements with Bank of America, Barclays, Citigroup, Credit Suisse, Deutsche Bank, JPMorgan, and RBS.  ECF No. 228.  On November 28, 2016, the Court entered an Order Establishing a Schedule for Remaining Confirmatory Discovery as to those Settling Defendants.  ECF No. 312 (ordering that data negotiations conclude by January 20, 2017 and that data be produced by May 22, 2017). Plaintiffs and Goldman Sachs are in the process of meeting and conferring about the production of "reasonably available transaction data" contemplated by paragraph 11.4(a) of the Goldman Sachs settlement agreement.  Goldman Sachs will undertake good faith efforts to meet the

---

[1] Non-Settling Defendants are BNP Paribas, HSBC, ICAP, Morgan Stanley, Nomura, UBS, and Wells Fargo.

schedule ordered as to the other Settling Defendants so that the Goldman Sachs settlement may proceed on the same track as the other pending settlements for the provision of notice.  If Goldman Sachs cannot meet the deadlines established by the Court's Order, Plaintiffs and Goldman Sachs will inform the Court.

For the reasons set forth below, as well as in Plaintiffs' submissions in support of preliminary approval of the proposed settlements with Bank of America, Barclays, Citigroup, Credit Suisse, Deutsche Bank, JPMorgan, and RBS,[2] Co-Lead Counsel and Plaintiffs believe the Goldman Sachs settlement agreement, standing alone or in conjunction with the other settlements, is well within the range of fairness, adequacy, and reasonableness.  Therefore, Plaintiffs respectfully request the Court to enter the Goldman Sachs Preliminary Approval Order, filed as Exhibit 1 to the accompanying Motion.

## UPDATE TO SUMMARY OF THE ACTION

Goldman Sachs, like the other Settling Defendants, has vigorously disputed Plaintiffs' allegations over two years of litigation.  Since the Court entered the Preliminary Approval Order on May 11, 2016,[3] Plaintiffs and Goldman Sachs proceeded with discovery relating to class certification.  Several discovery disputes have arisen, leading the parties to seek the Court's intervention.  *See, e.g.,* ECF No. 270 (denying motion to compel the production of economic analyses contained in the Consolidated Amended Class Action Complaint and related materials); ECF No. 303 (denying motion to compel production of regulatory communications).

---

[2]     Plaintiffs filed their Motion for Preliminary Approval of Settlements with Bank of America, Barclays, Citigroup, Credit Suisse, Deutsche Bank, JPMorgan, and RBS on May 5, 2016.  ECF No. 220.

[3]     Plaintiffs respectfully refer the Court to their prior submissions for a summary of the action prior to May 11, 2016.  *See* ECF No. 221 (Memo in Support of Preliminary Approval of Settlements), at 3-6.

## SUMMARY OF THE SETTLEMENT

Other than the monetary component, the key terms of the Goldman Sachs settlement agreement are substantially identical to the preliminarily approved settlements.  The Goldman Sachs settlement agreement provides for a total of $56,500,000 in monetary relief.  The settlement funds are non-recapture.  That is, as of the Effective Date, Goldman Sachs has no right to the return of the settlement fund or any portion thereof for any reason.  Goldman Sachs Stip., ¶10.3.

As with the preliminarily approved settlement agreements, the Goldman Sachs settlement agreement also obligates Goldman Sachs to provide valuable confirmatory discovery, which will assist Plaintiffs in the prosecution of the Action against Non-Settling Defendants.  The confirmatory discovery includes:  (a) production of reasonably available transaction data involving ISDAfix Instruments during the Settlement Class Period, (b) production of documents produced to CFTC (and other regulators, to the extent not duplicative) relating to potential wrongdoing related to ISDAfix Benchmark Rates, (c) attorney proffers relating to Goldman Sachs' conduct alleged in the CAC, and (d) up to three witness interviews of current employees relating to Goldman Sachs' conduct alleged in the CAC.  Goldman Sachs Stip., ¶11.4(a)-(d).  These obligations are triggered by the entry of the Goldman Sachs Preliminary Approval Order.  Goldman Sachs Stip., ¶11.4.

