![Robbins Geller Rudman & Dowd LLP]

December 16, 2016

**BY ECF**

Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Centre Street, Room 2202
New York, NY  10007

Re:   *Alaska Electrical Pension Fund v. Bank of America Corp.*, No. 14-cv-7126 (JMF)

Dear Judge Furman:

Plaintiffs respectfully move to compel production of a discrete set of documents that Morgan Stanley, ICAP, UBS, and BNP ("Defendants") presented to the CFTC regarding the manipulation of ISDAFix.

After the Court denied Plaintiffs' prior motion to compel without prejudice (Dkt. 306), Plaintiffs narrowed their request to a targeted subset of regulatory materials, including white papers, presentations, written memoranda, or briefs shown or provided to the CFTC or the DOJ about ISDAfix manipulation.[1]  This modified request is narrow and presents no burden to Defendants.  The documents sought would likely be admissible as party admissions, and they go directly to the core issue in the case—when, why, and how did each Defendant manipulate the ISDAFix benchmark rate.  Nor are the documents "attorney work product" because each was prepared for purposes of persuading an adverse party and then shared with that adverse party.  The parties have met and conferred and are at an impasse as to each Defendant.  Accordingly, Defendants should be compelled to produce this small set of documents.

I.    **The Material Is Highly Relevant to the Claims and Defenses in This Action**

As the Court previously held: "Although not unlimited, relevance, for purposes of discovery is an extremely broad concept."  Dkt. 306 at 4 (quotation omitted).  And once Plaintiffs demonstrate "any possibility of relevance," Defendants bear the burden of showing that "the requests are irrelevant, or are overly broad, burdensome, or oppressive."  *Id.* at 4 (same).

Defendants' presentations to the CFTC addressing ISDAfix manipulation are highly relevant to the claims and defenses in this case.  Although the Court noted that "there are some

---

[1]  This request includes documents that were shown to, but not retained by, the CFTC or DOJ. Defendants HSBC, Nomura, and Wells are not part of this motion because each represented they did not have documents responsive to this request.

notable distinctions between the CFTC's investigation and the instant action," (*id.* at 5), it remains indisputable that both Plaintiffs' claims and the CFTC's investigation relate to manipulation of the USD ISDAfix rate and the process by which it was set. Indeed, at the November 17 hearing, Mr. Roellke admitted as much, representing that "I think in the context of whether or not manipulation occurred, which is the core of the plaintiffs' case, there is overlap." (11/17/2016 Hearing Tr. 24:18-21.)

Nor do we need to speculate if Defendants' presentations address ISDAfix manipulation. Defendants concede that they do, but resist production because the presentations apparently do not address our allegations of "collusive" manipulation. But that objection misunderstands the nature of discovery. Documents need not be relevant to every element of each claim to be relevant; they simply need to be relevant to **a** claim or defense. Here, evidence of ISDAfix manipulation, whether carried out unilaterally or collusively, is crucial to this case.

For instance, Plaintiffs' contract and unjust enrichment claims do not turn on the presence of collusion. It is a breach of contract to manipulate ISDAfix rates—and it is unjust to enrich oneself by manipulating ISDAfix rates—whether done unilaterally or as a group. Such evidence also bears directly on Plaintiffs' Sherman Act claims. Defendants' collective, knowing engagement in a corrupt and manipulated process—including by repeatedly "banging the close" to manipulate the rate—while holding the process out as a reliable benchmark constitutes an actionable agreement under the antitrust laws. Evidence that these Defendants routinely engaged in manipulating ISDAfix to harm their mutual customers is probative of a larger arrangement among Defendants to use a corrupted benchmark in an anticompetitive manner. Thus, as Defendants' counsel concedes, the question of whether or not manipulation occurred—even as between ICAP and a single Defendant bank—is at the "core" of Plaintiffs' case.

