Joshua Goldberg
(212) 336-2441
Fax: (212) 336-2222
jgoldberg@pbwt.com

December 22, 2016

*By ECF*

The Honorable Jesse M. Furman
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York  10007

Re: *Alaska Elec. Pension Fund, et. al. v. Bank of Am. Corp., et al.*, No. 14-cv-7126 (JMF)

Dear Judge Furman:

We represent Defendant BNP Paribas ("BNPP") and write on behalf of non-Settling Defendants BNPP, ICAP, UBS, and Morgan Stanley[1] in opposition to Plaintiffs' December 16, 2016 letter, Dkt. 332 ("Plf. Lt."), renewing their request for the production of certain materials provided to U.S. regulators, which the Court previously denied.  Dkt.  299, 306 ("Op.").  Plaintiffs now seek "white papers, presentations, written memoranda, or briefs shown or provided to the CFTC or the DOJ about ISDA[FIX] manipulation."  Plf. Lt. at 1 (the "Materials").  Though Plaintiffs describe their request as more "targeted," than their initial demands, the latest iteration fails to meet the core requirements of Rule 26 and the parameters set forth in the Court's Order denying Plaintiffs' prior motion to compel.

### 1.  Plaintiffs' Request Does Not Conform with the Court's Prior Ruling

The Court held that Plaintiffs' original request for regulatory communications failed on "relevance, proportionality, and overbreadth grounds."  Op. at 9.  This remains true with respect to Plaintiffs' ostensibly more "targeted" new request.  Given the "notable distinctions between the CFTC's investigation and the instant action," "the investigatory processes of the CFTC and Defendants' other regulators have little to no bearing on the merits of Plaintiffs' antitrust or state law claims."  *Id.* at 5, 7.[2]  The Court should adhere to its prior ruling and deny the latest request.

*First*, Plaintiffs' request continues to rely on the erroneous assumption that documents relevant to the CFTC's Commodity Exchange Act ("CEA") investigation are necessarily relevant

---

[1] Non-Settling Defendants HSBC, Nomura and Wells Fargo are not implicated by Plaintiffs' request.

[2] *See also* Op. 5-6 (noting that the CFTC has "found only unilateral violations of the CEA where [a] bank had submitted *different* ISDA[FIX] rates, whereas Plaintiff's antitrust claim is premised on the theory that Defendants collusively 'rubberstamped' the *same* ISDA[FIX] rate." (emphasis in original).)

to Plaintiffs' allegations of collusive manipulation. While Plaintiffs now seek fewer communications with the CFTC, their request still does not comply with the Court's instruction to tailor requests to account for the "notable distinctions" between the CFTC investigation and this case. Critically, Plaintiffs fail to focus their request on materials going to the heart of their Sherman Act claim: actual or potential *collusive* manipulation of ISDAFIX. Further, Plaintiffs do not explain why the Materials are relevant to the current stage of this case, where the Court has ordered that this phase of discovery be focused on issues relevant to class certification.

Plaintiffs' breach of contract and unjust enrichment claims are based on the same alleged "rubberstamping" conspiracy.[3] *See, e.g.*, Dkt 164 (Consol. Am. Cx), ¶ 187 ("Only with a conspiracy in place to rubberstamp the reference rate would anyone have an incentive to try to manipulate the market for swaps around the fixing window."). Plaintiffs do not—and cannot— argue that the CFTC's investigation concerns any such alleged method of rate manipulation. To the contrary, the CFTC has focused on instances in which particular banks *deviated* from the reference rates—the opposite of Plaintiffs' claims here. Op. at 5-6.[4] Furthermore, Plaintiffs cannot allege that any of the Materials relate to the specific alleged transactions with Defendants, which form the basis of their state law claims.

*Second*, contrary to the Court's directive, Plaintiffs fail to "point to any *specific* information that is relevant to their claims and would be found solely in the unproduced documents." Op. at 6. Plaintiffs insist that "[e]vidence that these Defendants routinely engaged in manipulating ISDA[FIX]" is "probative" of their claims, Plf. Lt. at 2, but they provide no "specific[s]" as to why such evidence, if it existed, "would be found solely in the unproduced documents" and not in the underlying documents that were produced to the CFTC and Plaintiffs. Plaintiffs offer only speculation that the Materials may contain "admissions" or "argument" that cannot be obtained through the underlying evidence. But such lawyer "argument" is not evidence and there is no basis upon which to assert that the Materials contain any "admission" relevant to Plaintiffs' claims.

