**Patterson Belknap Webb & Tyler** LLP

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

January 5, 2017

Joshua Goldberg
(212) 336-2441
Fax: (212) 336-2222
jgoldberg@pbwt.com

*By ECF*

The Honorable Jesse M. Furman
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York  10007

Re:  _Alaska Elec. Pension Fund, et. al. v. Bank of Am. Corp., et al._, No. 14-cv-7126 (JMF)

Dear Judge Furman:

We represent Defendant BNP Paribas ("BNPP"), and respectfully submit this letter jointly with Defendants ICAP, UBS, and Morgan Stanley ("Defendants"), pursuant to the Court's December 27, 2016 Order, Dkt. 345, which granted Defendants' request for further briefing regarding Plaintiffs' December 16, 2016 letter motion, Dkt. 332 ("Plf. Lt."). By that motion, Plaintiffs seek the production of "white papers, presentations, written memoranda, or briefs shown or provided to the CFTC or the DOJ about ISDA[FIX] manipulation," Plf. Lt. at 1 (the "Materials")—a request the Court previously denied. Dkt. 299, 306 ("Op.").

The Court should adhere to its prior ruling. Although the specific Materials vary by Defendant, the deficiencies in Plaintiffs' motion apply to all Defendants. Rule 26(b)(1) requires a party seeking discovery to consider "the importance of the discovery in resolving the issues" at stake in the instant action. Fed. R. Civ. P. 26(b)(1). Plaintiffs have failed to explain how the requested materials from the CFTC's investigation will resolve their Sherman Act or state-law claims, which are all based on alleged collusion through a "rubberstamping agreement" and "banging the close."[1]  Furthermore, the Materials are attorney work product, which is protected from disclosure. The following provides more specifics as to each Defendant.

1.     **BNPP**

BNPP is alleged to have been a counterparty to just nine transactions listed in Appendix A to the Consolidated Amended Complaint ("CAC"). Plaintiffs have conceded that, even as to these transactions, the information that they provided to the Court in the CAC was inaccurate; on November 15, 2016, Plaintiff Alaska Electrical informed BNPP "as a courtesy"

---

[1] As the Court found, the CFTC's investigations to date have "found only unilateral violations of the CEA"—a statute Plaintiffs do not claim Defendants violated—"where the bank had submitted *different* ISDAfix rates, whereas Plaintiff's antitrust claim is premised on the theory that Defendants collusively 'rubberstamped' the *same* ISDAfix rate." Op. at 5-6 (emphasis in original).

Hon. Jesse M. Furman
January 5, 2017
Page 2

that it would correct misinformation contained in Appendix A as to BNPP and others. Faced with a dearth of evidence, Plaintiffs now seek materials created by counsel in connection with the CFTC investigation. Plaintiffs' request fails to articulate any specifics as to why its motion should be granted. As the Court previously found, "Plaintiffs do not point to any *specific* information that is relevant to their claims and would be found solely in the unproduced documents." Op. at 6.

First, BNPP has provided no white papers, memoranda, or briefs to the CFTC in connection with the ISDAFIX investigation. *See* Decl. of J. Goldberg, Sept. 16, 2016, Dkt. 289-1. BNPP did present—but did not produce—to the CFTC on a confidential basis two slide decks created by counsel. *Id.* Neither relates to any allegations of collusion or manipulation based on a "rubberstamping agreement" or "banging the close." Communications and data referenced in those slide decks have been produced to Plaintiffs.

Second, BNPP's slide decks are attorney work product. In connection with both presentations, the CFTC orally agreed, as a condition of BNPP's providing information for the purposes of its investigation, that the CFTC would maintain the content of the presentations in confidence in order to preserve, and not waive, BNPP's work product protection. BNPP has, therefore, not waived the protection of its counsel's work product. As this Court noted, the Second Circuit has expressly "declined 'to adopt a per se rule that all voluntary disclosures to the government waive work product protection,'" precisely because "doing so would 'fail to anticipate . . . situations in which the [agency] and the disclosing party have entered into an explicit agreement that the [agency] will maintain the confidentiality of the disclosed materials.'" Op. at 11 (quoting *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 236 (2d Cir. 1993)); *see also* Op. at 12 (citing *Maruzen Co. v. HSBC USA, Inc.*, 00-CIV-1079, 2002 WL 1628782, at *2 (S.D.N.Y. 2002)). That is the situation here.

