Robbins Geller Rudman & Dowd LLP

January 10, 2017

**BY ECF**

Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Centre Street, Room 2202
New York, NY  10007

Re:   *Alaska Electrical Pension Fund v. Bank of America Corp.*, No. 14-cv-7126 (JMF)

Dear Judge Furman:

      Pursuant to the Court's December 27, 2016 Order (Dkt. 345), Plaintiffs respectfully submit this supplemental letter brief to compel Defendants Morgan Stanley, ICAP, UBS, and BNP ("Defendants") to produce a discrete set of documents presented to the CFTC about ISDAfix manipulation.  Plaintiffs' request for this handful of documents imposes no burden on Defendants.  These documents are directly related to the core issues in this case: whether and why Defendants' traders manipulated the ISDAfix benchmark rate over a period of more than seven years.  Therefore, the requests are proportional to this massive case.

      We now know that these presentations were created to persuade an adversary, the CFTC, and were provided voluntarily and without any written confidentiality agreements.  Defendants have not carried their burden of showing the documents are attorney work product, and even if they once were, the protection has been waived.  These documents are likely admissible as admissions of each Defendant, and cannot be reconstructed because Plaintiffs do not know what concessions or defenses the presentations assert.  Thus, Defendants have not met their burden in resisting this targeted, burdenless discovery.  This Court should compel production.

**I.**    **The Materials Sought Are Relevant and Proportional to the Claims and Defenses**

      The CFTC's investigation concerns ISDAfix manipulation and the process by which ISDAfix was set.  Plaintiffs' key factual allegation—denied by Defendants (*see, e.g.*, Dkt. 247, Morgan Stanley Answer ¶¶133-50)—is that Defendants manipulated ISDAfix.  Defendants previously conceded the connection between the CFTC investigation and this case.  As Morgan Stanley's counsel, speaking for all non-settling Defendants, stated in Court:  "in the context of whether or not manipulation occurred, which is the core of the plaintiffs' case, there is overlap." (Nov. 17, 2016 Hr'g Tr. 24:18-21).  Tellingly, Defendants' letters fail to even address this admission or try to explain how it reconciles with Defendants resisting production.

      Yet, Defendants continue to deny the relevance of the CFTC investigation to Plaintiffs' case by asserting that the CFTC is focused only on unilateral conduct and not "collusion."  *First*,

as stated in Plaintiffs' initial letter, Plaintiffs' contract and unjust enrichment claims do not *require* collusion.  Apparently conceding this argument, Defendants fail to address it.  *Second*, evidence of manipulation in violation of the CEA bears directly on Plaintiffs' Sherman Act claims, even where a specific act of manipulation was supposedly "unilateral."  Discovery to date has revealed the widespread, nearly ubiquitous nature of Defendants' "unilateral" conduct.  Documents also expose Defendants' awareness of each others' conduct, even if, arguendo, such conduct was not explicitly coordinated.  Under well-settled antitrust law, the collective, knowing engagement in a corrupt and manipulated process constitutes an actionable agreement.[1]  Evidence that Defendants routinely engaged in manipulating ISDAfix is probative of a larger, actionable arrangement among Defendants to adopt and maintain a corrupted benchmark in an anticompetitive manner.  Thus, the question of whether and how manipulation occurred—even as between ICAP and a single bank—is highly relevant.

In an effort to deny this clear relevance, Defendants mischaracterize the Court's November 16 opinion.  Plaintiffs' narrow request is entirely consistent with the Court's opinion, which granted Plaintiffs leave to bring a new motion with "more targeted discovery requests." (Dkt. 306 at 5.)  The Court also specifically rejected the notion "that all of the documents within the scope of Plaintiffs' requests are irrelevant." (*Id.* at 9.)  Further, the Court held that "relevance, for purposes of discovery, is an extremely broad concept," a principle not altered by recent amendments.  (*Id.* at 4.)[2]  Plaintiffs' current request also fully satisfies the Court's concern that Plaintiffs had not pointed to "specific" relevant information, but rather made "a general contention that every communication and work product related to the regulatory investigations is 'likely' to contain additional information." *Id.* at 6*.*  Here, Plaintiffs' new discovery request is targeted and resulted in only a small set of responsive documents.  Plaintiffs have shown why these presentations are relevant and cannot be replicated by documents produced by Defendants to date—for example, they contain Defendants' representations and possible admissions to the CFTC regarding internal investigations into ISDAfix manipulation.  Plaintiffs' argument has been as specific as possible without the benefit of seeing the actual documents themselves.  Finally, despite Defendants' vague, carefully-drafted descriptions of each presentation, they essentially concede the key issue—each relates to ISDAfix manipulation.

