UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                      :

ALASKA ELECTRICAL PENSION FUND, et al.,     :

                      Plaintiffs,          :               14-CV-7126 (JMF)
                                       :

             -v-                 :         MEMORANDUM OPINION
                                     :           AND ORDER

BANK OF AMERICA CORPORATION, et al.,      :

                  Defendants.        :

                                       :
-----------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  01/20/2017

JESSE M. FURMAN, United States District Judge:

        In this putative class action, familiarity with which is assumed, several institutional

investors allege that Defendants, some of the world's largest banks, illegally manipulated the

U.S. Dollar ISDAfix ("ISDAfix"), a benchmark interest rate incorporated into a broad range of

financial derivatives.  A few months ago, Plaintiffs moved to compel production of documents

relating to various regulatory investigations of Defendants' conduct with respect to ISDAfix.  In

an Opinion and Order entered on November 16, 2016, the Court concluded that Plaintiffs'

requests were overbroad and encompassed materials that were plainly irrelevant.  *See Alaska*

*Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2016 WL 6779901 (S.D.N.Y.

Nov. 16, 2016) (Docket No. 306).  Accordingly, the Court denied the motion to compel, "albeit

without prejudice to renewal in the event that Defendants refuse to comply with narrower, more

proper discovery requests."  *Id.* at *7.  Thereafter, Plaintiffs narrowed their requests "to a

targeted subset of regulatory materials, including white papers, presentations, written

memoranda, or briefs shown or provided to the [Commodity Futures Trading Commission

('CFTC')] or the [Department of Justice ('DOJ')] about ISDAfix manipulation."  (Docket No.

338 ("Pls.' Letter Motion"), at 1).  They now seek to compel production of those materials from four Defendants: BNP Paribas ("BNPP"), ICAP Capital Markets LLC ("ICAP"), UBS AG ("UBS"), and Morgan Stanley.  (*Id.*).

Upon review of the parties' submissions (Docket Nos. 338, 343, 349, and 351), Plaintiffs' new motion to compel is GRANTED, substantially for the reasons set forth in Plaintiff's letter briefs.  First, Plaintiffs' narrower requests meet the relevance and proportionality standards discussed in the Court's prior Opinion.  *See* 2016 WL 6779901, at *2-4.  To be sure, "there are some notable distinctions between the CFTC's investigation and the instant action," including the fact that "the CFTC was conducting an investigation of alleged violations of the Commodities Exchange Act (the 'CEA'), not the Sherman Act."  *Id.* at *2.  But, whereas Plaintiffs' initial production request was "vast" and plainly encompassed large swathes of irrelevant material (including, for example, administrative and scheduling correspondence), *see id.* at *2-4, the materials sought here are more limited and relate directly to manipulation of ISDAfix and the process by which the ISDAfix rate was set.  Differences between the government investigations and this case aside, those materials are indisputably "relevant" insofar as "relevance, for purposes of discovery, is an extremely broad concept."  *Id.* at *2 (internal quotation marks omitted).  And while Plaintiff's initial requests were overbroad and burdensome, *see id.* at *3-4, their instant, more tailored requests — for a relatively limited set of documents (*see* Docket No. 349 ("Defs.' Supp. Letter"), at 1-4) — are not.  Notably, Defendants themselves do not really attempt to argue otherwise.

Defendants are on somewhat firmer ground in resisting disclosure based on the work-product doctrine (Docket No. 343 ("Defs.' Opp'n"), at 3; Defs.' Supp. Letter 2-5), but the Court

concludes that they have waived such protection.  It is well established that "voluntary disclosure of work product to an adversary waives the privilege as to other parties."  *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993).  As the Court noted in its prior Opinion, however, the Second Circuit has declined "to adopt a *per se* rule that all voluntary disclosures to the government waive work product protection," noting in *Steinhardt* — albeit in *dictum* — that "a rigid rule would fail to anticipate . . . situations in which [a government agency] and the disclosing party have entered into an explicit agreement that the [the agency] will maintain the confidentiality of the disclosed materials."  *Id.* at 236.  In its prior Opinion, the Court observed that other courts in this District "have divided over what weight, if any, to give the existence of such confidentiality agreements," 2016 WL 6779901, at *4 (citing cases), but ultimately expressed "approval" of the approach taken in *In re Natural Gas Commodity Litigation*, No. 03-CV-6186 (VM) (AJP), 2005 WL 1457666 (S.D.N.Y. June 21, 2005), in which Chief Magistrate Judge Peck held that the existence of "explicit written confidentiality and non-waiver agreements with the government agencies" went "a long way to a finding of non-waiver."  *Id.* at *8.

