UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                            :
ALASKA ELECTRICAL PENSION FUND et al.,                      :
                                                            :
                         Plaintiffs,                        :      14-CV-7126 (JMF)
                                                            :
         -v-                                                :      MEMORANDUM OPINION
                                                            :            AND ORDER
BANK OF AMERICA CORPORATION et al.,                         :
                                                            :
                         Defendants.                        :
                                                            :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

In this long-running and complex antitrust class action, familiarity with which is presumed, the Court previously granted final approval to settlements against all fifteen Defendants, including fourteen of the world's largest banks, totaling $504.5 million. (Docket No. 738; Docket No. 682 ("Joint Decl.") ¶ 3). Lead counsel for the class now move for attorneys' fees in the amount of $143,782,500, or 28.5% of the *gross* settlement fund; expenses; and incentive awards for the named Plaintiffs. (Docket No. 697).[1] For the reasons that follow, the Court grants lead counsel's motion, but awards them fees totaling 26% of the *net* settlement fund, or $126,378,281.22 in total.

In a "common fund" case such as this, the Court may award class counsel a percentage of the settlement fund as a reasonable attorneys' fee. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); Fed. R. Civ. P. 23(h). As lead counsel acknowledged at the

---

[1] Lead counsel originally requested 30%, but lowered their request to 28.5% in the face of an objection to the fee motion. (Docket No. 734). The objector later moved to withdraw his objection. (*Id.*). Pursuant to Rule 23(e)(5) of the Federal Rules of Civil Procedure, the Court approves withdrawal of that objection.

fairness hearing held on the record on November 8, 2018 (Fairness Hearing Tr. 20), the Court has "very broad discretion . . . in determining a reasonable fee." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 57 (2d Cir. 2000). In assessing what constitutes a reasonable fee, courts typically consider the "*Goldberger* factors," which include "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Wal-Mart Stores*, 396 F.3d at 121 (citing *Goldberger*, 209 F.3d at 50).

Many of those factors support a finding that the fee requested here is reasonable. First, counsel devoted almost four years and over 158,000 billable hours to the prosecution of this case. (Joint Decl. ¶ 6). Second, the magnitude and complexity of the litigation cannot be overstated; the case was one of the most complicated — if not the most complicated — that this Court has handled, in terms of both the underlying subject matter (the manipulation of abstruse benchmark rates for complex financial instruments) and the novel legal issues (amenability to class treatment and modeling damages, to name but two) raised by the Plaintiffs' claims. Third, as the Court noted in approving the settlements, the risk involved — which "must be measured as of when the case is filed," *Goldberger*, 209 F.3d at 55 — was "considerable," and "exacerbated by the complexity of the sophisticated financial instruments involved in this case, the nature and size of the derivatives market, and the number and resources of the defendants." (Docket No. 661, at 27). Fourth, the quality of representation, "best measured by results," *Goldberger*, 209 F.3d at 55, was exceptional, as counsel obtained over half a billion dollars for the class — by counsel's calculation, between 35% and 73% of their expected trial demand. (Joint Decl. ¶ 3). And last, public policy favors rewarding the successful prosecution of antitrust claims. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 487-88 (S.D.N.Y.

1998) ("Meritorious class actions . . . promote private enforcement of, and compliance with, the antitrust laws.").

The size of "the requested fee in relation to the settlement," however, gives the Court pause. *Wal-Mart Stores*, 396 F.3d at 121; *see In re FOREX Benchmark Rates Antitrust Litig.*, No. 13 CIV. 7789 (LGS), 2018 WL 5839691, at *2 (S.D.N.Y. Nov. 8, 2018) ("In using the percentage of the fund approach, the critical *Goldberger* factor is necessarily the size of the request fee in relation to the settlement."). As a threshold matter, the Court is reluctant even to begin its analysis with lead counsel's proposed figure, as it is well established that an initial numerical reference, whether or not it is reasonable, can have an "anchoring" effect on a person's subsequent judgments. *See* DANIEL KAHNEMAN, THINKING, FAST AND SLOW 120 (2013 ed.) ("Any number that you are asked to consider as a possible solution . . . will induce an anchoring effect."); *United States v. Ingram*, 721 F.3d 35, 40 (2d Cir. 2013) (Calabresi, J., concurring) ("When people are given an initial numerical reference, even one they know is random, they tend (perhaps unwittingly) to 'anchor' their subsequent judgments — as to someone's age, a house's worth, how many cans of soup to buy, or even what sentence a defendant deserves — to the initial number given."); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) ("Although any proffered number will have a psychological anchoring effect, counsel's self-interested proposal should not be the analytical starting point to determine the fee award. . . . [T]he process should not be for class counsel to propose a dollar amount, and then for the court to pronounce it reasonable or not, and if the latter, chip away at the number based on the *Goldberger* factors.").

