UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALASKA ELECTRICAL PENSION FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA, N.A., et al., <br><br> Defendants. | No. 14-cv-7126 (JMF) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ENTRY OF AN
<u>ORDER APPROVING DISTRIBUTION OF THE NET SETTLEMENT FUNDS</u>**

**TABLE OF CONTENTS**

I. BACKGROUND ................................................................................................................. 1

II. CLAIMS ADMINISTRATION ........................................................................................ 3

    A. Claims Received Before or on October 31, 2018 ..................................................... 5

    B. Claims Received After October 31, 2018 and Before or on January 31, 2019 ....... 5

III. DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUNDS ................................. 5

IV. DISTRIBUTION STATISTICS ........................................................................................ 8

    A. Claims Statistics for Authorized Claimants Receiving a Payment from Both Settlement Funds .......................................................................................................... 9

        1. Total Class Size ................................................................................................ 9

        2. Number and Percentage of Class Members Filing Claims ...................... 10

        3. Breakout of Authorized Claims by Pool and Pool Sub-Group ................. 10

        4. Average Award Per Class Member ............................................................. 11

    B. Claims Statistics for Authorized Claimants Receiving a Payment from the Newly Approved Settlements Fund Only ........................................................................ 11

        1. Total Class Size .............................................................................................. 12

        2. Number and Percentage of Class Members Filing Claims ...................... 12

        3. Breakout of Authorized Claims by Pool and Pool Sub-group ................. 13

        4. Average Award Per Class Member ............................................................. 13

V. PAYMENT OF NOTICE AND ADMINISTRATION EXPENSES AND AMOUNT OF THE NET SETTLEMENT FUNDS ................................................................................. 13

VI. RELEASE OF CLAIMS ................................................................................................... 14

VII. CONCLUSION .................................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Glob. Crossing Secs. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................................5, 6

*In re Initial Pub. Offering Sec. Litig.*,
   No. 21 MC 92 (SAS), 2010 WL 2834894 (S.D.N.Y. July 7, 2010) .......................................10

*In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 WL 4526593 (S.D.N.Y. Dec. 20, 2007) ................................5

*In re Nasdaq Market-Makers Antitrust Litig.*,
   No. 94 Civ. 3996 RWS, 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000) ........................................6

Plaintiffs, by and through their Counsel, Quinn Emanuel Urquhart & Sullivan, LLP, Robbins Geller Rudman & Dowd LLP, and Scott+Scott Attorneys at Law LLP (collectively, "Class Counsel"), respectfully submit this Memorandum in support of their Motion for Entry of an Order Approving Distribution of the Net Settlement Funds (the "Distribution Order").

I.   BACKGROUND

On June 1, 2018, the Court granted final approval of the settlements between Plaintiffs and Defendants Bank of America, N.A.; Barclays Bank PLC and Barclays Capital Inc.; Citigroup Inc.; Credit Suisse AG, New York Branch; Deutsche Bank AG; The Goldman Sachs Group, Inc.; HSBC Bank USA, N.A.; JPMorgan Chase & Co.; Royal Bank of Scotland PLC.; and UBS AG.  (ECF Nos. 648-657.)  This first group of settlements is collectively referred to herein as the "Approved Settlements."   On November 13, 2018, the Court granted final approval to the settlements between Plaintiffs and Defendants BNP Paribas SA; ICAP Capital Markets LLC; Morgan Stanley & Co. LLC; Nomura Securities International Inc.; and Wells Fargo Bank, N.A. (ECF No. 738.)  This second group of settlements is referred to herein as the "Newly Approved Settlements."  The Approved Settlements and the Newly Approved Settlements are collectively referred to herein as the "Settlements."[1]

The Settlements resolved this matter in its entirety for total consideration of $504,500,000. The fund created by the Approved Settlements in the amount of $408,500,000 is referred to herein as the Approved Settlements Fund.  The fund created by the Newly Approved Settlements in the amount of $96,000,000 is referred to herein as the Newly Approved Settlements Fund.  The

