**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALASKA ELECTRICAL PENSION FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA, N.A., et al., <br><br> Defendants. | Lead Case No.: 14-cv-7126 (JMF) |

**OBJECTION OF FORTINBRAS ASSET MANAGEMENT GMBH**
**TO PLAINTIFFS' MOTION FOR ENTRY OF AN ORDER**
**APPROVING DISTRIBUTION OF THE NET SETTLEMENT FUNDS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................................................ii

INTRODUCTION .................................................................................................................1

BACKGROUND ...................................................................................................................2

    A.   Fortinbras's Claim in the Settlement ...........................................................................2

    B.   The Fortinbras Swaps ..................................................................................................4

ARGUMENT .......................................................................................................................8

    A.   The Fortinbras Swaps Are Pool A Eligible Interest Rate Swaps...................................8

    B.   The Fortinbras Swaps Directly Referenced the ISDAfix Benchmark Rate. .................9

    C.   The Administrator Confuses Investments Into the Fortinbras Fund With Investments Made By the Fortinbras Fund. ..................................................................................11

    CONCLUSION ..................................................................................................................12

## TABLE OF AUTHORITIES

**Cases**

*In re Holocaust Victim Assets Litig.*, 424 F.3d 132, 146 (2d Cir. 2005) ...................................8

**Case Documents**

Plan of Distribution, ECF No. 602-1 .........................................................................1, 2, 3, 8, 9

Fortinbras Asset Management GmbH ("Fortinbras"),[1] by and through its undersigned counsel, files this Objection to Plaintiffs' Motion for Entry of An Order Approving Distribution of the Net Settlement Funds for the reasons set forth below:

## INTRODUCTION

Each day of the Class Period, Fortinbras traded interest rate swaps that incorporated the ISDAfix rate (the "Fortinbras Swaps") with Defendant Credit Suisse. The notional value of these Fortinbras Swaps, calculated in accordance with the instructions provided in the Notice of Claim, exceeded $3.3 trillion.

The Fortinbras Swaps are Pool A transactions pursuant to the settlement Plan of Distribution. *See* ECF No. 602-1. "Pool A includes transactions in . . . ISDAfix Instruments with payments linked to ISDAfix during the Settlement Class Period." *Id.* At 8. The Fortinbras Swaps are ISDAfix Instruments because they are interest rate derivatives, specifically interest rate swaps, denominated in USD. *Id.* at 2. The Fortinbras Swaps have payments linked to ISDAfix because, as discussed below, the swap fixing rate applied to the Fortinbras Swaps was ISDAfix.

Despite these facts, Epiq Systems, Inc. ("Epiq" or the "Administrator"), the claims administrator, continues to reject the Fortinbras Swaps from Fortinbras's settlement claim. Fortinbras has also fully complied with numerous requests for additional documentation from both Epiq and Class Counsel.

In addition to the contested Pool A transactions that are the subject of this Objection, Fortinbras's claim also included transactions allocated to Pools B.3 and B.4. The Administrator has accepted these transactions.

---

[1] Fortinbras's claim is identified as Claim ID No. 530061662. Additionally, the name "Prospero Beteiligungsverwaltung GmbH" appears in some of the documents as this was the name of the company before it was changed to "Fortinbras Asset Management GmbH."

## BACKGROUND

A.   <u>Fortinbras's Claim in the Settlement</u>

Fortinbras is a fixed income hedge fund that uses a proprietary trend-following algorithmic model and trades exclusively interest rate derivatives.  During the Class Period Fortinbras had assets under management of $3.2 billion, of which $1.05 billion was held in the Fortinbras Fund that traded the Fortinbras Swaps at issue here.

Fortinbras submitted a timely Proof of Claim on or around July 4, 2018.  Fortinbras submitted an updated version of its transaction data on November 13, 2018. As agreed with the Administrator at the time, the November 2018 data superseded and replaced the July 2018 data. (A printout of the November 2018 claim submission spreadsheet is attached as Exhibit 1 to the Declaration of Peter Demato, Jr. ("Demato Dec.")).

Fortinbras's submission reflects more than $3.3 trillion in Pool A eligible interest rate swaps.[2]  *See* Demato Dec., Exhibit 1. Throughout this Objection we will refer to these Pool A eligible interest rate swaps as the "Fortinbras Swaps."

The Fortinbras claim was selected for audit by Epiq. In response, Fortinbras provided documentation detailing the Fortinbras Swaps, together with an explanation of the Fortinbras Swaps and the TFM strategy. Throughout 2019, Fortinbras and Epiq continued to communicate regarding the Fortinbras Swaps claim.

