Robbins Geller
Rudman & Dowd LLP

December 23, 2019

V<small>IA</small> ECF

Hon. Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

   Re: *Alaska Electrical Pension Fund v. Bank of America Corp.*
     No. 14-cv-7126 (JMF)

Dear Judge Furman:

  We write in response to Fortinbras' request to file a sur-reply in connection with the pending request to distribute funds to class members. *See* ECF No. 757. Though we are aware the Court has granted the request, we are compelled to respond because the conclusory request justified itself due to a supposed breakdown in the conferral process. We reject any such suggestion in the strongest possible terms, and want to assure the Court we have taken our duty to all class members – including Fortinbras – very seriously. In fact, no claim has taken nearly as much time and resources as Fortinbras'. The year-long audit process included several teleconferences and multiple written explanations as to our position. We even wrote as early as March 2019 to explain that the "Handbook" and appendices – the same documents Fortinbras even now relies almost exclusively upon – were insufficient to meet Fortinbras' burden. *See generally* ECF No. 756 (Borges Reply Decl.) ¶¶8-22.

  As part of our obligation to Fortinbras as a purported class member, co-counsel, the Claims Administrator, and our economic advisors in good faith carefully reviewed the midnight-Friday filing over the weekend to determine whether the attempt to "clarif[y] the confusion" actually warranted a change in our position. We respectfully request the Court consider this brief statement as to why, in our view, it does not.

  Our memorandum raises serious questions about Fortinbras' Pool A claims, including: why the Fortinbras swaps do not appear in the transactional data produced in this case; why Credit Suisse was unable to confirm the existence of the swaps; how $3.3 trillion in real swap transactions could exist without anything resembling legal or transactional documentation; why the proffered materials only treat Fortinbras as an "Index Advisor" to be dismissed by Credit Suisse at will; whether Fortinbras itself (rather than the investors) ever actually paid cash to or received cash from Credit Suisse; what legal rights Credit Suisse would have to enforce against Fortinbras if Fortinbras decided to stop rolling over its supposed exposure; and who amongst Fortinbras itself, the third-party investors, or even potentially Credit Suisse would ultimately benefit from the

Hon. Jesse M. Furman
December 23, 2019
Page 2

settlement funds. *See* ECF No. 755 (Reply) at 3, 5-6. The sur-reply, respectfully, does not answer any of these questions. Instead, Fortinbras merely re-stresses how the "Term Sheets" and the "May data" confirm Credit Suisse sold investments to third parties. But our memorandum makes clear that is not in dispute. *See id.* at 1-2. It is thus still our view that the unanswered questions and missing documentation surpass Fortinbras' assurances that Credit Suisse actually issued instruments somehow linked to the performance of a proprietary trading strategy.

Respectfully submitted,

| | | |
|---|---|---|
| *s/ Daniel L. Brockett* | *s/ Christopher M. Burke* | *s/ David W. Mitchell* |
| Daniel L. Brockett | Christopher M. Burke | David W. Mitchell |
| **Quinn Emanuel Urquhart & Sullivan, LLP** | **Scott+Scott Attorneys at Law LLP** | **Robbins Geller Rudman & Dowd LLP** |