**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALASKA ELECTRICAL PENSION FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA, N.A., et al., <br><br> Defendants. | Lead Case No.: 14-cv-7126 (JMF) |

**RESPONSE OF FORTINBRAS ASSET MANAGEMENT GMBH IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF AN ORDER <u>APPROVING DISTRIBUTION OF THE NET SETTLEMENT FUNDS</u>**

Fortinbras Asset Management GmbH ("Fortinbras"), by and through its undersigned counsel, files this Response in Further Opposition to Plaintiffs' Motion for Entry of An Order Approving Distribution of the Net Settlement Funds for the reasons set forth below:

## INTRODUCTION

Plaintiffs now agree that the Fortinbras Swaps[1] are Pool A transactions—that is, if they are "real" swaps. *See* ECF No. 755, at 7. This is a sign of progress and resolves a significant issue standing in the way of Fortinbras's recovery as a Class Member. However, the assertion that the swaps are somehow less than real is problematic—and incorrect.

The Fortinbras Swaps were indeed real swaps. As explained in the Objection, Fortinbras's TFM strategy required three swaps in different currencies each day, but only the USD-denominated swaps are part of the settlement claim. For this reason, the USD-denominated swaps were the focus of the Objection. This Response clarifies the confusion regarding the Three Factor Model Index (the "Index"), which reflected the success or failure of the Fortinbras Swaps each day, in order to confirm that the Fortinbras Swaps were swap transactions where economic risk was exchanged. Additionally, this Response clarifies the role of Fortinbras in the Fortinbras Swaps to clarify Fortinbras's place as a proper claimant here.

## ARGUMENT

The Index was calculated each day to facilitate accounting for the gains and losses of the Fortinbras Fund[2] that executed the TFM strategy. The Index served to aggregate and indicize the daily gains and losses of the twelve swaps that the Fortinbras Fund traded each day (only three of which were the USD-denominated swaps relevant here). The Index was set to 100 at the outset of the TFM strategy. Each day the net gain (or loss) of the twelve swaps

---

[1] All capitalized terms have the same definition as in Fortinbras's Objection, ECF No. 753 (the "Objection").

[2] Documents from Credit Suisse discussing investments in the TFM strategy list Fortinbras under the category of Fund Name. We refer to this as the "Fortinbras Fund."

used to execute the TFM strategy was calculated in basis points, and the Index was adjusted accordingly. *See* Index Rules, § 4. The value of the Index was available to investors via Bloomberg and provided a snapshot of the value of investments in the strategy.

The existence of the Index does not diminish the fact that the Fortinbras Swaps were transactions where risk was exchanged. The Index served the same purpose as the price of an exchange-traded fund, or ETF, that tracks a stock index. The price of the ETF may appear unequal to the published index that it tracks, but that does not mean that the ETF's investments in the component stocks of the underlying stock index are hypothetical. Rather, the ETF price allows investors to easily assess the value of their investment. Similarly, the Index here allowed investors in the Fortinbras Fund the ability to view the performance of the TFM strategy. However, unlike simple ETFs that may hold a basket of equities, the Fortinbras Fund traded twelve swaps that rolled each day and, thus, the Index provided a more meaningful way to track the TFM strategy's performance.

Plaintiffs argue that the Index Rules[3] do not provide evidence that the TFM strategy was "actually deployed." This may be true as far as it goes, but the Term Sheets,[4] which evidence investments into the Fortinbras Fund, most certainly *do* evidence the fact that the TFM strategy was, indeed, "actually deployed."

The Term Sheets evidence investments into the Fortinbras Fund that executed the TFM strategy. The Fortinbras Fund, in turn, entered into the daily swap transactions used to execute the TFM strategy. The investments in the Fortinbras Fund gained or lost money based on the performance of those swaps, as illustrated by the Index. These facts are consistent with "real" swaps where economic risk was exchanged. Absent investment into the

---

[3] Attached as Exhibit 6 to the Declaration of Peter Demato, Jr. (the "Demato Dec."), ECF No. 754-6.

[4] The Terms Sheets governed the investments into the Fortinbras Fund that carried out the TFM strategy, which was done in accordance with the Index Rules. A sample Term Sheet is attached as Exhibit 7 to the Demato Dec. Fortinbras previously provided Epiq with all of the Term Sheets.

Fortinbras Fund, the Index Rules may have merely depicted a hypothetical structure, but once funded—as evidenced by the Terms Sheets—the Index Rules governed those very real investments.

Plaintiffs last argument as to why the Fortinbras Swaps are insufficiently "real" to be included in the settlement focuses on the role of Fortinbras in trading the Fortinbras Swaps. The documents previously provided to Epiq illustrate that Credit Suisse viewed Fortinbras as a counterparty. For example, the "May Data" spreadsheet,[5] which both sides have referenced, was a document sent from Credit Suisse to Fortinbras that illustrated different investments into the Fortinbras Fund that executed the TFM strategy, which investments were made in accordance with the Term Sheets discussed above. A few items from this spreadsheet make plain that Credit Suisse viewed Fortinbras as its counterparty for the Fortinbras Swaps used to execute the TFM strategy: (i) the column titled "FUND_NAME" lists Fortinbras in each row, not the individual investors into the Fortinbras Fund; and (ii) the column titled "COUNTERPARTY_NAME" lists Fortinbras in each row. Despite this contemporaneous document from Credit Suisse, Epiq has continued to insist that Fortinbras was something less than the counterparty to the Fortinbras Swaps.

The Fortinbras Fund account, which was clearly respected as a distinct entity by Credit Suisse, is no different from any other investment fund that may have made a claim here. Investors invested in the Fortinbras Fund, which invested in swaps that were damaged by the manipulation of ISDAfix. There is no reason that Fortinbras's claim is somehow less legitimate than any other hedge fund or investment fund merely because the investments in its strategy were invested into a designated Fortinbras Fund account at Credit Suisse, as opposed to some other vehicle.

---

[5] Attached as Exhibit 2 to the Declaration of Peter Demato, Jr. In Support of Fortinbras Asset Management GmbH's Response In Further Opposition to Plaintiffs' Motion for Entry of An Order Approving Distribution of the Net Settlement Funds.

Further, fairness to the investors in the TFM strategy dictates allowing the Fortinbras claim. The Fortinbras Swaps properly belong in Pool A—as Plaintiffs now appear to agree—but the investments into the Fortinbras Fund might be subjugated to Pool B. Therefore, the Fortinbras claim should be allowed in Pool A and the proceeds can be distributed by Fortinbras to its investors accordingly.

All of the information provided to date—as described in the Objection and here—is consistent with one conclusion: that the Fortinbras Swaps were "real" swaps and that the Fortinbras Fund was Credit Suisse's counterparty for the Fortinbras Swaps.

## CONCLUSION

For the foregoing reasons, Fortinbras Asset Management GmbH respectfully requests that the Court issue an Order: directing the Administrator to accept the Fortinbras Swaps as Pool A transactions under the Plan of Distribution for all purposes, including in the Initial Distribution and any Subsequent Distributions and for the Approved Settlements Fund and the Newly Approved Settlements Fund; and for such other and further relief as the Court deems just and proper.

Dated: December 27, 2019
White Plains, NY

Respectfully submitted,

**LOWEY DANNENBERG, P.C.**

By: /s/ *Geoffrey M. Horn*
Geoffrey M. Horn
Peter Demato, Jr.
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
ghorn@lowey.com
pdemato@lowey.com