To the extent that there are differences between the Goldman Sachs settlement agreement and the preliminarily approved settlement agreements, the differences are inconsequential to the class action settlement process.  Thus, if approved, all of the pending settlements may efficiently proceed through the settlement approval process, class notice, the claims process, distribution, and other settlement procedures together.  The minor differences in the language of certain

provisions of the Goldman Sachs settlement agreement from that in the preliminarily approved

settlement agreements are described below.[4]

**Settlement Class Exclusion.**   The Goldman Sachs settlement agreement is made on

behalf of a proposed Settlement Class that is identical to the preliminarily approved Settlement

Class, defined as:

> all Persons or entities who entered into, received or made payments on,
> terminated, transacted in, or held an ISDAfix Instrument during the Settlement
> Class Period [January 1, 2006 through January 31, 2014].   Excluded from the
> Settlement Class are Defendants and their employees, affiliates, parents,
> subsidiaries, and co-conspirators, should any exist, whether or not named in the
> Amended Complaint, and the United States Government, and all of the Released
> Bank Parties[5] provided, however, that Investment Vehicles shall not be excluded
> from the definition of the Settlement Class.

*Compare* ECF No. 228 (Preliminary Approval Order), ¶3, *with* Goldman Sachs Stip., ¶1.47.

There is a slight difference in the language between the definition of "Released Goldman

Parties" in the Goldman Sachs settlement agreement and the parallel term "Released Bank

Parties" in the preliminarily approved settlement agreements.   The Goldman Sachs settlement

agreement provides that certain Released Goldman Parties – specifically "agents, attorneys, legal

or other representatives, and insurers (including reinsurers and co-insurers)" – shall not be

"deemed Released Goldman Parties for purposes of the Settlement Class exclusion."   Goldman

Sachs Stip., ¶1.1.[6]   In the preliminarily approved settlements, such parties are not removed from

---

[4]      In addition, there are other typographical or stylistic edits that are not described in this Memo.

[5]      Released Bank Parties are the Released Bank of America Parties, Released Barclays Parties, Released
Citigroup Parties, Released Credit Suisse Parties, Released Deutsche Bank Parties, Released JPMorgan Parties,
Released RBS Parties, and if the Court enters the Goldman Sachs Preliminary Approval Order, the Released
Goldman Sachs Parties, as those terms are defined in the corresponding settlement agreements.

[6]      Goldman Sachs Stip., ¶1.1:   "Goldman," "Released Goldman Parties," or "Releasing Goldman Parties"
mean The Goldman Sachs Group, Inc. and each of its past or present direct and indirect parents (including holding
companies), subsidiaries, affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the
Securities Exchange Act of 1934), divisions, joint ventures, predecessors, successors, and each of their respective
current and former officers, directors, employees, agents, attorneys, legal or other representatives, insurers
(including reinsurers and co-insurers), assigns, and assignees, <u>provided that agents, attorneys, legal or other</u>

4

the Settlement Class exclusion.  Stips., ¶1.1.[7]  This difference is immaterial to the settlement process because with respect to all claims submitted, the Claims Administrator will verify that each claimant is a Settlement Class Member that has not been excluded from the Settlement Class.

**Released Class Claims**.  As in the preliminarily approved pending settlement agreements, Plaintiffs and members of the Settlement Class that do not exclude themselves will give up their rights to sue Goldman Sachs and Released Goldman Sachs Parties for Released Class Claims.  Goldman Sachs Stip., ¶¶7.1, 7.2; *see also* Stips., ¶¶7.1, 7.2.  Also, as with the preliminarily approved settlement agreements, the Goldman Sachs settlement agreement provides for a release of claims "arising from or relating to the factual predicate of the Action." Goldman Sachs Stip., ¶1.40; Stips., ¶1.39.