## II. The Request Is Proportional As There Is No Burden to Defendants

Plaintiffs' tailored request for this "core discovery" is proportional to the needs of this case. These presentations can be produced with little burden on Defendants, and the request is in no way overbroad or oppressive. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 (NRB), Dkt. No. 1461 (June 17, 2016) (ordering defendants to reproduce government disclosures; explaining that there is no more than a "minimal burden on defendants to reproduce disclosures previously made to governmental authorities"). Plaintiffs have also satisfied the other Rule 26(b)(1) proportionality factors, including: showing how these materials are important to this action; the large amount in controversy; that these materials are uniquely in Defendants' possession; Defendants' sufficient resources; and the importance of this action involving 15 sophisticated entities in a multi-trillion dollar market, where the CFTC has imposed $365 million in penalties, and settlements in this case total over $380 million. Also, despite Rule 26(b)(1) expressly stating that requested information "need not be admissible in evidence to be discoverable," these CFTC presentations are likely admissible in evidence as a party admission.

## III. Work Product Does Not Shield the Presentations Because They Were Arguments Made to an Adverse Third Party

It is Defendants' burden to demonstrate that these presentations to a third party adversary should be considered work product. *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2,*

2

*2002,* 318 F.3d 379, 384 (2d Cir. 2003) (citing cases); *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 393 (S.D.N.Y. 2015). These were documents shared with an adversary for the purpose of trying to persuade them not to bring claims. It would be akin to claiming work product protection over a letter sent to opposing counsel—or a brief filed with the Court—setting forth a party's legal defenses. Defendants have not provided any authority to support their claim of work product over this type of document. In fact, Defendants have not even provided privilege logs setting forth the requisite detail about these documents to allow either Plaintiffs or the Court to make this determination. On this basis alone, the Court should compel production.

Even assuming Defendants' presentations are deemed to be work product, any protection was waived because Defendants shared them in an adversarial setting. *See* Dkt. 306 at 10-11 (discussing *In re Steinhardt Partners, L.P.*, 9 F.3d 230 (2d Cir. 1993)); *see also In re Am. Express Anti-Steering Rules Antitrust Litig. (No II)*, 2012 WL 2885367, *2 (E.D.N.Y. July 13, 2012) (Reyes, J.) ("The production to the government of documents generated by counsel *during* a government investigation, with the specific intent to dissuade the government from bringing suit, is inconsistent with the purposes behind the attorney work product doctrine."). The only remaining question is whether Defendants can somehow invoke their alleged confidentiality agreements to avoid waiver and prevent disclosure. Dkt. 306 at 11-14. But Defendants cannot meet the factors set forth by the Court. *Id.* at 13.

*First*, Defendants continue to refuse to provide any particulars of these purported agreements. As the Court held, "whether and to what extent documents may be protected from production may ultimately turn on the particulars of Defendants' agreements with the CFTC, which do not appear to be part of the current record." *Id.* at 14. Defendants cannot be allowed to rely on this argument without substantiating it with the actual agreements, including the date, terms, and how they were memorialized.

*Second*, the Court suggested that "the propriety of withholding production may well turn on the particulars of the documents at issue[.]" *Id.* at 13. Here, the presentations were **arguments** being made to an adverse party. Defendants made a conscious decision to try to convince the CFTC that they did not engage in wrongdoing (or, perhaps, admitted to wrongdoing but provided arguments to mitigate a penalty). This is very different from a situation where, for instance, a requesting party seeks an internal memorandum prepared by counsel for its client.

*Finally*, Plaintiffs cannot "replicate" these materials as was the case in *In re Natural Gas Commodity Litigation*, 2005 WL 1457666 (S.D.N.Y. June 21, 2005), where the moving party sought an internal attorney-client memorandum that "in part summarized certain data analyses undertaken by and at the direction of [] outside legal counsel." *Id.* at *2. The *Natural Gas* court found that the plaintiffs could replicate these analyses based on the data provided. Here, Defendants' representations and admissions regarding the results of Defendants' investigations and employee interviews can only be found in these presentations.

\* \* \*

Accordingly, for the reasons set forth above, Plaintiffs respectfully request that the Court order Defendants to produce the requested materials.

Respectfully submitted,

| | | |
|---|---|---|
| */s/ David W. Mitchell* | */s/ Daniel L. Brockett* | */s/ Christopher M. Burke* |
| David W. Mitchell | Daniel L. Brockett | Christopher M. Burke |
| **Robbins Geller Rudman & Dowd LLP** | **Quinn Emanuel Urquhart & Sullivan, LLP** | **Scott+Scott, Attorneys At Law, LLP** |