*Third*, Plaintiffs continue to ignore the underlying produced documents, which have been in their possession for months. The Court acknowledged the breadth of Defendants' enormous productions in rejecting Plaintiffs' first motion. Op. at 6. As the Court held, "Rule 26(b)(1)'s proportionality requirement means the[] 'marginal utility' [of the requested documents] must . . . be considered" in evaluating the relevance of the documents Plaintiffs seek. Op. at 7 (citation omitted). Here, Plaintiffs cannot explain why they are entitled to materials created by counsel in cooperation with the CFTC's investigation of unilateral conduct, given the massive amounts of underlying documents and data already produced by Defendants. Plaintiffs' suggestion that they

---

[3] As there are no state law claims against ICAP, Plaintiffs' argument is inapplicable to ICAP.

[4] In documents released yesterday announcing a settlement with Goldman Sachs, the CFTC highlighted attempted manipulation based on traders' *deviation from* the reference rate. *See* http://www.cftc.gov/idc/groups/public/@newsroom/documents/file/goldmanmisconduct122116.pdf ("Shortly after 11:00 a.m. that day, the Goldman trader made a false report in the 30-year USD ISDAFIX rate by submitting higher than Swap Broker's reference rate.").

may rely on evidence of non-collusive manipulation to prove their purported conspiracy case says more about the unfounded nature of their claims than anything else. It certainly provides no basis to grant their motion.[5]

### 2. Plaintiffs Seek Materials Protected by the Work-Product Doctrine

Plaintiffs' request also squarely implicates attorney work-product protection, which the Court held may independently defeat Plaintiffs' requests. The Court underscored that where "the underlying information had all been produced, and the plaintiffs could therefore 'perform their own analyses . . .' the 'plaintiffs suffer[ed] no hardship by not having defendants' analyses.'" Op. at 12-13. That is precisely the situation here.[6] Plaintiffs seek work product prepared by counsel (or under its direction). The Materials were shown but not produced to the CFTC, and/or were shared subject to confidentiality or non-waiver agreements so they retained their protected character, Op. at 13, further demonstrating Defendants' intent to preserve work product protection and the CFTC's acknowledgment that such protection was not waived. Nor have Plaintiffs overcome this protection by showing the requisite need for them—and they cannot, since they have the documents produced to the CFTC that underlie the attorney-generated Materials.

Plaintiffs' assertion that the materials they seek are discoverable "admissions" or "**arguments** . . . to an adverse party" is incorrect. Plf. Lt. at 2-3 (emphasis in original). Plaintiffs have no basis to characterize Defendants' efforts to cooperate with a government agency's investigation as "admissions regarding the results of Defendants' investigations and employee interviews." *Id.* at 3. To the extent the Materials were created by counsel in cooperation with a government agency's investigation into potential violations of the CEA, a statute that Plaintiffs have disclaimed in this case, those Materials reflect documents and data that Plaintiffs already have. *In re Natural Gas Commodity Litig.*, No. 03 Civ. 6186, 2005 U.S. Dist. LEXIS 11950, at *37-39 (S.D.N.Y. June 21, 2005).

Accordingly, the Court should deny Plaintiffs' motion based on their failure to meet the standards the Court set in its prior ruling. If, however, the Court is inclined to consider Plaintiffs' request notwithstanding its prior ruling, Defendants request the opportunity for further briefing in which we may address factual nuances and arguments regarding each of the Defendants' Materials.

---

[5] Plaintiffs erroneously claim that Defendants have conceded that the presentations at issue "address ISDAFIX manipulation." Plf. Lt. at 2. That Defendants showed or presented materials to the CFTC concerning the ISDAFIX rate does not amount to any admission that ISDAFIX was in fact manipulated.

[6] The only data or communications referenced in the Materials that Plaintiffs do not possess are some limited materials—never requested by the CFTC—related to a few transactions that took place outside of ICAP and therefore could not have impacted ISDAFIX (or were not tied to ISDAFIX at all).

Respectfully submitted,

Joshua Goldberg

cc:     All counsel of record via ECF