Third, compelling BNPP to reveal what, if any, evidence its counsel identified as relevant to the issues under investigation by the CFTC will not advance Plaintiffs' claims. Plaintiffs have no basis to seek counsel's opinion work product, particularly where Plaintiffs have received all the underlying evidence they need to perform their own comparable analyses. *See* Op. at 12-13 (citing *In re Natural Gas Commodity Litig.*, at *8); *see also* Fed. R. Civ. P. 26(b)(3)(A)(ii) (work product not discoverable unless requesting party shows "substantial need for the materials to prepare its case"). BNPP has produced over 105,000 documents from 34 custodians, and transactional data for over 695,000 transaction-level events, and is in the process of negotiating further production with Plaintiffs. Plaintiffs have never identified deficiencies in BNPP's production that would justify production of the protected work product they seek here. Rule 26(b)(1) permits only relevant and proportional discovery, measured in light of "the parties' relative access to relevant information" and "the importance of the [requested] discovery in resolving the issues." Here, Plaintiffs have access to the relevant information contained in BNPP's slide decks, and the work product they seek on top of that has no relationship— "importan[t]" or otherwise—to resolving "the issues" of this case.

2.     ICAP

9452533

Hon. Jesse M. Furman
January 5, 2017
Page 3

With respect to ICAP, only two categories of materials arguably fall into Plaintiffs' renewed requests:  (i) a single letter to the CFTC addressing ICAP's cooperation with the CFTC's investigation, as well as certain substantive elements of—and defenses to—a CEA claim, such as jurisdictional and statute of limitations defenses; and (ii) compilations of documents that were shown—but not produced—to the CFTC.  Neither category is relevant to Plaintiffs' claims in this case, both categories contain attorney work product, and Plaintiffs have not and cannot demonstrate any need whatsoever for these materials.  Plaintiffs' request for these ICAP materials is inappropriate and should be denied.

Plaintiffs have absolutely no basis to demand compilations of documents that ICAP has shown to the CFTC.  This is especially the case here, where ICAP has already produced all of the underlying documents to Plaintiffs.  As the Court recognized in its prior Order, ICAP alone produced 4,000 spreadsheets, as well as "all documents that it previously produced in response to the CFTC's request for ISDAfix-related communications, totaling 783,339 documents and 1,281,616 pages."  Op. at 3.  ICAP has since produced an additional 1,199 spreadsheets of transaction and rate data to Plaintiffs.  Plaintiffs have no right to demand compilations of those same documents.  The selection of documents for the purpose of addressing an alleged CEA claim which did not involve collusive conduct is the very definition of opinion work product that contains the thought processes, mental impressions and legal analysis of ICAP's counsel, which is "accorded great[er] protection by the courts."  Op. at 13 (citation omitted).  The compilations are also irrelevant as they have no bearing on the merits of Plaintiffs' Sherman Act claim—which is the only claim alleged against ICAP.

Similarly, the request for production of ICAP's letter to the CFTC staff should also be denied.  The letter described ICAP's cooperation with the CFTC's investigation and also detailed potential defenses to, and elements of, a CEA claim.  The extent of ICAP's cooperation with a Federal agency is clearly of no relevance here, and any discussion of an alleged CEA claim based on unilateral conduct is likewise irrelevant.  Plaintiffs grossly overreach in seeking this correspondence, which we have told them does not in any way relate to their allegations of a wide-ranging, multi-year antitrust conspiracy among numerous banks.  And, Plaintiffs cannot possibly demonstrate a "substantial need" for the letter since ICAP has already produced to Plaintiffs over one million pages of documents that were previously produced to the CFTC.

Finally, ICAP has not waived any work-product protection.  The materials at issue were shown or transmitted to the CFTC pursuant to ICAP's understanding that they would be kept confidential and that they constituted protected attorney work product for which the privilege had not been waived.  In fact, the letter contained an express claim of confidential treatment under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(7)(A) (1976).  In addition, the letter invoked FOIA Exemption 4, which exempts from government disclosure "commercial or financial information obtained from a person and privileged or confidential."  *Id.* § 552(b)(4).