**BNP:**  BNP admits it presented two slide decks to the CFTC *regarding ISDAfix manipulation* but states that neither relate to "a 'rubberstamping agreement' or 'banging the

---

[1]  *See, e.g.*, *Brown v. Pro Football, Inc.*, 518 U.S. 231, 241 (1996) (concerted action includes conduct that "suggests that each competitor failed to make an independent decision"); *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809-10 (1946) ("[t]he essential combination or conspiracy in violation of the Sherman Act may be found in a course of dealing or other circumstances"); *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 227 (1939) ("It is elementary that an unlawful conspiracy may be and often is formed without simultaneous action or agreement on the part of the conspirators.").

[2]  Defendants seem to have invented a new standard for relevance and proportionality:  that the requested materials "will resolve" Plaintiffs' claims, as if each piece of discovery needs to be claim dispositive.  (Dkt. 349 at 1; *see* Fed. R. Civ. P. 26(b)(1) (one factor to consider is "the importance of the discovery in resolving the issues.")  As the Advisory Committee Notes make plain, this factor simply asks Plaintiffs to be able to "explain the ways in which the underlying information bears on the issues as that party understands them." (R. 26(b)(1) Advisory Committee's Note (2015).)  Plaintiffs have more than satisfied this factor by detailing how these documents bear on Defendants' ISDAfix manipulation.

close.'"  (Dkt. 349 at 2.)  BNP does not, of course, say what its presentations—which it *admits* were on the topic of ISDAfix manipulation—did concern.  And neither Plaintiffs nor the Court should be forced to guess.  Whether or not BNP's multiple presentations to the CFTC regarding ISDAfix manipulation addressed specific, quoted terms of art ("rubberstamping" and "banging the close"), they were made in an effort to persuade an adversary on the topic of ISDAfix manipulation and are therefore relevant discovery.

**ICAP:**  ICAP acknowledges that its materials contain defenses to the CFTC's investigation of ISDAfix manipulation, thus establishing their relevance.  That the materials ICAP showed or provided to the CFTC addressed, *inter alia*, the elements of and defenses to CEA violations does *not* somehow render them irrelevant.  (*Id.* at 2-3.)  In fact, the elements of CEA claims include causation and the existence of artificial prices—also at issue here.

**Morgan Stanley:**  Morgan Stanley identifies three responsive slide decks, but objects to production because they:  do not "address[] collusion among submitting banks," do not contain any "admission of misconduct," and each contain "only a few lines" of relevant information.  (*Id.* at 3-4.)  Plaintiffs have already addressed Defendants' unpersuasive "collusion" argument, including Morgan Stanley's own counsel admitting that ISDAfix manipulation is at the "core" of Plaintiffs' case.  The very fact that no deck "contains an admission of misconduct of any kind by Morgan Stanley" is one way in which they are relevant—they contain a Defendant's defense to an adversary.  Finally, neither the Federal Rules nor any court has adopted a "few lines" test allowing the withholding of documents because only a "few lines" are relevant.  It also undermines the credibility of Morgan Stanley's claim that the decks contain "nothing" more than "business records" produced to the CFTC.

**UBS:**  UBS admits it has a responsive PowerPoint presentation that "addresses issues underlying the CFTC's CEA investigation" into "unilateral manipulation."  (*Id.* at 4-5.)  UBS merely repeats Defendants' general argument that the presentation is not relevant to "collusion-based claims," which has been thoroughly addressed by Plaintiffs.  UBS fails to provide any other specific information about this presentation and, thus, its relevance must be presumed.