Upon reflection and closer examination, the Court is skeptical of the proposition that waiver can be avoided by agreement with a government agency, for the cogent reasons explained by Judge Gardephe in *Gruss v. Zwirn*, 09-CV-6441 (PGG) (MHD), 2013 WL 3481350, at *5-13 (S.D.N.Y. July 10, 2013), and former Judge Scheindlin in *In re Initial Pub. Offering Sec. Litig.*, 249 F.R.D. 457, 461-67 (S.D.N.Y. 2008).  But the Court need not decide categorically whether confidentiality agreements can ever protect work product that is shared voluntarily with a government agency because, at most, they are "just one of several factors to be considered," and they are not enough to carry the day here.  *Id.* at 462; *accord Nat. Gas Commodity Litig.*, 2005

3

WL 1457666, at *8 (noting the need for courts to "examine other relevant factors" even when an agreement exists). First, the materials at issue here were "generated by counsel *during* a government investigation, with the specific intent to dissuade the government from bringing suit." *In re Am. Express Anti-Steering Rules Antitrust Litig. (No II)*, No. 11-MD-2221 (NGG) (RER), 2012 WL 2885367, *2 (E.D.N.Y. July 13, 2012). Voluntary production of such materials to the government "is inconsistent with the purposes behind the attorney work product doctrine." *Id.*; *see also Steinhardt*, 9 F.3d at 235 ("[S]elective assertion of privilege should not be merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage."); *cf. Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981) ("[A] client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit .").

Second, three of the four Defendants opposing Plaintiffs' requests do not even appear to have "entered into an explicit agreement that the [the agency] will maintain the confidentiality of the disclosed materials." *Steinhardt*, 9 F.3d at 236. ICAP cites only its own "understanding" that its materials would be kept confidential (Defs.' Supp. Letter 3); Morgan Stanley states only that it provided materials to the government with "an explicit *request* for confidential treatment" (*id.* at 4 (emphasis added)); and UBS says only that it "worked hard to protect" confidentiality. (*Id.* at 5). It goes without saying that an "explicit *agreement*" requires a meeting of two or more minds; a unilateral "understanding" or reservation of rights does not suffice. BNPP is the one Defendant that asserts the existence of an agreement, but it says only — and in an unsworn letter no less — that "the CFTC orally agreed, as a condition of BNPP's providing information for the

purposes of its investigation, that the CFTC would maintain the content of the presentations in confidence in order to preserve, and not waive, BNPP's work product protection." (*Id.* at 2). It provides no proof of such an agreement, *cf. Maruzen Co. v. HSBC USA, Inc.*, 00-CV-1079, 2002 WL 1628782, at *1-2 (S.D.N.Y. July 23, 2002) (relying on a declaration submitted by the defendants showing that they "had confidentiality agreements with the various authorities"), and fails to provide the particulars of the alleged agreement — despite the Court's prior warning that "whether and to what extent documents may be protected from production may ultimately turn on the *particulars* of Defendants' agreements with the CFTC."  2016 WL 6779901, at *5 (emphasis added).