Instead, to determine what an appropriate range of fees in relation to this settlement might be, the Court begins not with lead counsel's proposal, but by assessing the percentages

3

awarded to class counsel in comparable cases in this market. Lead counsel identify forty antitrust cases between 2004 and 2018 in which the class recovered more than $100 million. (*See* Joint Decl. Ex. 1). That list does not include another megafund antitrust action — with claims much like those here, involving alleged manipulations of benchmark rates — in which fees were recently awarded. *See In re FOREX Benchmark Rates Antitrust Litig.*, 2018 WL 5839691, at *5 (awarding 13% of a $2.3 billion fund).[2] Of those forty-one cases, twelve are from district courts in this Circuit. The mean and median percentage awarded to class counsel in those eleven cases were 17.9% and 19.25%, respectively. In three-quarters of the cases, the percentage awarded fell between roughly 13% and 25%. (Joint Decl. Ex. 1).[3]

Those numbers accord with empirical data — including data from a study conducted by lead counsel's own expert, Professor Brian Fitzpatrick — demonstrating that, as class action settlements grow in size, the percentage awarded to class counsel in fees drops significantly below the going rate for contingency-fee work in the private market. (*See* Docket No. 698 ("Fitzpatrick Decl.") ¶ 18).[4] Most significant for this Court's purposes, the Second Circuit itself

---

[2] Counsel's list may not be comprehensive, as it appears to omit some other cases that meet their purported criteria. *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110 (S.D.N.Y. 2009) (awarding 15.25% of a $336 million settlement fund). But the list of forty-one cases is sufficiently large to provide the Court with a helpful benchmark.

[3] Outside this range are two cases in which very small percentages of multi-billion dollar funds were awarded, *see In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437 (E.D.N.Y. 2014) (awarding 9.56% of a $5.7 billion fund); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003) (awarding 6.51% of a $3.38 billion fund), and one case in which a court awarded 33.33% of a $220 million fund, *see In re Buspirone Antitrust Litig.*, No. 1:01-cv-07951 (JGK) (S.D.N.Y. Apr. 11, 2003), ECF No. 22, at 5. The Court puts less weight on these outliers. Moreover, the *Buspirone Antitrust Litigation* Court does not appear to have issued a written opinion explaining its fee award.

[4] *See also* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 837-39 (2010) (finding that "fee percentage is strongly and inversely associated with settlement size" and that the mean and median

4

has endorsed a sliding-scale approach, noting that, in cases with larger settlements, "courts have traditionally awarded fees . . . in the lower range of what is reasonable" because "economies of scale could cause windfalls." *Wal-Mart Stores*, 396 F.3d at 122-23 ("[T]he sheer size of the instant fund ma[de] a smaller percentage appropriate."); *see also Goldberger*, 209 F.3d at 52 ("[E]mpirical analyses demonstrate that in cases like this one, with recoveries of between $50 and $75 million, courts have traditionally accounted for these economies of scale by awarding fees in the lower range of about 11% to 19%.").

It is true that lead counsel point to cases (some of which involved antitrust claims) in which a reviewing court found a fee of 30% or more to be reasonable. (Docket No. 697, at 18-19). But the sheer volume of federal court class action settlements means that isolated string cites to cases in which class counsel received a higher percentage of the settlement are not particularly meaningful. *See Rudman v. CHC Grp. Ltd.*, No. 15-CV-3773 (LAK), 2018 WL 3594828, at *6 (S.D.N.Y. July 24, 2018) ("Given the volume of . . . cases, even a list of 50 examples could present a distorted picture of what is 'reasonable.'"). Equally unavailing is lead counsel's claim that, for antitrust class action funds between $500 million and $1 billion, the average fee percentage is 28.82%. (Joint Decl. Ex. 1). That figure is based on only six cases, none of which was from this Circuit. Instead, given the fee awards in the cases cited by lead counsel; the subset of those cases arising in the Second Circuit; the scholarly consensus about declining awards in larger cases; and the Second Circuit's imprimatur on awarding lower fees in

---

percentages awarded for cases in his dataset larger than $72.5 million were 18.4% and 19%); WILLIAM B. RUBINSTEIN, 5 NEWBERG ON CLASS ACTIONS § 15:81 (5th ed. 2018) (summarizing a study finding an average award of 20.9% of the settlement fund for funds greater than $44.25 million).

large cases, *see Wal-Mart Stores*, 396 F.3d at 122-23, the Court concludes that a reasonable fee in this case would fall somewhere between 15% and 25% of the settlement fund.[5]