---

[1]   Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulations and Agreements of Settlement with:  Bank of America, N.A; Barclays Bank PLC and Barclays Capital Inc.; BNP Paribas; Citigroup Inc.; Credit Suisse AG, New York Branch; Deutsche Bank AG; The Goldman Sachs Group, Inc.; HSBC Bank USA, N.A.; ICAP Capital Markets LLC; JPMorgan Chase & Co.; Morgan Stanley & Co. LLC.; Nomura Securities International, Inc.; The Royal Bank of Scotland PLC.; UBS AG; and Wells Fargo Bank, N.A.  (ECF Nos. 226-1 through 226-7, 331-1, 490-1 and 490-2, and 667-1.)

1

Approved Settlements Fund and the Newly Approved Settlements Fund are referred to herein collectively as the Settlement Funds (or Net Settlement Funds when describing the Settlement Funds after the deduction of all fees, costs, expenses, and taxes and the addition of all interest and dividends).

Pursuant to the Court's Orders authorizing Class notice, Epiq Systems, Inc. ("Epiq"), the Court-approved Claims Administrator (as well as Rust Consulting, Inc. and certain Defendants) mailed copies of the Mail Notices and Proof of Claim and Release Forms ("Claim Forms") (together, the "Notice Packets") to all Settlement Class Members in the Settlements who could be identified through reasonable effort.[2]  Epiq also caused, pursuant to the Court's Orders, the Publication Notices to be published in numerous publications including *The Wall Street Journal*, *Financial Times*, *The New York Times*, *The Daily Telegraph*, *South China Morning Post*, *The Straits Times*, and *Risk Magazine*.  See Azari Decls. (ECF No. 611), ¶¶39-42 and (ECF No. 683), ¶¶22-25.  The Publication Notices were also issued as global press releases through *PR Newswire's* World Financial Markets newsline.  *Id*., ¶46 and ¶29.  In addition, the Notices, Claim Forms, Settlement Agreements, Preliminary Approval Orders, translations of the Notice Packets, and other important case documents were posted on the Settlement Website, https://www.isdafixantitrustsettlement.com, which Epiq maintained in order to enable Settlement

---

[2]   *See* Lee Decl. (ECF No. 603), ¶2; Deering Decl. (ECF No. 604), ¶¶5–6; Leuzinger Decl. (ECF No. 605), ¶5; Ng Decl. (ECF No. 606), ¶5; Popowski Decl. (ECF No. 607), ¶¶7–8; Rabe Decl. (ECF No. 608), ¶¶10–11; Gomez Decl. (ECF No. 609), ¶6; Adams Decl. (ECF No. 610), ¶¶3–4; Azari Decl. (ECF No. 611), ¶¶34–38; Ivie Decl. (ECF No. 612), ¶¶4 and 7; Azari Supp. Decl. (ECF No. 628), ¶¶7-9; Rabe Supp. Decl. (ECF No. 629), ¶9; Leuzinger Supp. Decl. (ECF No. 630), ¶8; Lee Supp. Decl. (ECF No. 631), ¶3; Adams Supp. Decl. (ECF No. 632), ¶4; Ivie Supp. Decl. (ECF No. 633), ¶¶9-10; Popowski Supp. Decl. (ECF No. 634), ¶10; Azari Decl. (ECF No. 683), ¶¶17-21; Deering Decl. (ECF No. 685), ¶6; Gruber Decl. (ECF No. 686), ¶¶2-3; Ng Decl. (ECF No. 687), ¶7; Kelley Decl. (ECF No. 688), ¶¶3-4; Rabe Decl. (ECF No. 689), ¶¶8–9; Kovach Decl. (ECF No. 690), ¶6; Gomez Decl. (ECF No. 691), ¶¶8-9; Leuzinger Decl. (ECF No. 692), ¶7; Popowski Decl. (ECF No. 693), ¶¶7–8; Lee Decl. (ECF No. 694), ¶2; Adams Decl. (ECF No. 695), ¶¶2–4; Adams Supp. Decl. (ECF No. 720), ¶4; Kelley Supp. Decl. (ECF No. 721), ¶5; Rabe Supp. Decl. (ECF No. 722), ¶¶5–8; Azari Supp. Decl. (ECF No. 723), ¶¶10-11; Gruber Supp. Decl. (ECF No. 724), ¶2; Popowski Supp. Decl. (ECF No. 725), ¶10; and Sternberg Supp. Decl. (ECF No. 726), ¶¶8-9.