On July 6, 2019, the Administrator sent Fortinbras a Claim Reduction Letter (attached as Exhibit 2 to the Demato Dec.) in which the Administrator said it was "unable to validate" the Fortinbras Swaps, thereby rejecting Fortinbras's Pool A swaps from the settlement.  The two reasons for the rejection were: (1) Epiq was not convinced that Fortinbras had provided

---

[2] This Transaction Notional Amount was calculated in accordance with the Plan of Distribution. *See* ECF No. 602-1, at 10-11 ("The Transaction Notional Amount is accounted for in each year payment was linked to an ISDAfix rate in that year. *For example*: for a Claimant with a $100 million notional 5-year constant maturity swap with resets to an ISDAfix Benchmark Rate in years 2006 through 2010 with Citigroup as a counterparty, $100 million is added to the Transactional Notional Amounts [for each of those years].")

sufficient data to show that "a trade actually occurred"; and (2) Epiq questioned the relationship of the swaps to the ISDAfix rate.

Following the Claim Reduction Letter, Fortinbras provided additional explanation and verification of the Fortinbras Swaps to Epiq and Class Counsel, including two expert reports. The first expert report came from Dr. Johannes Kolb, who audited the Fortinbras Swaps to independently compute the notional amount of Fortinbras's Pool A transactions.  The Report of Dr. Kolb is attached as Exhibit 3 to the Demato Dec.

Dr. Kolb's report proves that the Fortinbras Swaps were interest rate swaps where risk was exchanged. Notably, Dr. Kolb previously worked at settling defendant Credit Suisse and was Fortinbras's main contact at Credit Suisse from 2008 to 2010 where he was instrumental in designing the trading operations for the Fortinbras Swaps.

Additionally, Fortinbras provided a report from Dr. Simon Crooks to document the direct link between the Fortinbras Swaps and the ISDAfix rate.  The Report of Dr. Crooks is attached as Exhibit 4 to the Demato Dec. Dr. Crooks confirmed that Credit Suisse could only have used the ISDAfix rate in valuing the Fortinbras Swaps. The Crooks Report concludes that the Fortinbras Swaps were thus "directly linked" to the ISDAfix, cementing their status as Pool A transactions under the Plan of Distribution. *See* ECF No. 602-1, at 8 ("Pool A includes transactions in . . . ISDAfix Instruments with payments linked to ISDAfix during the Settlement Class Period.").

Despite Fortinbras's efforts to address the Administrator's concerns, on November 22, 2019 Class Counsel sent Fortinbras copies of the motion for distribution and stated that Fortinbras's Pool A transactions remained excluded from the settlement. A copy of this November 22 email is attached as Exhibit 5 to the Demato Dec. The November 22 email specifically reiterated the conclusions of the July 6 Claim Reduction Letter, without

providing any additional analysis of the materials, including expert reports, provided by Fortinbras since July 6, 2019.

B.   The Fortinbras Swaps

Fortinbras traded all of the Fortinbras Swaps with Defendant Credit Suisse ("CS") pursuant to Fortinbras's Three Factor Model ("TFM") strategy. The TFM strategy involved trading interest rate swaps each day in a specified variety of tenors and currencies.[3] The terms of the Fortinbras Swaps were all defined in the Index Rules (the Index Rules are attached as Exhibit 6 to the Demato Dec.), which were adopted pursuant to an Engagement Agreement between Fortinbras and CS. The Index Rules and Engagement Agreement were provided to Epiq in December 2018.

The TFM strategy employed funds invested in the Fortinbras Fund through the sale of TFM strategy linked notes, the proceeds of which were deposited into the Fortinbras Fund[4] account at Credit Suisse. This process is summarized in the Termsheets that have been provided to the Administrator previously; a sample Termsheet is attached as Exhibit 7 to the Demato Dec.

Fortinbras then traded the Fortinbras Swaps each day with Credit Suisse. Per Index Rule § 2.2, each day Fortinbras entered into three USD-denominated swaps: one 1-year swap, one 2-year swap, and one 5-year swap. Each of these swaps were unwound the next day and new swaps were entered into in their place. Index Rules § 3.2. The net profit (or loss) of each day's swaps were then credited or debited to the Fortinbras Fund account. Index Rules §§ 3 – 4.

---

[3] Only the USD-denominated swaps are included in the Fortinbras claim.

[4] In Credit Suisse's internal accounting system "Fortinbras Asset Management GmbH" is entered as the "Fund Name." For simplicity's sake, we use the Credit Suisse nomenclature and refer to this account as the "Fortinbras Fund" account.