In the Goldman Sachs settlement agreement, there are three minor changes in the definition of Released Class Claims, which do not alter the scope of the release.  Those minor changes are as follows:

1. In the Released Class Claims definition, the third enumerated example of conduct within the factual predicate of the action includes "any and all conduct relating to . . . alleged manipulation of ISDAfix Benchmark Rates described in the CFTC Order."  Goldman Sachs Stip., ¶1.40(iii); Stips., ¶1.39(iii).  While the definition of "CFTC Order" in the Goldman Sachs settlement includes "the Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings, and Imposing Remedial Sanctions, *In re: Barclays PLC, Barclays Bank PLC and Barclays Capital Inc.*, CFTC Docket No. 15-25 (May 20, 2015)," as do the preliminarily approved pending settlement agreements (Goldman Sachs Stip. ¶1.6; Stips., ¶1.6), the Goldman Sachs definition also

---

representatives, and insurers (including reinsurers and co-insurers) shall not be deemed Released Goldman Parties for purposes of the Settlement Class exclusion in Paragraph 1.47 below.

[7]      *E.g.*, Bank of America Stip., ¶1.1: "BofA," "Released BofA Parties," or "Releasing BofA Parties" mean Bank of America, N.A. and each of its respective past or present direct and indirect parents (including holding companies), subsidiaries, affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), divisions, joint ventures, predecessors, successors, agents, attorneys, legal or other representatives, insurers (including reinsurers and co-insurers), assigns, assignees, and current and former employees, officers, and directors of any other of the foregoing entities.

includes "any other orders relating to ISDAfix Benchmark Rates issued by the CFTC against any of the Defendants prior to the time the Judgment and Order of Dismissal has become final" and that "arise from or relate to the factual predicate of the Action."  Goldman Sachs Stip. ¶1.6.[8]  The other pending settlements do not include an express reference to other CFTC orders relating to ISDAfix Benchmark Rates.  Stips., ¶1.6.[9]  This difference in the language of the definition of CFTC Order does not work a substantive change in the release, however, because any other CFTC orders relating to ISDAfix Benchmark Rates, such as the Citibank Order,[10] would already be covered by the scope of the release to the extent the conduct at issue is co-extensive with the factual predicate of the Action.

2.  In the Released Class Claims definition, the language of the fourth enumerated example of conduct within the factual predicate of the action, covering certain bidding, offering, or trading, has been slightly modified in the Goldman Sachs settlement agreement.  Goldman Sachs Stip. ¶1.40;[11] Stips., ¶1.39.[12]  These changes strike an illustrative list of products and add the words "or benefit therefrom," which is covered by the already included concept of "impact."  Accordingly, these terms do not substantively change the scope of the release.

3.  In the Released Class Claims definition, exclusion (c), the Goldman Sachs settlement agreement includes a repetition of the word "solely."  Goldman Sachs Stip. ¶1.40(c);[13] Stips., ¶1.39(c).[14]  This additional "solely" does not substantively

---

[8]   Goldman Sachs Stip., ¶1.6: "CFTC Order" means the Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings, and Imposing Remedial Sanctions, *In re: Barclays PLC, Barclays Bank PLC and Barclays Capital Inc.*, CFTC Docket No. 15-25 (May 20, 2015), and any other orders relating to ISDAfix Benchmark Rates issued by the CFTC against any of the Defendants prior to the time the Judgment and Order of Dismissal has become Final that arise from or relate to the factual predicate of the Action.

[9]   Stips., ¶1.6: "CFTC Order" means the Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings, and Imposing Remedial Sanctions, *In re: Barclays PLC, Barclays Bank PLC and Barclays Capital Inc.*, CFTC Docket No. 15-25 (May 20, 2015).

[10]  Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings, and Imposing Remedial Sanctions, *In the Matter of: Citibank, N.A,* CFTC Docket No. 16-16 (May 25, 2016).