### 3.    Morgan Stanley

Plaintiffs' renewed request seeks "white papers, presentations, written memoranda, or briefs shown or provided to the CFTC or the DOJ about ISDAfix manipulation" that reflect "admissions" or "**arguments**… to try to convince the CFTC that [Defendants] did not engage in

9452533

Hon. Jesse M. Furman
January 5, 2017
Page 4

wrongdoing." (Dkt. 338 at 1, 3) (emphasis in original).  Morgan Stanley has only three documents that could even potentially contain Morgan Stanley argument responsive to this request—two slide decks and one letter.  The two slide decks focus on generalized facts about Morgan Stanley's records and business practices that are reflected in the underlying materials Plaintiffs already have.  And the letter addresses trading to hedge a transaction that did not involve any product that the Plaintiffs claim is ISDAFIX-related.  None of the three documents addresses collusion among submitting banks.  And none contains an admission of misconduct of any kind by Morgan Stanley.  Each document contains, at best, only a few lines of what could be described as the type of "argument" work product Plaintiffs say they are seeking.

Nothing in these three documents represents "*specific* information that is relevant to [Plaintiffs'] claims and would be found solely in the unproduced documents."  Op. at 6 (emphasis in original).  Morgan Stanley long ago produced to Plaintiffs all business records produced to the CFTC that were responsive to any of Plaintiffs' substantive document requests.  There is no basis for Plaintiffs' speculation that the two Morgan Stanley slide decks or the letter might contain relevant information that is somehow missing from this production.[2]

Apart from Plaintiffs' failure to show any justification for requiring production of these materials, all of the documents are classic attorney work-product.  As noted, the documents reflect counsel's recitation and analysis of information that Plaintiffs already have.  The few lines of "argument" that appear in the materials are merely generalized observations about what that information does *not* show.  To the extent such argument is responsive to Plaintiffs' renewed request, it is work product prepared by Morgan Stanley's counsel (Morgan Lewis) and Morgan Stanley did not waive that work-product protection by producing the documents.  Each of the three documents was provided to the CFTC on a confidential basis in connection with presentations on topics related to the CFTC's investigation.  All such material was produced to the CFTC with an explicit request for confidential treatment and with the understanding that the material would be maintained as confidential.

4.    **UBS**

As to UBS, the only document at issue is a PowerPoint presentation ("UBS's Presentation") that was prepared under the direction of UBS's outside counsel in connection with a meeting with the CFTC, following its issuance of two subpoenas to UBS.  UBS's Presentation addresses issues underlying the CFTC's CEA investigation, and constitutes classic attorney work product.  UBS's Presentation was shown to several CFTC staff at a meeting held on May 20, 2014.  *See* Decl. of M. Fagel, ¶5.b., Sept. 16, 2016, Dkt. 289-3.  But UBS declined to provide the CFTC with a copy of the presentation, either in hard copy or electronically, thereby ensuring that the work product materials remained exclusively in UBS's control.  *Id.*

---

[2] The letter Morgan Stanley withheld references some communications pertaining to a transaction that was not tied to ISDAFIX and is not among the types of transactions that Plaintiffs have identified as being "ISDAFIX-related."  Those communications, which are irrelevant to Plaintiffs' claims, were not requested by the CFTC and, therefore, are not among the underlying materials provided to Plaintiffs.

Hon. Jesse M. Furman
January 5, 2017
Page 5

There can be no dispute that UBS's Presentation is classic attorney work product; and because it was never produced or delivered to CFTC, and thus never left UBS's custody and control, its confidentiality was preserved and the work product privilege was not waived. *See, e.g., Charter One Bank, F.S.B. v. Midtown Rochester, L.L.C.*, 738 N.Y.S.2d 179, 186 (Sup. Ct. 2002) ("Unless the Plaintiff has in its possession the written work product of Defendant's attorneys, by a voluntary and intentional disclosure, there can be no waiver of the absolute immunity from disclosure provided for attorney work product."); *see also Connecticut Mut. Life Ins Co v. Shields*, 16 F.R.D. 5, 7 (S.D.N.Y. 1954) (rejecting argument that the fact that an attorney's reports were "displayed to third persons constitutes a waiver" of work product).