## II.     Defendants Still Do Not Support Their Claim to Work Product Protection

Defendants have not met their burden to show that these presentations to an adversary are work product.  (Dkt. 338 at 2-3 (citing cases); *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224–25 (2d Cir. 1984) ("It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, ... a burden not discharged by mere conclusory or ipse dixit assertions."))  Other than simply stating that it is "classic" attorney work product, Defendants have not provided any authority to support their claim that presentations made to persuade an adversary are work product.  Also, despite the Court's express suggestion (Dkt. 306 at 13), Defendants have not provided any privilege logs to support their claim.  For this reason alone, Defendants' claim should be rejected.  *See In re Chevron Corp.,* 749 F. Supp. 2d 170, 182 (S.D.N.Y. 2010) ("any claims of privilege with respect to the documents sought by the subpoena were waived" where a party failed to produce a log for months, even after moving to quash based on claimed privilege), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010).

### III.     Defendants Waived All Applicable Work Product Protection

Defendants have failed to meet their burden to show that work product protection has not been waived.  *See Montesa v. Schwartz*, 2016 WL 3476431, *7 (S.D.N.Y. June 20, 2016) (party asserting work product "has the burden of establishing non-waiver of the privilege").  Because Defendants concede that the materials at issue were voluntarily presented to adversaries, any work product protection these documents may have had was waived.  *See, e.g.*, *In re Steinhardt Partners, L.P.*, 9 F.3d 230 (2d Cir. 1993) (voluntary sharing of legal memorandum to SEC with whom trader stood in adversarial position waived work product protections); *In re Amex Anti-Steering Rules Antitrust Litig. (No II)*, 2012 WL 2885367, *2 (E.D.N.Y. July 13, 2012) ("The production to the government of documents generated by counsel *during* a government investigation, with the specific intent to dissuade the government from bringing suit, is inconsistent with the purposes behind the attorney work product doctrine.").

Despite seeking the Court's indulgence to provide supplemental briefing, Defendants offer only two new cases.  One is a New York state case which has no applicability to the question of attorney work product under federal law.  *See Travelers Property Cas. Co. of Am., LLC v. Daimler Trucks N. Am.*, 2015 WL 1728682, *2 (S.D.N.Y. Apr. 14, 2015) ("Federal law governs the applicability of the work product doctrine[.]"); *AIU Ins. Co. v. TIG Ins. Co.*, 2008 WL 4067437, *7 (S.D.N.Y. Aug. 28, 2008) (same).  The second is a long-since rejected view from 1954 that work product is not necessarily waived by disclosure to a third party.  *Connecticut Mut. Life Ins Co v. Shields*, 16 F.R.D. 5, 7-8 (S.D.N.Y. 1954).  Recent decisions, by contrast, find waiver after disclosure, including based on oral presentations.  *See, e.g.*, *SEC v. Vitesse Semiconductor Corp.*, 2011 WL 2899082, *3 (S.D.N.Y. July 14, 2011) (work product protection over underlying notes waived where party gave oral summary to the SEC).  For the reasons set forth in *Steinhardt* and its progeny, any protection was waived here.

### IV.     Defendants Have Failed to Establish Any Actual Agreement That Could Even Potentially Preserve Work-Product Protection

Defendants attempt to rely on purported confidentiality agreements with the CFTC as a means to avoid waiver of the claimed work product.  As this Court has held, "courts in this District have divided over what weight, if any, to give the existence of such confidentiality agreements." (Dkt. 306 at 11.)  However, to even possibly prevent waiver, it must be an "explicit agreement" and Defendants must describe such an agreement with specificity.  *See Steinhardt*, 9 F.3d at 236; *Gruss v. Zwirn*, 2013 WL 3481350, *8, *11 (S.D.N.Y. July 10, 2013) (refusing to defer to vague assertions of an agreement, summarizing the rationales for rejecting selective waiver, and finding a purported agreement in fact "illusory").  Indeed, this Court previously held that "whether and to what extent documents may be protected from production may ultimately turn on the particulars of Defendants' agreements with the CFTC, which do not appear to be part of the current record." (Dkt. 306 at 14.)  Even in a case cited by Defendants, *In re Natural Gas Commodity Litigation*, 2005 WL 1457666 (S.D.N.Y. June 21, 2005), there were "explicit written confidentiality and non waiver agreements" and the defendants and the CFTC had formally memorialized the agreements in letters.  *Id.* at *2-4, *8.