     *Natural Gas Commodity Litigation*, which this Court previously cited with approval, does not call for a different result.  Magistrate Judge Peck cited two factors in upholding the work-product protection in that case.  First, he concluded that the existence of "explicit written confidentiality and non-waiver agreements with the government agencies," under *Steinhardt*, went "a long way to a finding of non-waiver."  2005 WL 1457666, at *8.  Upon reflection, the Court believes that conclusion reads too much into *Steinhardt*, which did not reach the question of whether or when an explicit agreement protects against waiver, but in any event, as noted above, there is no evidence of such written agreements in this case.  Second, Magistrate Judge Peck noted that the defendants had "produced to plaintiffs in this litigation the factual documents underlying the work product analyses provided to the government agencies" and that the plaintiffs could therefore "perform their own analyses of the trading data."  *Id.*  Upon reflection, however, that consideration is relevant to the issues of need, *see* Fed. R. Civ. P. 26(b)(3), and, perhaps, proportionality, but it is not relevant to the question of *waiver*.  And, in any event,

Defendants fail to establish that the materials at issue here are of a similar nature — that is, akin to internal analyses of data already provided to Plaintiffs and, thus, analyses that Plaintiffs could either conduct themselves or obtain through expert discovery.  Instead, the materials at issue appear to be advocacy materials produced by counsel in an effort to dissuade the government from bringing suit; it goes without saying that, even with the underlying data, Plaintiffs cannot know, let alone reconstruct on their own, what Defendants said in those materials.

Finally, there is no merit to UBS's creative suggestion that waiver of the work-product doctrine does not apply where materials are merely shown, and not physically provided, to a government agency.  (Defs.' Supp. Letter 4-5).  In support of that assertion, UBS cites only two cases, one of which is a lower court New York state case and the other of which was decided in 1954.  (*See id.* at 5 (citing *Charter One Bank, F.S.B. v. Midtown Rochester, L.L.C.*, 738 N.Y.S.2d 179, 186 (Sup. Ct. 2002), and *Connecticut Mut. Life Ins. Co. v. Shields*, 16 F.R.D. 5, 7 (S.D.N.Y. 1954))).  But federal law, not state law, "governs the applicability of the work product doctrine." *Travelers Property Cas. Co. of Am., LLC v. Daimler Trucks N. Am.*, No. 14-CV-1889 (JPO) (JLC), 2015 WL 1728682, *2 (S.D.N.Y. Apr. 14, 2015); *accord AIU Ins. Co. v. TIG Ins. Co.*, No. 07-CV-7052 (SHS) (HBP), 2008 WL 4067437, *7 (S.D.N.Y. Aug. 28, 2008).  And neither logic nor modern federal case law (including the Second Circuit's decision in *Steinhardt*) supports that proposition.  *See, e.g.*, *SEC v. Vitesse Semiconductor Corp.*, No. 10-CV-9239 (JSR), 2011 WL 2899082, at *3 (S.D.N.Y. July 14, 2011) (holding that work-product protection over counsel's underlying notes was waived where the party had given an oral summary of the notes to the Securities and Exchange Commission); *United States v. Treacy*, No. 08-CR-366 (JSR), 2009 WL 812033, at *1-2 (S.D.N.Y. Mar. 24, 2009) (requiring production of attorney

interview memoranda produced to the government or conveyed in detailed oral presentations);

*Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 174 (S.D.N.Y. 2002) ("Because all of

the information . . . was made available in an oral presentation to the governmental authorities, it

is only fair to allow [the plaintiff] to examine the facts that were in [the defendant's] possession

at that time."); *see also Steinhardt*, 9 F.3d at 235 ("Once a party allows an adversary to share the

otherwise privileged thought processes of counsel, the need for the privilege disappears.").

      For the reasons stated above, the Court concludes that Defendants have waived work-

product protection and must therefore turn over the more "targeted" set of materials within the

scope of Plaintiffs' revised request.[1]  Accordingly, Plaintiffs' motion to compel is GRANTED,

and Defendants are ordered to produce the relevant materials **within one week of this**

**Memorandum Opinion and Order**.

      The Clerk of Court is directed to terminate Docket No. 338.


      SO ORDERED.

Dated: January 20, 2017
      New York, New York

JESSE M. FURMAN
United States District Judge

---

[1]    In its earlier Opinion, the Court also discussed potential "statutory privileges" that might be implicated by Plaintiffs' earlier request.  *See* 2016 WL 6779901, at *5-6.  Defendants do not invoke any such privilege here, so that that discussion is irrelevant.