In light of the *Goldberger* factors that weigh in favor of a substantial fee award, discussed above, the Court exercises its "very broad discretion," *Goldberger*, 209 F.3d at 57, to conclude that a fee award at the high end of that range is appropriate here. In fact, given the extraordinary complexity of this case and the sheer amount of work that counsel did in obtaining substantial relief on behalf of the class, the Court concludes that a fee award of 26% — just *above* the range — would be reasonable. Exercising its conceded discretion, however, the Court concludes that counsel's fees should be calculated as a percentage of the fund *after* deduction of expenses. (*See* Fairness Hearing Tr. 15 (lead counsel conceding that the Court has discretion to use either the gross settlement fund or the net settlement fund to calculate counsel's fees)). Given the size of the fund and the amount of expenses, the Court agrees, at least in the circumstances of this case, with those courts that have held that using the net settlement fund to calculate counsel's fees is appropriate because it (1) incentivizes counsel to keep costs down, *see In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 CIV. 5450, 2018 WL 3863445, at *4 (S.D.N.Y. Aug. 14, 2018) ("[A]warding fees as a percentage of net recovery is more consistent with notions of public policy in that doing so encourages class counsel's prudence and discretion in incurring expenses — expenses that may not be as closely scrutinized given that there is no single client

---

[5] Notwithstanding his empirical findings, Professor Fitzpatrick criticizes the purported trend of courts "slash[ing]" fees "simply because settlements are large," arguing that it produces disincentives for attorneys to take on these types of cases. (Fitzpatrick Decl. ¶ 19). The impetus for reducing awards in these cases, however, is not a mechanical aversion to large numbers, but rather a "recogni[tion] that economies of scale could cause windfalls," which is to say, *unreasonable* fee awards. *Wal-Mart Stores*, 396 F.3d at 122; *see also id.* ("[T]he district court's decision in favor of protecting the instant class from an excessive fee award militates against awarding attorneys' fees based purely on economic incentives.").

footing the bill."); and (2) avoids the strangeness of "award[ing] a percentage of [counsel's] expenses in addition to . . . reimburs[ing them] for those reasonable expenses," *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 514 (S.D.N.Y. 2009).

Here, lead counsel seeks reimbursement of expenses in the amount of $18,429,687.63. (Joint Decl. ¶¶ 7, 128-32). The Court finds that that amount, although sizeable, was reasonable and necessary given the nature and complexity of this case. *See, e.g.*, *Penn. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 27 (S.D.N.Y. 2016) ("When the lion's share of expenses reflects the typical costs of complex litigation such as experts and consultants, trial consultants, litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses, courts should not depart from the common practice in this Circuit of granting expense requests." (internal quotation marks omitted)). Subtracting that amount from the gross settlement fund of $504.5 million yields a net settlement fund of $486,070,312.37. Twenty-six percent of that is $126,378,281.22. That constitutes roughly 1.41 times lead counsel's lodestar over the life of the case. (Joint Decl. ¶ 6). *See Wal-Mart Stores*, 396 F.3d at 123 (describing the lodestar "cross-check"). Such a multiplier does not suggest that the "otherwise reasonable percentage fee" here will result in a windfall. *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 353; *see also Sullivan v. Barclays PLC*, No. 1:13-cv-02811-PKC (S.D.N.Y. May 18, 2018), ECF No. 425, at 2 (awarding fees constituting a multiplier of 1.36 of counsel's lodestar in a $309 million antitrust class action settlement). And while the lodestar multiplier may be on the lower end of those in similar large antitrust class actions, (*see* Joint Decl. Ex. 1), "increasing the fee award percentage . . . just so the multiplier can be larger is not merited." *Carlson v. Xerox Corp.*, 596 F. Supp. 2d 400, 413 (D. Conn. 2009).

Finally, as noted, lead counsel seek incentive awards for the named Plaintiffs — specifically, $50,000 for six of them and $100,000 for two of them, in addition to reimbursement of out-of-pocket expenses for three of them. (*See* Docket No. 729 ¶¶ 10-17). Courts have granted incentive awards where particular plaintiffs have "dedicated 'hundreds of hours of time to the prosecution of these cases and responses to discovery,' provided the services of . . . senior executives[] and other employees during the litigation, investigated the claims . . . , and participated meaningfully in the negotiation of settlement." *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003)). Having reviewed the named Plaintiffs' declarations, the Court finds that they did just that here. (*See* Docket Nos. 706-14). The considerable effort expended by the named Plaintiffs to assist in the litigation renders the incentive awards requested by lead counsel appropriate. *See, e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 JG VVP, 2015 WL 5918273, at *5-*6 (E.D.N.Y. Oct. 9, 2015) (awarding $90,000 to six named plaintiffs who "expended a significant amount of time and incurred substantial burdens in assisting with [the]litigation"). Moreover, no one has objected to the awards, and in aggregate they amount to a minuscule portion of the settlement fund.

For the foregoing reasons, lead counsel's motion for fees, expenses, and incentive awards is GRANTED as modified. **No later than December 5, 2018**, lead counsel shall submit a proposed order consistent with this Memorandum Opinion and Order.

SO ORDERED.

Dated: November 29, 2018
      New York, New York

                                                    JESSE M. FURMAN
                                                    United States District Judge