Class Members to access information about the case and the Settlements and to file Claims. *Id.*, ¶¶48-51 and ¶¶31-35.[3]

The Mail Notices and Publication Notices informed Settlement Class Members that if they wanted to participate in the Settlements, they were required to submit their Claim Forms either by mail or electronically on the online claims portal page of the settlement website. Azari Decl., Attachment 1 (ECF No. 611-1); and Azari Decl., Attachment 1 (ECF No. 683), ¶¶15-36.

The Effective Dates set forth in the Settlements have passed, and Epiq has completed the processing of all 31,119 Claims, 28,777 of which are proposed to be included in the Distribution Order (the "Distribution Claims"). Accordingly, the Net Settlement Funds may now be distributed to Authorized Claimants. Plaintiffs respectfully request the Court to enter the proposed Distribution Order, which will authorize Epiq to implement the Distribution Plans as fully set forth in the accompanying Declaration of Ricky Borges in Support of Plaintiffs' Motion for Entry of an Order Approving Distribution of the Net Settlement Funds (the "Borges Decl.").

## II.   CLAIMS ADMINISTRATION

As detailed in the accompanying Borges Declaration, the Claims Administrator received 31,119 Claims. Borges Decl., ¶30. Epiq determined that 28,777 are acceptable in whole or in part (*Id.*), and that 2,369 should be wholly rejected. *Id*.

Epiq sent a "Claim Deficiency Notice" to each Claimant whose Claim was determined to be partially or wholly deficient, advising the Claimant of the defect(s) and stating what was necessary to cure such defect(s). *Id.*, ¶19. Epiq carefully reviewed the responses to deficiency notices and worked with Claimants to resolve deficiencies where possible. *Id.*, ¶21.

---

[3] Epiq continues to maintain the website to enable Settlement Class Members to access current information about the case and the Settlements.

3

To Class Counsel's knowledge, with the exception of one Claimant, all Claimants' deficiencies have been resolved or the Claimant has accepted that its Claim, in whole or in part, was properly rejected. The exception Claimant will promptly be provided copies of this Motion and informed that it will need to file a timely opposition if it desires to continue to dispute the treatment proposed by Epiq. If the Claimant in question does so, or if the Court otherwise so directs, Class Counsel will provide additional details regarding this potential dispute.

Of the 31,119 Claims received, 3,856 were received after the claims-filing deadlines. Borges Decl., ¶24. Epiq has processed all late Claim Forms, and determined that 3,725 of the late Claims are otherwise eligible (collectively, "Late, But Otherwise Eligible Claims.") *Id.*, Ex. B.

The Stipulations expressly contemplate that under certain circumstances, Class Counsel may extend the deadline for Class Members to submit Claims to be potentially eligible to participate in the Settlements.[4] In the interest of maximizing Class participation in the Settlements, Class Counsel authorized Epiq to accept late filings for certain of the Late, But Otherwise Eligible Claims that did not materially delay distribution of the Net Settlement Funds. *Id.*, ¶24.

Plaintiffs request that the Court approve Epiq's administrative determinations accepting Claims and rejecting Claims as set forth in Exhibits A, B, and C to the Borges Declaration. *See* Distribution Order, ¶3(a)-(b). Plaintiffs further request that the Court approve Epiq's administrative determinations that some of the Claims set forth in Exhibits A and B should be only partially accepted and/or be subjected to reclassification between Pools and Pool sub-groups.