Because each of the Fortinbras Swaps was designed to be unwound one business day after being opened, Fortinbras and CS negotiated—in the Index Rules—that each individual swap would require minimal documentation to confirm. Accordingly, the Index Rules largely incorporate the default 2006 ISDA Definitions, and spell out any other required terms that were to be applied to each of the Fortinbras Swaps. Thus, the only documentation required to confirm each of the three Fortinbras Swaps for any one day were: (1) the Price Upload Reports, which showed the price at which the swaps were to be entered; and (2) the Confirmation Email, which signaled whether each swap would be long or short. The Price Upload Reports and Confirmation Emails were all provided to Epiq previously.

While the documentation of the Fortinbras Swaps may not have conformed to the Administrator's notion of a "traditional" swap trade confirmation, this was a conscious decision by Credit Suisse and Fortinbras to minimize the daily documentation burden, and it does not impact the economic substance of the Fortinbras Swaps because a swap confirmation is not required to be in any one specific form. 2006 ISDA Definitions § 1.2. Section 1.2 of the 2006 ISDA Definitions plainly states that a swap confirmation is any, "one or more documents or other confirming evidence exchanged between the parties (including by means of an electronic messaging system or e-mail) or otherwise effective which, taken together, confirm all of the terms of that Swap Transaction."

The daily Fortinbras Swaps trades between the Fortinbras Fund and CS had four essential steps:

- *First*, every business day before 9:00 a.m. EST, a Fortinbras trader logged onto CS's online trading platform called Locus and uploaded the current swaps prices.  The Fortinbras trader then entered these swaps prices into Fortinbras's proprietary TFM algorithmic model which determined either a long or short signal (*i.e.*, receiver or

payer swap) for that day.  Copies of the 900 daily "Price Upload Reports" from June 24, 2008 to January 31, 2014 were provided to the Administrator.

- *Second*, the Fortinbras trader logged back onto Locus and entered the signals from the TFM algorithmic model into CS's system.   These signals were trading orders for CS to execute the respective swaps for the benefit of the Fortinbras Fund.  For example, the June 24, 2008 snapshot of the Fortinbras page on CS's Locus platform, reproduced below, shows the Fortinbras Fund had a short signal in the USD 1 Year swap, a short signal in the USD 2 Year swap, and a long signal in the USD 5 Year swap on that day.  Again, according to the agreement between the Fortinbras Fund and CS contained in Index Rules § 4, these notations are instructions for Credit Suisse to initiate short interest rate swap positions in the 1 Year and 2 Year, and to initiate a long interest rate swap position in the 5 Year on behalf of the Fortinbras Fund.



- *Third*, CS sent Fortinbras an automated "Confirmation Email" which confirmed the signal changes, if any, for each of the swaps for that day.  Below is an example of a Confirmation Email signalling a change of position. In this example the Fortinbras Fund had a signal to go "long" the USD 2 Year swap. That is, previously the Fortinbras Fund was short the USD 2 Year swap, and this new signal reverses that short position from the day before into a long position on that day. As more specifically described in the Index Rules, where there was "No Change" in the signal, the swaps from the previous day were unwound and a new swap with the same tenor and same signal was purchased. Copies of the 1,132 daily "Confirmation Emails" sent from CS to Fortinbras for the dates June 24, 2008 to January 31, 2014 were provided to the Administrator.[5]



---

[5] The design and layout of the Confirmation Emails changed over time, but the instructional content remained the same.

- *Finally*, all swaps were executed at the ISDAfix rate on that day.  Section 3.1 of the Index Rules provides that the Swaps Fixings are to be calculated at the "Credit Suisse London Closing Time," and, as Fortinbras has exhaustively demonstrated to Epiq and will highlight below, these Swap Fixings were based on ISDAfix.

<strong>ARGUMENT</strong>

The rejection of a settlement claim cannot rest upon an erroneous factual finding. *In re Holocaust Victim Assets Litig.*, 424 F.3d 132, 146 (2d Cir. 2005). However, that is exactly what Epiq has relied upon in rejecting Fortinbras's claim here.

The Fortinbras Swaps were interest rate swaps with payments linked to ISDAfix and, thus, are Pool A transactions pursuant to the settlement and Plan of Distribution. *See* ECF No. 602-1, at 8. However, the Administrator has refused to include the Fortinbras Swaps in the settlement. In doing so, the Administrator has disregarded the ample evidence that Epiq and/or Class Counsel have requested—and received—from Fortinbras since the July 6, 2019 Claim Reduction Letter.