[11]  Goldman Sachs Stip. ¶1.40(iv): "any bidding, offering or trading by or on behalf of a Released Goldman Party in any product that was intended to, or was reportedly or allegedly intended to, impact ISDAfix Benchmark Rates or benefit therefrom."

[12]  Stips., ¶1.39(iv): "any bidding, offering or trading by or on behalf of a Released [Bank] Party in any product, including but not limited to interest rate swaps, swap spreads, swap futures, swaptions, Eurodollar futures, and U.S. Treasuries, that was intended to, or was reportedly or allegedly intended to, impact ISDAfix Benchmark Rates."

[13]  Goldman Sachs Stip. ¶1.40(c): "does not release claims arising out of acts of manipulation that were allegedly undertaken solely for reasons other than to impact ISDAfix Benchmark Rates such as, without limitation, acts allegedly done solely to manipulate the market for U.S. Treasuries around Treasury auctions."

[14]  Stips., ¶1.39(c): "does not release claims arising out of acts of manipulation that were allegedly undertaken solely for reasons other than to impact ISDAfix Benchmark Rates such as, without limitation, acts allegedly done to manipulate the market for U.S. Treasuries around Treasury auctions."

change the scope of the exclusion because the clause to which "solely" is added is just an illustration of a type of claim that would not be released. The scope of the exclusion remains parallel with the preliminarily approved settlements.

**Production of Counterparty Lists.**   As with the preliminarily approved settlement agreements, the Goldman Sachs settlement agreement obligates Goldman Sachs to produce a Counterparty List for purposes of providing notice to the Settlement Class.   Goldman Sachs Stip., ¶8.2; Stips., ¶8.2.   The Goldman Sachs settlement agreement contains additional express language concerning the meet and confer requirement that is implicit in the preliminarily approved settlements under the Local Rules and the Court's Individual Practices.   Goldman Sachs Stip., ¶8.2.[15]

## ARGUMENT

## I.   THE SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL

At this stage, the Court must make a "preliminary evaluation of the fairness of the settlement, prior to notice."   *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*Nasdaq II*").[16]   Preliminary approval is warranted where, as here, the settlement "'is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . , and where the settlement appears to fall within the range of possible approval.'"   *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010) (ellipsis in original).   As with the other pending settlements, the proposed settlement with Goldman Sachs should be preliminarily approved.

---

[15]     Goldman Sachs Stip. ¶8.2:   "To the extent Goldman contends attorney access to such information would violate any foreign privacy laws, the parties shall meet and confer on the issue and, if they are unable to resolve the dispute, Goldman may seek leave of the Court to restrict such attorney access.  Counterparty Lists shall be provided in an electronic format mutually acceptable to Goldman and the Claims Administrator . . . ."

[16]     Unless otherwise noted, citations are omitted and emphasis is added.

The Goldman Sachs settlement agreement was the product of intensive settlement negotiations that took place over the course of many months among experienced counsel.  The negotiations with Goldman Sachs were hard-fought, at times contentious, and always at arm's-length.

Lead Counsel believe Plaintiffs' claims have substantial merit but acknowledge the expense and uncertainty of continued litigation against Goldman Sachs and the other Settling Defendants.  In recommending that the Court approve the settlement, Lead Counsel have taken into account a range of outcomes and the risks of further litigation and believe the Goldman Sachs settlement agreement confers significant benefits on the Settlement Class in light of the circumstances here while eliminating:  (i) the uncertainty of future relief after protracted and expensive litigation, including the difficulties of proving liability, causation, and damages under the Sherman Act and Clayton Act and possible defenses to those and other claims; and (ii) the risk that Plaintiffs may not ultimately prevail against Goldman Sachs and, thus, may not secure this significant additional relief for the Settlement Class.