Plaintiffs are not entitled to UBS's Presentation for a separate, independent reason: contrary to this Court's directive, Plaintiffs have not made the threshold showing of establishing why they would find information in UBS's Presentation relevant to their claims. *See* Op. at 6. As the Court explained, "Plaintiffs do not point to any *specific* information that is relevant to their claims and would be found solely in the unproduced documents." Op. at 6 (citations omitted) (emphasis in original). That remains true, as Plaintiffs still fail to explain adequately how UBS's legal team's discussions with the CFTC about its CEA investigation into unilateral manipulation could be relevant to Plaintiffs' Sherman Act or state law claims which are all predicated on a theory of collusive rubber stamping. Despite having access to UBS's entire document production, Plaintiffs point to no document or information in that production that they contend is incomplete that they believe UBS's Presentation is needed to supplement. Moreover, as recognized by the Court, even if UBS's Presentation were assumed to have some marginal relevance, Plaintiffs do not explain why it is not sufficient that Plaintiffs already have access to all of the underlying materials that they could conceivably need – and certainly not why any purported need for the Presentation is significant enough to overcome its work product protection.[3]

Requiring UBS to provide an adversary in litigation with classic attorney work product material—the confidentiality of which UBS has worked hard to protect—would be a significant burden, and should not be undertaken in the absence of a clear need by Plaintiffs for such information, which they have not established. Doing so here would not be proportional to the case, due to (1) the inherently privileged nature of the presentation, (2) the lack of relevance of the presentation to Plaintiffs' collusion-based claims, and (3) Plaintiffs' lack of need for the privileged materials in light of the production of the underlying materials to Plaintiffs by UBS.

*       *       *

For all the reasons stated, the Court should adhere to its prior ruling and deny Plaintiffs' latest request in its entirety.

---

[3] As previously noted, the only data referenced in UBS's presentation that Plaintiffs do not already possess are some limited materials—never requested by the CFTC—related to a few transactions that took place outside of ICAP and therefore could not have impacted ISDAFIX and could not establish Plaintiffs' claims.

9452533

Hon. Jesse M. Furman
January 5, 2017
Page 6

Respectfully submitted,


/s/ Joshua A. Goldberg
_____
JOSHUA A. GOLDBERG

1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2000
Fax: (212) 336-2222
wfcavanaugh@pbwt.com
jgoldberg@pbwt.com

*Attorneys for Defendant BNP Paribas*


RICHARDS KIBBE & ORBE LLP


/s/ Brian S. Fraser
_____
BRIAN S. FRASER

200 Liberty Street
New York, NY 10281
Telephone: (212) 530-1800
Fax: (212) 530-1801
bfraser@rkollp.com
sbrandt@rkollp.com
rgaither@rkollp.com

*Attorneys for Defendant ICAP Capital Markets
LLC*

9452533

Hon. Jesse M. Furman
January 5, 2017
Page 7

MORGAN, LEWIS & BOCKIUS LLP


/s/ Jon R. Roellke
_____
JON R. ROELLKE
(*Admitted Pro Hac Vice*)


1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel. (202) 739-3000
Fax (202) 739-3001
jon.roellke@morganlewis.com
anthony.vanvuren@morganlewis.com

*Attorneys for Defendant Morgan Stanley & Co. LLC*

Hon. Jesse M. Furman
January 5, 2017
Page 8

GIBSON, DUNN & CRUTCHER LLP


/s/ Joel S. Sanders
_____
JOEL S. SANDERS
(*Admitted Pro Hac Vice*)

GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
Telephone:  (415) 393-8200
Fax:  (415) 393-8306
jsanders@gibsondunn.com
mfagel@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
PETER SULLIVAN
ERIC J. STOCK
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Fax: (212) 351-4035
psullivan@gibsondunn.com
estock@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
NATHANIEL L. BACH
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
Fax: (213) 229-6241
nbach@gibsondunn.com

*Attorneys for Defendant UBS AG*