Defendants' supplemental letter confirms that there were no explicit agreements:

- **BNP** vaguely asserts that "the CFTC orally agreed" to maintain confidentiality, but provides no other information as to who entered into this oral agreement, when it was entered into, or what its contours were. (Dkt. 349 at 2.) Unlike other cases finding non-waiver, there was no written agreement.

- **ICAP** attempts to invoke its own "understanding" that its materials would be kept confidential as well as its own unilateral "claim" to protection under FOIA. (*Id.* at 3.) ICAP cites no case for the absurd notion that it can turn its own "understanding" and unilateral "claim" into an agreement with the CFTC. In *Steinhardt*, the Second Circuit ordered production even though "a notice reading 'FOIA Confidential Treatment Requested' appeared on the document." 9 F.3d at 232.

- **Morgan Stanley** only states that the materials were given "with an explicit request for confidential treatment," and further to an "understanding" that it would be confidential. (Dkt. 349 at 4.) Morgan Stanley provides no authority for the notion that its own "understanding" or "request" constitutes an "explicit agreement" with the CFTC.

- **UBS** tacitly concedes that there was no agreement, only stating that UBS itself "worked hard to protect" the confidentiality of these presentations. (*Id.* at 5.)

In sum, no written agreements that might have even possibly preserved protection exist, and Defendants' assertions lack the most basic factual information necessary to support non-waiver.

### V. <u>Defendants Have Failed to Establish Any Other Reason to Disregard the Second Circuit's *Steinhardt* Holding and Preserve Work Product Protection</u>

The Court's November 16 opinion suggested that "the propriety of withholding production may well turn on the particulars of the documents at issue[.]" (Dkt. 306 at 13.) Here, the particulars of the documents clearly support a finding of waiver. Unlike *Natural Gas*—where, in addition to the defendants having explicit written confidentiality agreements, the district court also considered the plaintiffs' ability to replicate the requested analyses as a secondary factor—Plaintiffs cannot reconstruct these documents. 2005 WL 1457666, *8. Defendants' representations and defenses to the CFTC can only be found in these presentations. Moreover, unlike the *Natural Gas* defendants who were asked to produce an *internal* attorney-client memorandum, Defendants made a conscious decision to create this material *specifically for their adversary*. The same was true in *Steinhardt* where counsel prepared a memorandum specifically for the SEC that addressed "the facts and issues involved in the case and discuss[ed] the relevant legal theories." *Steinhardt*, 9 F.3d at 232. Nowhere in *Steinhardt* did the Second Circuit set forth any distinction between "fact" or "opinion" work product when a party waives protection by sharing them. *Accord In re Martin Marietta Corp.*, 856 F.2d 619, 624 (4th Cir. 1988) (defendant conceded that it waived protection over "those work-product materials [it] actually disclosed," including opinion work product such as a position paper to the USAO). In this precise situation, the Second Circuit simply ordered production.

Accordingly, for the reasons set forth above, Plaintiffs respectfully request an order compelling production of the requested materials.

Respectfully submitted,

| */s/ David W. Mitchell* | */s/ Daniel L. Brockett* | */s/ Christopher M. Burke* |
|---|---|---|
| David W. Mitchell | Daniel L. Brockett | Christopher M. Burke |
| **Robbins Geller Rudman & Dowd LLP** | **Quinn Emanuel Urquhart & Sullivan, LLP** | **Scott+Scott, Attorneys At Law, LLP** |