---

[4]  *See, e.g.*, Stipulation and Agreement of Settlement with Bank of America, N.A., ECF No. 222-1, ¶8.7 ("Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted claims for processing by the Claims Administrator, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby."); *see also*, *e.g.*, Order Providing for Notice to the Settlement Class and Preliminarily Approving the Plan of Distribution, ECF No. 521, ¶12 ("Class Counsel shall have the discretion, but not the obligation, to accept late-submitted Claim Forms for processing by the Claims Administrator, so long as distribution of the proceeds of the Settlement Fund is not materially delayed.").

4

A.      **Claims Received Before or on October 31, 2018**

Claims that were submitted to, processed, and found to be eligible by Epiq (the "Authorized Claims") that were received prior to or on the October 31, 2018 claims-filing deadline in the Approved Settlements will receive a distribution from both Net Settlement Funds. Epiq has determined there will be 24,525 Authorized Claims receiving payment from both Net Settlement Funds. Borges Decl., ¶31.

B.      **Claims Received After October 31, 2018 and Before or on January 31, 2019**

Authorized Claims that were first received by Epiq after October 31, 2018 but before or on the January 31, 2019 claims-filing deadline in the Newly Approved Settlements will receive payment from the Newly Approved Settlements Fund only. Epiq has determined there will be 4,225 such Authorized Claims. *Id.*, ¶32.

III.    **DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUNDS**

Plaintiffs propose that an Initial Distribution be made, in which all Claimants receiving Alternative Minimum Payments are paid in full, and which Authorized Claimants receiving *pro rata* payments from the Net Settlement Funds receive 92% of their *pro rata* payment, creating an 8% reserve (the "Reserve"), as outlined below.

Based on Claims participation rates in the Settlement Funds, Epiq and Class Counsel propose that Authorized Claims equal to or less than $100 should receive an Alternative Minimum Payment of $100 in order to preserve the value of the Settlement Funds. *See In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 4526593, at *12 (S.D.N.Y. Dec. 20, 2007). As one Court has recognized:

> Claimants who are entitled to receive only small settlement amounts can impose additional costs on the settlement fund, because such persons are less likely to cash their checks than are those claimants who receive larger amounts. The claims administrator therefore must incur additional expenses in contacting claimants who have not cashed their checks and urging them to do so. If the checks remain

5

uncashed, the money must be reallocated to the other class members through second or third distributions, which create additional costs for the settlement fund.

*In re Glob. Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004). Alternative Minimum Payments at this dollar level will comprise $1,940,100 or 0.71% of the Net Approved Settlements Fund and $401,200 or 0.62% of the Net Newly Approved Settlements Fund.[5] *See In re Nasdaq Market-Makers Antitrust Litig.*, No. 94 Civ. 3996 RWS, 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) (approving $25 minimum payment that reallocated no "more than 1% to 2%" of the settlement fund).

As provided for in the Distribution Plans, certain Authorized Claimants will be paid an Alternative Minimum Payment of $100 so that the cost of administering relatively small Claims will not exceed the value of those Claims under the Distribution Plans. Authorized Claimants receiving the Alternative Minimum Payment will be paid in full in the Initial Distribution. Borges Decl., ¶35(b); Distribution Order, ¶3(d)(i).

After deducting the payments to Authorized Claimants receiving the Alternative Minimum Payment, 92% of the remaining balance of the Net Settlement Funds will be distributed *pro rata* to all other Authorized Claimants in accordance with those Claimants' ability to claim against the Approved Settlements Fund and Newly Approved Settlements Fund, described in Sections II.A and II.B, above. Borges Decl., ¶35(c); Distribution Order, ¶3(d)(i). Plaintiffs propose that Epiq will determine a distribution for each Authorized Claimant based on the Authorized Claimant's *pro rata* share of the Net Settlement Funds in accordance with the Court-approved Distribution

---

[5] In order to preserve the Net Settlement Funds from undue administration costs, 81%, or $1,940,100, of the pool of funds set aside for Alternative Minimum Payments is from the Net Approved Settlements Fund. 19%, or $401,200, of the pool of funds set aside for Alternative Minimum Payments is from the Net Newly Approved Settlements Fund. This distribution among the Net Settlement Funds was adopted in lieu of mailing separate checks from the separate Settlement Funds to Alternative Minimum Payment recipients, which would result in additional administration costs.