A.     The Fortinbras Swaps Are Pool A Eligible Interest Rate Swaps.

As the Index Rules make clear, the Fortinbras Fund maintained "directional exposure to various interest rate swaps," throughout the Class Period. Index Rules § 2.1. The Dr. Kolb Report provides independent confirmation that the Fortinbras Swaps were carried out as described by Fortinbras. Dr. Kolb's analysis illustrates how the documentation described above opened and unwound the Fortinbras Swaps daily, transferring risk between the Fortinbras Fund and CS.

For example, the below table from Dr. Kolb shows that on July 30, 2008 the Fortinbras Fund had a $44,296,186 Swap Notional position in the 2-year swap at a price of 117.23.[6] The next day the position was closed out (*i.e.,* the daily rolling of the swaps) at a

---

[6] The Fortinbras Swaps were quoted by Credit Suisse on their Locus platform in price (rather than rate) format.

price of 117.30. This resulted in 7 basis points in profit (117.30-117.23), which—when

multiplied by the Swap Notional—equates to $31,007 in profit for that interest rate swap

position for that day (*see* yellow highlights).

| Instrument | Trade Date | Settlement Date | Currency | Swap Tenor | Maturity Date | Swap Notional | Party A Position | CS Swap Index Fixing (%) | CS Swap Index Level | F |
|---|---|---|---|---|---|---|---|---|---|---|
| Interest Rate Swap | 07/30/2008 | 08/01/2008 | USD | 1 Year | 08/03/2009 | $88,503,358 | Pay Fixing | 3.074% | 107.83 | Sem |
| Interest Rate Swap | 07/30/2008 | 08/01/2008 | USD | 2 Year | 08/02/2010 | $44,296,186 | Rec Fixing | 3.533% | 117.23 | Sem |
| Interest Rate Swap | 07/30/2008 | 08/01/2008 | USD | 2 Year | 08/02/2010 | $44,251,679 | Pay Fixing | 3.533% | 117.23 | Sem |
| Interest Rate Swap | 07/30/2008 | 08/01/2008 | USD | 5 Year | 08/01/2013 | $22,144,992 | Rec Fixing | 4.299% | 131.74 | Sem |
| Interest Rate Swap | 07/30/2008 | 08/01/2008 | USD | 5 Year | 08/01/2013 | $22,122,742 | Pay Fixing | 4.299% | 131.74 | Sem |
| Interest Rate Swap | 07/31/2008 | 08/04/2008 | USD | 1 Year | 08/04/2009 | $88,831,258 | Rec Fixing | 3.024% | 107.87 | Sem |
| Interest Rate Swap | 07/31/2008 | 08/04/2008 | USD | 1 Year | 08/04/2009 | $88,592,371 | Pay Fixing | 3.024% | 107.87 | Sem |
| Interest Rate Swap | 07/31/2008 | 08/04/2008 | USD | 2 Year | 08/04/2010 | $44,415,629 | Rec Fixing | 3.439% | 117.30 | Sem |
| Interest Rate Swap | 07/31/2008 | 08/04/2008 | USD | 2 Year | 08/04/2010 | $44,296,186 | Pay Fixing | 3.439% | 117.30 | Sem |
| Interest Rate Swap | 07/31/2008 | 08/04/2008 | USD | 5 Year | 08/05/2013 | $22,204,705 | Rec Fixing | 4.173% | 131.82 | Sem |

This $31,007 for the USD 2-year swap was then added to the profit and loss from the 11

other swaps in the TFM strategy to get the overall profit and loss for the TFM strategy for

that day. This is all set out formulaically in § 4 of the Index Rules.

It is worth noting that the total notional value of the Fortinbras Swaps provided in Dr.

Kolb's report is $1.706 trillion, which does not match exactly the $3.318 trillion Transaction

Notional Amount reflected in Fortinbras's Claim. This discrepancy results solely from the

calculation instructions provided in the Plan of Distribution, which states that, "the

Transaction Notional Amount is accounted for in each year payment was linked to an

ISDAfix rate in that year."[7] ECF No. 602-1, at 10-11. By contrast, Dr. Kolb's report only

accounts for each swap once—not once in each year that a payment was linked to ISDAfix.

B.   The Fortinbras Swaps Directly Referenced the ISDAfix Benchmark Rate.

The rate that CS, in its capacity as calculation agent, applied to the Fortinbras Swaps

was identical to the ISDAfix every single day during the Class Period.  It is inconceivable

---

[7] The Plan of Distribution also provides an illustrative example of this point, which provides that, "for a Claimant with a $100 million notional 5-year constant maturity swap with resets to an ISDAfix Benchmark Rate in years 2006 through 2010 with Citigroup as a counterparty, $100 million is added to the Transactional Notional Amounts [for each of those years]." ECF No. 602-1, at 10-11.

that CS used a different, independent method to value the Fortinbras Swaps, as this rate never once varied from ISDAfix. Additionally, there is no evidence in any of the transaction documents to suggest that a rate other than ISDAfix was applied to the Fortinbras Swaps. The documents provide that the Fortinbras Swaps will be valued based on "market convention," which is consistent with CS's use of ISDAfix because ISDAfix was specifically referenced in the 2006 ISDA Definitions that were incorporated, as modified, into the Fortinbras Swaps.