## II.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

As explained in Plaintiffs' prior submissions in support of the other pending settlements (ECF No. 221), the proposed Settlement Class should be certified because it meets the requirements of Rule 23(a) and 23(b)(3) of the Federal Rule of Civil Procedure:

1.   **Numerosity** – The Settlement Class consists of thousands of investors and involves widely traded instruments; therefore, numerosity is readily satisfied.  *See Wallace v. IntraLinks*, 302 F.R.D. 310, 315 (S.D.N.Y. 2014) ("common sense assumptions . . . suffice to demonstrate numerosity").

2.   **Commonality** – Numerous common issues of fact and law that affect all or a substantial number of Settlement Class Members on the issue of liability, impact, and damages exist.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011); *see also Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502

F.3d 91, 105 (2d Cir. 2007) ("allegations of the existence of . . . conspiracy are susceptible to common proof").

3. **Typicality** – Plaintiffs' claims are typical of the claims of absent class members because they arise from the same course of conduct and are based on the same legal theory. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175(JG)(VVP), 2014 WL 7882100, at *31 (E.D.N.Y. Oct. 15, 2014) ("Because the representative plaintiffs will seek to prove that they were harmed by the same overall course of conduct and in the same way as the remainder of the class, their claims are by all appearances typical of the class.").

4. **Adequacy** – Plaintiffs will fairly and adequately protect the interests of the class because their interests do not conflict, and they are represented by Lead Counsel who are experienced in class and antitrust litigation and have diligently represented the interests of the Settlement Class in this litigation and will continue to do so. *See In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111-12 (S.D.N.Y. 2010).

5. **Predominance** – The questions of law or fact that are capable of common proof are more substantial than the issues subject only to individualized proof. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015); *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997) (Predominance is a "test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.").

6. **Superiority** – A class action is a superior method of adjudicating claims in cases like this one, as numerous courts have held. *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004); *In re Nat'l Gas Commodities Litig.*, 231 F.R.D. 171, 185 (S.D.N.Y. 2005); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 279, 284 (S.D.N.Y. 1999).

Accordingly, the requirements of Rule 23(a) and 23(b)(3) are satisfied, and certification of the

Settlement Class for purposes of settlement is appropriate.

## CONCLUSION

On the basis of the foregoing, Plaintiffs respectfully request that the Court grant

Plaintiffs' Motion for Preliminary Approval of Settlement Agreement with The Goldman Sachs

Group, Inc. and enter the Goldman Sachs Preliminary Approval Order.

DATED:  December 16, 2016                    Respectfully submitted,


  s/ Christopher M. Burke

Christopher M. Burke (CB-3648)
Walter W. Noss (WN-0529)
Kristen M. Anderson (*pro hac vice*)
SCOTT+SCOTT,
    ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
cburke@scott-scott.com
wnoss@scott-scott.com
kanderson@scott-scott.com

David R. Scott (DS-8053)
Donald A. Broggi (DB-9661)
Peter A. Barile III (PB-3354)
Sylvia M. Sokol (SS-0317)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
david.scott@scott-scott.com
dbroggi@scott-scott.com
pbarile@scott-scott.com
ssokol@scott-scott.com

Daniel L. Brockett
Daniel Cunningham
Marc L. Greenwald
Steig D. Olson
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010-1601
Telephone: 212-849-7000
Facsimile: 212-849-7100
danbrockett@quinnemanuel.com
danielcunningham@quinnemanuel.com
marcgreenwald@quinnemanuel.com
steigolson@quinnemanuel.com

Jeremy D. Andersen (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: 213-443-3000
Facsimile:  213-443-3100
jeremyandersen@quinnemanuel.com

Patrick J. Coughlin
David W. Mitchell
Brian O. O'Mara
ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619-231-1058
Facsimile:  619-231-7423
patc@rgrdlaw.com
davidm@rgrdlaw.com
bomara@rgrdlaw.com

*Co-Lead Class Counsel*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 16, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

      /s/ Christopher M. Burke
Christopher M. Burke
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
Email: cburke@scott-scott.com