Plans (an Authorized Claimant's "Distribution Amount"). Borges Decl., ¶35(c); Distribution Order, ¶3(c).

The remaining 8% of payments will be held in reserve (the "Reserve") to address any contingencies that may arise with respect to claims after the Initial Distribution and/or to pay for any future fees or expenses incurred in connection with administering the Net Settlement Funds that are authorized by the Court, as well as any further escrow fees, taxes, and the costs of preparing appropriate tax returns. Borges Decl., ¶35(d); Distribution Order, ¶3(d)(iii).

In order to encourage Authorized Claimants to promptly deposit their distribution checks, and to avoid or reduce future expenses relating to unpaid distribution checks, all distribution checks will bear the notations, "***Please deposit this check promptly as it becomes void and subject to re-distribution if not negotiated within 90 days of the date of issue***" and "***Void and Subject to Re-Distribution if Not Deposited by [DATE 90 DAYS AFTER CHECK ISSUE DATE]***." Borges Decl., ¶37; Distribution Order, ¶3(e).

After Epiq has made reasonable and diligent efforts, described in detail in the Borges Declaration, to have Authorized Claimants negotiate their distribution payments from the Initial Distribution (s*ee* Borges Decl., ¶40; Distribution Order, ¶3(e)), Epiq shall, if Class Counsel, in consultation with Epiq determines that it is cost-effective to do so, conduct a second distribution (the "Second Distribution"). Borges Decl., ¶42; Distribution Order, ¶3(g). The Second Distribution would distribute any amount remaining in the Net Settlement Funds after the Initial Distribution (including the Reserve and any funds from void stale-dated, or returned checks, or failed wire transfers) and after deducting any further fees and expenses,[6] to all Authorized

---

[6] Further fees and expenses may include Epiq's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including estimated costs of such Second Distribution, subject to Court approval), as well as any further escrow fees, taxes, and the costs of preparing appropriate tax returns. *See* Borges Decl., ¶35(d); Distribution Order, ¶3(g).

7

Claimants from the Initial Distribution who or which: (a) did not receive the Alternative Minimum Payment; (b) negotiated their first distribution payments, and (c) who are entitled to at least $100 from such redistribution based on their *pro rata* share of the remaining funds. Borges Decl., ¶42; Distribution Order, ¶3(g).

If it is cost-effective, subsequent distributions of funds remaining in the Net Settlement Funds will be made until the Funds are depleted or *de minimis*. Borges Decl., ¶43; Distribution Order, ¶3(h). At such time as Epiq and Class Counsel determine that further re-distribution is not cost-effective, Class Counsel will move to distribute the remainder of the Net Settlement Funds to a not-for-profit 501(c)(3) organization recommended by Class Counsel and approved by the Court. Borges Decl., ¶43; Distribution Order, ¶3(i).

## IV.   DISTRIBUTION STATISTICS

As described in the Distribution Plans, eligible Claims in transactions of ISDAfix Instruments for each of the Settlement Funds are divided into two pools, "Pool A" and "Pool B." *See* ECF No. 602-1 at 7 and ECF No. 681-1 at 7. Pool A comprises transactions directly linked to an ISDAfix Benchmark Rate. *Id.* Pool B comprises transactions where the cash flows of the instrument were not directly linked to an ISDAfix Benchmark Rate. *Id.* Pool B is further divided into sub-groups that reflect differences in instrument type. *Id.*