Underscoring this point is Dr. Crooks' analysis of the Credit Suisse fixing[8] versus the ISDAfix. Employing a series of standard statistical techniques, Dr. Crooks finds that prior to the start of the Class Period, "Credit Suisse must have replaced their model used to generate their in-house fixings with the official ISDA fixings, so they became one and the same."

The following graph, taken from Dr. Crooks' Report, compares the ISDAfix 2 year rate and the Credit Suisse 2 year fixing.



---

[8] Index Rules § 3.1 state that the Swap Fixings are to be calculated at "Credit Suisse London Closing Time" which is referred to here as the "Credit Suisse Fixing".

- 10 -

As one can see, prior to 2005 and post-2018 there were minor deviations between the Credit Suisse fixing and ISDAfix.  But, for the period relevant to the Fortinbras claim (the area of emphasis contained in the red rectangle), the rate applied to the Fortinbras Swaps was identical every day to the respective ISDAfix rate.

Dr. Crooks' report goes on to examine the economic consequences of the fixing rate and concludes that there was "identical profit & loss using CS Fixing and ISDAfix Rates" for Fortinbras because "having identical Credit Suisse fixings and ISDAfix rates results in exactly the same P&L profile" for the swaps in question.  In summary, Dr. Crooks concludes that, "the swaps Fortinbras traded were directly linked to the ISDAfix Rates." Demato Dec., Exhibit 4 at 4.

The concept of a "direct link" between the swaps and the ISDAfix rate is essential for inclusion into Pool A.  The Distribution Plan clearly states, "Pool A includes ISDAfix Instruments in which the cash flows of that instrument are directly linked to one or more ISDAfix Benchmark Rates."  Thus, as Dr. Crooks confirms, the Fortinbras Swaps fall squarely within the description of Pool A trasactions.

C.   <u>The Administrator Confuses Investments Into the Fortinbras Fund With Investments Made the Fortinbras Fund.</u>

In the Claim Reduction Letter, the Administrator referenced transactions described in a May 23, 2019 spreadsheet (the "May Data") that Fortinbras provided to the Administrator during their discussions. In fact, the Administrator agreed to include these May Data transactions into Pool B.4 of the settlement. However, as Fortinbras has explained, these May Data transactions are investments *into* the Fortinbras Fund, not the Fortinbras Swaps *traded by* the Fortinbras Fund.

The Administrator provided this erroneous interpretation of the May Data months ago and Fortinbras has explained the Administrator's mistake on multiple occasions. Now, despite the additional evidence provided by Fortinbras since the July 6 Claim Reduction

Letter, the Administrator has reverted to the views espoused in that Claim Reduction Letter. This decision highlights the arbitrary nature of the Administrator's evaluation of Fortinbras's Claim, and the need for the Court's intervention here.

## CONCLUSION

For the foregoing reasons, Fortinbras Asset Management GmbH respectfully requests that the Court issue an Order: directing the Administrator to accept the Fortinbras Swaps as Pool A transactions under the Plan of Distribution for all purposes, including in the Initial Distribution and any Subsequent Distributions and for the Approved Settlements Fund and the Newly Approved Settlements Fund; and for such other and further relief as the Court deems just and proper.

Dated: December 6, 2019
      White Plains, NY

Respectfully submitted,

**LOWEY DANNENBERG, P.C.**

By:  _/s/  Geoffrey M. Horn_
Geoffrey M. Horn
Peter Demato, Jr.
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
ghorn@lowey.com
pdemato@lowey.com

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on the date shown below he caused the

OBJECTION OF FORTINBRAS ASSET MANAGEMENT GMBH TO PLAINTIFFS' MOTION FOR ENTRY

OF AN ORDER APPROVING DISTRIBUTION OF THE NET SETTLEMENT FUNDS to be electronically

filed with the Clerk for the U.S. District Court for the Southern District of New York, which

will send a notification and a copy of the document to all counsel of record.


Dated: December 6, 2019                              /s/  Peter Demato, Jr.
       White Plains, NY                                   Peter Demato, Jr.

                                                     *Counsel for Fortinbras Asset*
                                                     *Management GmbH*