As mandated by the Distribution Plans, all eligible transactions were assigned to one Pool or Pool sub-group. *Id.* If a transaction in an ISDAfix Instrument was found to reasonably fit the definition of more than one Pool or sub-group, the transaction was assigned to the Pool or sub-group that is allocated the greatest portion of each Net Settlement Fund. *Id.* at 8. The relative allocation of the Net Settlement Fund among Pools and sub-groups for both the Approved Settlements Fund and Newly Approved Settlements Fund is as follows:

8

| Pool/Pool sub-group | Percentage of Net Settlement Fund Allocated Pool/Pool sub-group |
|---|---|
| A | 45% |
| B.1 | 40% |
| B.2 | 6% |
| B.3 | 6% |
| B.4 | 3% |

Borges Decl., ¶35(a); ECF No. 602-1 at 21; 681-1 at 21.

Relevant statistics for those Authorized Claimants receiving a payment from both Settlement Funds and for those Authorized Claimants receiving a payment from the Newly Approved Settlement Fund only are summarized below.

### A. Claims Statistics for Authorized Claimants Receiving a Payment from Both Settlement Funds

As described in Section II above, Authorized Claimants filing on or before October 31, 2018 may receive payment from both Settlement Funds. The statistics for this group of Authorized Claimants are as follows:

#### 1. Total Class Size

For the purpose of this motion, the number of Class Members identified by the Settling Defendants to receive Notice of the Settlements and subsequently sent Notice of the Approved Settlements is used to determine the "Class Size." Approximately 59,233 Notice Packets were disseminated to potential Class Members by Epiq, Rust, KCC, and certain of the Settling Defendants. ECF No. 602 at 24. Class Counsel note that the 59,233 number is likely an overstatement of the number of potential Class Members due to factors such as Class Members potentially receiving more than one notice from separate mailers or certain Class Members being identified by multiple names and addresses in the data provided by Settling Defendant. While all reasonable measures were employed to prevent undue duplicate mailings (*see, e.g.*, ECF No. 611,

9

¶¶31-33), it is reasonable to expect a number of Class Members received multiple Notice Packets concerning the Approved Settlements.

### 2. Number and Percentage of Class Members Filing Claims

As set forth in the Borges Declaration, a total of 26,479 Claims were received by Epiq on or before the October 31, 2018 claims-filing deadline in the Approved Settlements. Borges Decl., ¶¶31, 33. Accordingly, 45% of Class Members who received mailed Notice of the Approved Settlements filed Claims. *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92 (SAS), 2010 WL 2834894, at *1 (S.D.N.Y. July 7, 2010) (accepting testimony that "response rates vary greatly depending on a variety of factors" and can "range from less than five percent to more than twenty percent;" "the 5.5% response rate in this action is not outside the norm").

Of the 26,479 submitted Claims eligible for both the Approved Settlements and the Newly Approved Settlements, Epiq has determined that 1,954 Claims should be rejected in full. Borges Decl., ¶33. There are 24,525 Authorized Claims eligible for and receiving payment from the Approved Settlements and the Newly Approved Settlements. Accordingly, 41% of Class Members receiving mail Notice of the Approved Settlements filed Claims that were determined by Epiq to be Authorized Claims.

### 3. Breakout of Authorized Claims by Pool and Pool Sub-Group

Authorized Claims in each Pool and Pool sub-group among Claims eligible for payment from the Approved Settlement and the Newly Approved Settlement are as follows:[7]

---

[7] The percentages add up to more than 100% because, even though a transaction could only give rise to a Claim in one Pool or Pool sub-group, Claimants often had multiple transactions, some in one Pool or Pool sub-group and some in others.

| Pool/Pool Sub-group | Number of Claimants in Each Pool/Pool Sub-Group (% of Total Number of Claimants Claiming Across Pools) Among Claimants Eligible for Approved Settlements and Newly Approved Settlements |
|---|---|
| A | 3,007 (12.3%) |
| B.1 | 4,802 (19.6%) |
| B.2 | 12,682 (51.7%) |
| B.3 | 1,475 (6.0%) |
| B.4 | 4,159 (17.0%) |

4. **Average Award Per Class Member**

As detailed in Section V below, the total Net Settlement Fund available for Distribution is $336,214,858.66. Of this amount, $334,473,978.59 will be paid to the 24,525 Authorized Claimants eligible to receive payment from both the Approved Settlements Fund and the Newly Approved Settlements Fund. Borges Decl., ¶38. 19,401 of these Authorized Claimants will receive the Alternative Minimum Payment of $100. *Id*. 5,124 of these Authorized Claimants will receive will receive a *pro rata* distribution from the Approved Settlements Fund and the Newly Approved Settlements Fund in accordance with the Plan of Distribution. *Id*. The average award for each Class Member eligible for *pro rata* payment from both the Approved Settlements and the Newly Approved Settlement is $64,897.32.

B. **Claims Statistics for Authorized Claimants Receiving a Payment from the Newly Approved Settlements Fund Only**

As described in Section II above, Authorized Claimants filing after October 31, 2018, but before or on the January 31, 2019 claims-filing deadline in the Newly Approved Settlements will receive payment from the Newly Approved Settlements Fund only. The statistics for this group of Authorized Claimants are as follows:

1.   **Total Class Size**

For the purpose of this motion, the number of Class Members identified by the Settling Defendants and Newly Settling Defendants to receive Notice of the Settlements and subsequently sent Notice of the Newly Approved Settlements is used to determine the "Class Size." Approximately 62,678 Notice Packets were disseminated to potential Class Members. ECF No. 602 at 24. As with the Approved Settlements, Class Counsel note that the 62,678 number is likely an overstatement of the number of potential Class Members. Despite measures employed to prevent undue duplicate mailings (*see, e.g.*, ECF No. 611, ¶¶31-33), it is reasonable to expect a number of Class Members received multiple Notice Packets concerning the Newly Approved Settlements.

2.   **Number and Percentage of Class Members Filing Claims**

As set forth in the Borges Declaration, a total of 4,640 Claims were received by Epiq after October 31, 2018 but before or on the January 31, 2019 claims-filing deadline in the Newly Approved Settlements. Borges Decl., ¶¶32, 33. In addition, Claims of Class Members filing on or before October 31, 2018 were eligible for the Newly Approved Settlements as well as the Approved Settlement with no additional filing. *See, e.g.*, ECF No. 665-2 at 3. Accordingly, the total Claims participation rate is approximately 50%.

Of the 4,640 submitted Claims received by Epiq after October 31, 2018, but before or on the January 31, 2019 claims-filing deadline and, as such, eligible for the Newly Approved Settlements only, Epiq has determined that 415 Claims should be rejected in full. Borges Decl., ¶33. Accordingly, there are 4,225 Authorized Claims eligible for and receiving payment form the Newly Approved Settlements only.

### 3. Breakout of Authorized Claims by Pool and Pool Sub-group

Authorized Claims in each Pool and Pool sub-group among Claims eligible for payment from the Newly Approved Settlements only are as follows:

| Pool/Pool Sub-group | Number of Claimants in Each Pool/Pool Sub-Group (% of Total Number of Claimants Claiming Across Pools) Among Claimants Eligible for Newly Approved Settlements Only |
|---|---|
| A | 161 (3.8%) |
| B.1 | 480 (11.3%) |
| B.2 | 3,344 (78.6%) |
| B.3 | 240 (5.6%) |
| B.4 | 456 (10.7%) |

### 4. Average Award Per Class Member

As detailed in Section V below, the total Net Settlement Fund available for Distribution is $336,214,858.66. Of this amount, $1,740,802.66 will be paid to the 4,225 Authorized Claimants eligible to receive payment from the Newly Approved Settlements Fund only. Borges Decl., ¶39. 4,012 of these Authorized Claimants will receive the Alternative Minimum Payment of $100. Borges Decl., ¶39. 213 of these Authorized Claimants will receive a *pro rata* distribution from the Newly Approved Settlements Fund in accordance with the Plan of Distribution. The average award for each Class Member eligible for *pro rata* payment from the Newly Approved Settlements Fund only is $6,289.21.

### V. PAYMENT OF NOTICE AND ADMINISTRATION EXPENSES AND AMOUNT OF THE NET SETTLEMENT FUNDS

To date, Class Counsel has paid $3,952,781.60 in Notice and Administration Expenses from the Settlement Fund, which the Court has authorized. Such payments cover past claims processing and administration services, including: (i) handling incoming and returned mail;

13

(ii) responding to Class Member inquiries regarding the claims process (including maintaining a call center and responding to email questions); (iii) updating and maintaining the online claims portal and settlement website; (iv) analyzing Claimant transaction data to determine eligible claims pursuant to the Court-approved Distribution Plan; (v) processing claims and distributing deficiency letters; and (vi) processing responses to deficiency letters.

In addition, Epiq estimates approximately $311,000 in future fees and expenses will be incurred through the Initial Distribution. Borges Decl., ¶44. This work will cover processing and making payments, as well as answering questions about payments. After the deduction of all fees, costs, expenses, and taxes and the addition of all interest and dividends, Class Counsel estimates the total Net Settlement Funds for distribution to Authorized Claimants is as follows:

| Settlement Amount | $504,500,000.00 |
| --- | --- |
| Interest and Dividends | $19,463,345.11 |
| Tax Payments | ($5,634,765.00) |
| Attorneys' Fees/Expense Award | ($148,297,767.29) |
| Plaintiffs' Service Award | ($627,097.89) |
| Notice and Administrative Expenses (to date) | ($3,952,781.60) |
| Reserve Amount (including estimated future taxes and Administrative Expenses) | ($29,236,074.67) |
| **Estimated Net Settlement Fund** | $336,214,858.66 |

Accordingly, approximately 67% of the $504.5 million Settlement Fund will be distributed to Authorized Claimants.

## VI. RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Funds, it is necessary to bar any further claims against the Net Settlement Funds. Accordingly, the Distribution Order bars all Class Members, whether or not they receive payment from the Net Settlement Funds, from making any further claims against the Settlement Funds, Plaintiffs, Class Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Plaintiffs or Class Counsel in

connection with the administration or taxation of the Settlement Funds. *See* Distribution Order, ¶4.

In addition, Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claim Forms submitted herein, or otherwise involved in the administration or taxation of the Settlement Funds or the Net Settlement Funds, from any and all claims arising out of such involvement. *Id*.

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that Plaintiffs' Motion for an Order Approving the Distribution of the Net Settlement Funds should be granted and the Distribution Order should be entered.

Dated: November 22, 2019

*s/ Daniel L. Brockett*
Daniel L. Brockett
Marc L. Greenwald
Steig D. Olson
Jonathan B. Oblak
Toby E. Futter
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
danbrockett@quinnemanuel.com
marcgreenwald@quinnemanuel.com
steigolson@quinnemanuel.com
jonoblak@quinnemanuel.com
tobyfutter@quinnemanuel.com

Jeremy D. Andersen (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
jeremyandersen@quinnemanuel.com

*s/ David W. Mitchell*
David W. Mitchell
Patrick J. Coughlin
Brian O. O'Mara
Steven M. Jodlowski
Lonnie Browne
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
davidm@rgrdlaw.com
patc@rgrdlaw.com
bomara@rgrdlaw.com
sjodlowski@rgrdlaw.com
lbrowne@rgrdlaw.com

*s/ Christopher M. Burke*
Christopher M. Burke
Hal Cunningham (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
cburke@scott-scott.com
hcunningham@scott-scott.com

David R. Scott
Beth A. Kaswan
Kristen M. Anderson
Peter A. Barile III
Thomas K. Boardman
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
david.scott@scott-scott.com
bkaswan@scott-scott.com

kanderson@scott-scott.com
barile@scott-scott.com
tboardman@scott-scott.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

                                          *s/ Christopher M. Burke*
                                          Christopher M. Burke